**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.,** | : | Case No. 19-36767 (MI) |
| | : | |
| Debtor. | : | |

**EMERGENCY MOTION OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC. FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, BENEFITS, INDEPENDENT CONTRACTORS AND RELATED ITEMS**

**EMERGENCY RELIEF HAS BEEN REQUESTED. A HEARING WILL BE CONDUCTED ON THIS MATTER ON THURSDAY, DECEMBER 5, 2019 AT 9:00 AM IN COURTROOM 400, FOURTH FLOOR, 515 RUSK, HOUSTON, TX 77002. IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST EITHER APPEAR AT THE HEARING OR FILE A WRITTEN RESPONSE PRIOR TO THE HEARING. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

TO THE UNITED STATES BANKRUPTCY COURT JUDGE PRESIDING:

**NOW COMES** Newsco International Energy Services USA, Inc. ("Debtor"), and files this Motion with the Bankruptcy Court for Interim and Final Orders pursuant to 11 U.S.C. §105(a), §363, §507(a)(4), §507(a)(5), §541(b)(7) and §541(d) ("Motion") that authorizes it to (i) pay: (a) pre-petition wages, salaries, overtime pay, bonuses, sick pay, vacation pay and other accrued compensation for employees and independent contractors (collectively, the "Pre-petition Compensation"); (b) unreimbursed or unpaid, as applicable, pre-petition business expenses (collectively, the "Pre-petition Business Expenses"); (c) Pre-petition Deductions (as such term is

defined below); (d) pre-petition contributions to, and benefits under, employee benefit plans (collectively, the "Pre-petition Benefits"); and (e) all costs and expenses incident to the foregoing payments and contributions, including payroll-related taxes and related processing and administration costs (the "Pre-petition Processing Costs"), and to (ii) grant it certain related relief. In support of this Motion, the Debtor respectfully represents as follows:

**Background**

1. On the date hereof (the "Petition Date"), the Debtor commenced a case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1] The Debtor is continuing in possession of its properties and is managing its business as a Debtor in Possession, pursuant to 11 U.S.C. §1107(a) and 11 U.S.C. §1108.

2. Founded in 2010, Newsco is an enhanced recovery solutions provider to many of the industry's leading upstream exploration and development ("E&P") operators and service companies with annual sales of approximately $20 million per year. Newsco provides "measurement by drilling" services, using patented and proprietary equipment, to supply custom solutions to customers' directional drilling needs. Newsco's services include a full package of well bore design and navigation capabilities. With its proven technology, Newsco collects downhole well bore information in real time and uses that information to direct the trajectory and direction of the drill bit, reducing the customer's drilling time by up to 20%. Newsco has an established presence in the Permian, Delaware and Bakken Basins in the United States.

3. In March 2017, Newsco was spun off from Marquard & Bahls, a Hamburg, Germany based multinational company whose core lines of business are energy supply, trading

---

[1]  This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §157(b). Venue for this matter is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

**EMERGENCYMOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, BENEFITS, INDEPENDENT CONTRACTORS, AND RELATED ITEMS – Page 2**
4814-6136-4910.1/J1452/391515/120419

and logistics. Newsco inherited an unsustainably high level of fixed costs, legacy leases and debt, and inadequate working capital. Since then, management has improved its service model and quality of service through streamlining its processes and workforce, reducing direct costs by 25% and its selling, general and administrative ("SGA") costs by 40%; but Newsco's turnaround efforts have been hampered by capital constraints in a tight financing market, making it difficult for the company to make the necessary capital investments to take full advantage of the demand for its premium products and specialized services.

4. Additional information regarding the Debtor and this case, including the Debtor's business, corporate structure, financial condition, and the reasons for and objectives of this case, is set forth in the Declaration of Debtor's COO, Corey Campbell in Support of First Day Pleadings (the "First Day Declaration"), filed contemporaneously herewith and incorporated herein.

*Pre-petition Compensation and Pre-petition Deductions*

5. As of the Petition Date, the Debtor has approximately 29 full and part-time hourly and salaried employees, and seven (7) independent contractors. Many of the employees, and also the independent contractors, are owed or have accrued various sums for Pre-petition Compensation and Pre-petition Deductions (as defined below). These amounts were unpaid on the Petition Date because, among other things: (a) the Debtor commenced its chapter 11 case in the midst of its customary payroll period, as well as in the midst of its regular reimbursement cycle for employee and independent contractor business expenses; (b) checks previously issued on account of such obligations may not have been presented for payment or may not have cleared the banking system; (c) amounts related to pre-petition services, while accrued in whole or in part, had not yet become due and payable by the Debtor; and (d) amounts deducted from

employee paychecks were not then due to be paid over to the intended recipient or account, including deductions taken from employees' paychecks (i) to make payments on behalf of the employees for or with respect to, among other things, the Debtor's employee benefit programs, loan repayments and garnishments or amounts due third parties, (ii) on account of various federal, state or local income, FICA, Medicare, state disability, workers' compensation and other taxes for remittance to the appropriate federal, state or local taxing (collectively, the "Pre-petition Deductions").

6. The Debtor seeks authority to pay all Pre-petition Compensation and Pre-petition Deductions. The Debtor estimates that, as of the Petition Date, the total amount of Pre-petition Compensation is approximately $138,000, and the total amount of Pre-petition Deductions is approximately $7,000. In addition, as part of the Debtor's Pre-petition Compensation, certain of the Debtor's employees have accrued sick pay (the "Sick Pay"), and the Debtor typically pays approximately $6,000 per month on account of such obligations. Through this motion, the Debtor requests authority to pay amounts currently owed to employees who took sick time pre-petition in the amount of approximately $6,000, and to continue paying Sick Pay after the Petition Date in an amount not to exceed $10,000 per month. [2]

*Pre-petition Business Expenses*

7. The Debtor customarily reimburses its employees and its independent contractors for a variety of business expenses incurred in the ordinary course of its business. Typically, such business expenses are paid directly by the employee and reimbursed upon review and approval by the Debtor. Generally, the Debtor reimburses no more than $15,000 in business expenses on a monthly basis.

---

[2] To the extent that the Debtor needs to exceed this cap, it will file a separate motion with this Court requesting such authority.

**EMERGENCYMOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, BENEFITS, INDEPENDENT CONTRACTORS, AND RELATED ITEMS – Page 4**
4814-6136-4910.1/J1452/391515/120419

8.      The Debtor respectfully requests authority to pay all Pre-petition Business Expenses in the ordinary course of its business. Though it is difficult for the Debtor to determine the exact amount of Pre-petition Business Expenses that are outstanding, because, among other things, employees may not submit reimbursement forms promptly, the Debtor estimates that its obligations for Pre-petition Business Expenses as of the Petition Date will not exceed $15,000.

*Pre-petition Benefits*

9.      The Pre-petition Benefits relate to the Debtor's employee benefit programs, including, for eligible employees: (a) healthcare flexible spending accounts, (b) dependent care flexible spending accounts and (c) medical, long term disability, short term disability, workers' compensation, life, dental, vision, accident, critical illness, accidental death and dismemberment insurance. Flexible spending accounts are provided through Discovery Benefits, accident and critical illness insurance is provided through Principal, workers' compensation insurance is provided through Alliant and by the States of Wyoming, for employees located in these states, medical, dental and vision insurance is provided through United Healthcare and Principal, and life, short and long term disability and accidental death and dismemberment insurance is provided through the Principal.

10.     The Debtor estimates that, as of the Petition Date, the total amount of Pre-petition Benefits described above is approximately $70,000.

*Costs and Expenses Incident to the Foregoing*

11.     The Pre-petition Processing Costs include processing costs, the employer portion of payroll-related taxes and accrued but unpaid pre-petition charges for administration of the Pre-petition Benefits. For instance, the Debtor sponsors a 401(k) retirement savings plan for its employees. Employees are offered the opportunity to invest through a payroll deduction, but

**EMERGENCYMOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, BENEFITS, INDEPENDENT CONTRACTORS, AND RELATED ITEMS** – Page 5

4814-6136-4910.1/J1452/391515/120419

such amounts are not matched by the Debtor. As of the Petition Date, the amount of $600 is owed to the plan administrators for quarterly plan expenses and maintenance fees. In addition, $800 in certain processing fees remain outstanding which facilitates remission of the Debtor's payroll expense taxes. The Debtor estimates that the aggregate amount of Pre-petition Processing Costs accrued but unpaid, as of the Petition Date, was no greater than $6,000.

*Approval of Use of Independent Contractors*

12. The Debtors also employ independent contractors for specialized knowledge, skill, and project scope of work on its jobsites. Each independent contractor holds terms and condition unique for the project and area of the country in which they are working. The Debtor's Independent Contractors are compensated as the need arises for their services in the ordinary course of business. As of the petition date the Debtor estimates that approximately $100,000 has accrued pre-petition and remains outstanding on account of the independent contractors' pre-petition services and that certain amounts will be due and payable upon satisfaction of certain conditions with respect to outstanding services performed by the independent contractors prior to the Petition Date, as well as on a post-petition basis.

13. The Independent Contractors are critical to the continued operation of the Debtor's business. Without them, the Debtor would have to shut down operations and breach contracts with its customers.

**Basis for Relief Requested**

14. The allowance of payment of the Pre-petition Compensation, the Pre-petition Deductions, the Pre-petition Business Expenses, the Pre-petition Benefits, the Pre-petition

Processing Costs, and the Independent Contractors is warranted and authorized under 11 U.S.C. §105(a), §363, §507(a)(4), §507(a)(5), §541(b)(7) and §541(d), as well as case authority..

*Employee Wages and Related Costs Are Entitled*
*To Priority Status under the Bankruptcy Code*

15. Pursuant to 11 U.S.C. §507(a)(4) of the Bankruptcy Code, employees are granted a priority claim for:

> allowed unsecured claims, but only to the extent of $12,850 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for —
>
> (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual.

11 U.S.C. §507(a)(4). Likewise, pursuant to 11 U.S.C. §507(a)(5), employees are granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan —
>
> (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B) for each such plan, to the extent of —
>
> (i) the number of employees covered by each such plan multiplied by $12,850; less
>
> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. §507(a)(5).

16. In addition, the costs of administering employee benefits programs are also entitled to priority treatment under section 507(a)(5) of the Bankruptcy Code. Allegheny Int'l,

Inc. v. Metro. Life Ins. Co., 145 B.R. 820 (W.D. Pa. 1992). In Allegheny, the court ruled that the pre-petition claims of a medical benefits plan administrator for, among other things, fees charged for performing administrative, actuarial and claims services in connection with the medical benefits plans of a chapter 11 debtor were entitled to priority under 11 U.S.C. §507(a)(5). The court stated that "[i]t would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." Id. at 822-23.

17. Except as described below, the Debtor believes that the amount of Pre-petition Compensation owing to or on account of all of its current employees will not exceed the sum of $12,850 per employee allowable as a priority claim under 11 U.S.C. §507(a)(4) (the "Priority Cap"). Certain jurisdictions require a carry-forward of accrued vacation balances. In addition, and as further described above, certain of the Debtor's employees accrued Sick Pay as of the Petition Date. Although the total amount of accrued Sick Pay for certain employees would cause them to technically exceed the Priority Cap, the Debtor is currently only seeking authority to make payments on account of Sick Pay in the amount of no more than $10,000 per month and will seek authority for payments exceeding this amount under a separation motion. As a result, a small number of employees will be entitled to receive Pre-petition Compensation in excess of the Priority Cap. However, disregarding Sick Pay accrued pre-petition, the Debtor estimates that these payments will be small in number and amount and will not exceed $30,000 in the aggregate. The Debtor also believes that the Pre-petition Processing Costs are entitled to priority under 11 U.S.C. §507(a)(5).

*Funds Held in Trust Are Not Available for General Distribution to Creditors*

18. 11 U.S.C. §541(d) provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest" becomes property of a

debtor's estate only to the extent of the debtor's legal title therein. 11 U.S.C. §541(d). It is well established in this district that "property a debtor holds in trust for another is not property of the estate" within the meaning of §541 of the Bankruptcy Code. See Golden v. The Guardian (In re Lenox Healthcare, Inc.), 343 B.R. 96, 100 (Bankr. D. Del. 2006); see also In re Columbia Gas Sys., Inc., 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property that a debtor holds in trust — either express or constructive — for another does not become property of the estate when the debtor files for bankruptcy; stating that "Congress clearly intended the exclusion created by §541(d) to include not only funds held in express trust, but also funds held in constructive trust."); EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (*In re Edison Bros., Inc.*), 243 B.R. 231, (Bankr. D. Del. 2000) (same).

19. More specifically, it is well established under 11 U.S.C. §541(d) that taxes collected on behalf of taxing authorities are not property of the estate. See *Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); see also *In re Calabrese*, 689 F.3d 312, 321 (3d Cir. 2012) (finding that third-party sales taxes collected by a retailer "resemble trust fund taxes" and "never become property of the estate" but "are merely held by the debtor on behalf of the party that owes the tax"); *Old Republic Nat'l Title Ins. Co. v. Tyler* (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp.* (In re Sharon Steel Corp.), 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's

other property). Accordingly, such funds are not available for general distribution to a debtor's creditors.

20. Certain of the Pre-petition Deductions are held in trust for the benefit of the appropriate federal, state or local taxing authorities or for, among others, the Debtor's employees themselves. Thus, the Pre-petition Deductions likely are not property of the Debtor's estate within the meaning of 11 U.S.C. §541. As a result, the remittance of the Pre-petition Deductions is warranted because it will not diminish creditor recoveries.

21. Further, many federal, state and local taxing authorities impose personal liability on the officers and directors of entities responsible for collecting taxes from employees to the extent any such taxes are collected but not remitted. Accordingly, if these amounts remain unpaid, there is a risk that the Debtor's officers and directors may be subject to lawsuits on account of any such nonpayment during the pendency of this chapter 11 case. Such lawsuits would constitute a significant distraction for officers and directors at a time when they should be focused on the Debtor's bankruptcy-related efforts. To avoid the serious disruption of the Debtor's bankruptcy-related efforts that could result from the nonpayment of any withholding taxes, the Debtor seeks authority to remit all Pre-petition Deductions collected on behalf of the employees to the applicable taxing authorities to the extent that they have not already been remitted.

*Certain Pre-petition Deductions and Contributions for*
*ERISA Plans Are Not Property of the Estate*

22. In addition to the general exclusion of certain property from a debtor's estate under 11 U.S.C. §541(d), 11 U.S.C. §541(b)(7) specifically provides that property of the estate does not include amounts withheld by an employer from wages of an employee, or amounts

received by an employer from employees, for payment as contributions to an employee benefit plan that is subject to title I of the Employee Retirement Income Security Act of 1974 ("ERISA"). Amounts withheld or collected from employees on account of certain Pre-petition Benefits, such as 401(k) accounts, medical, life, disability and other insurance, or other benefits that are subject to title I of ERISA and thus satisfy the standards of section 541(b)(7) of the Bankruptcy Code, are not property of the Debtor's estate and not available for distribution to the Debtor's creditors. As such, the remittance of amounts constituting Pre-petition Benefits that do not constitute property of the Debtor's estate will not adversely affect the Debtor's creditors.

*The Doctrine of Necessity Provides a Further Basis for Granting the Requested Relief*

23. 11 U.S.C. §363(b)(1) provides: "The trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. §363(b)(1). §105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent the abuse of process.

11 U.S.C. §105(a).

24. Courts have repeatedly recognized "the existence of the judicial power to authorize a debtor . . . to pay pre-petition claims where such payment is essential to the continued operations of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 176 (Bankr. S.D.N.Y. 1989); see also *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain pre-petition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted). The United

States Supreme Court first articulated the equitable common law principle commonly referred to as the "doctrine of necessity" over 125 years ago in *Miltenberger v. Logansport, C. & S.W.R. Co.*, 106 U.S. 286, 1 S.Ct. 140, 27 L.Ed. 117 (1882). "The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11." *In re Just for Feet, Inc.*, 242 B.R. 821, 825 (D. Del. 1999).

25.     Under the doctrine of necessity, a bankruptcy court may exercise its equitable power to authorize a debtor to pay pre-petition claims, even though such payment is not explicitly authorized under the Bankruptcy Code. See *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 939 (Bankr. D. Del. 1992) (citing *In re Lehigh & New England Rwy. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that "if payment of a pre-petition claim 'is essential to the continued operation of [the debtor], payment may be authorized.'")).

26.     The bankruptcy court's exercise of its authority under the "doctrine of necessity" is appropriate to carry out specific statutory provisions of Chapter 11, specifically 11 U.S.C. §1107(a), §1108 and §363(b)(1), which collectively authorize a debtor in possession to maintain and operate the debtor's business and use estate property outside of the ordinary course of business. Indeed, a debtor in possession operating a business under section 1108 of the Bankruptcy Code has a duty to protect and preserve the value of its business, and pre-petition claims may be paid, if necessary to perform the debtor's duty. See *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) ("There are occasions when this duty can only be fulfilled by the preplan satisfaction of a pre-petition claim.").

27.     This Motion satisfies the foregoing criteria, as the relief sought herein plainly is essential to the continued operations of the Debtor. Maintaining the goodwill of the Debtor's

employees and ensuring the uninterrupted availability of their services will protect the going concern value of the estate and maximize the value ultimately available to creditors by (a) assisting the Debtor in maintaining the necessary "business as usual" atmosphere and (b) preserving the Debtor's relationships with customers and vendors.

28. Furthermore, any harm resulting from the Debtor's failure to obtain the relief requested herein would not be limited to the Debtor's estate. Because the amounts represented by Pre-petition Compensation and Pre-petition Benefits are needed to enable the Debtor's employees to meet their own personal obligations, they would suffer undue hardship and, in many instances, serious financial difficulties if the relief requested herein is not granted.

29. In light of the foregoing, the Debtor respectfully submits that the payment of the employee-related and independent contractors' obligations as requested herein is (a) in the best interests of the Debtor, its estate and its creditors and (b) necessary to prevent immediate and irreparable harm to the Debtor, its estate and its creditors.

30. This Court has routinely approved the payment of pre-petition claims of employee wages, salaries, expenses and benefits and of independent contractors in various other chapter 11 cases. See, e.g., *In re Rockport Co., LLC*, Case No. 18-11145 (LSS) (Bankr. D. Del. May 15, 2018); *In re Bon-Ton Stores, Inc.*, Case No. 18 10248 (MFW) (Bankr. D. Del. Feb. 6, 2018); *In re Aerogroup Int'l Inc.*, Case No. 17-11962 (KJC) (Bankr. D. Del. Sept. 18, 2017); *In re Swift Energy Co.*, Case No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016); *In re RadioShack Corp.*, Case No. 15-10197 (BLS) (Bankr. D. Del. Feb. 6, 2015).

*Request for Authority for Banks to Honor and Pay Checks Issued to Pay Pre-petition Compensation, Pre-petition Business Expenses, Pre-petition Benefits, Pre-petition Deductions, and Pre-petition Processing Costs*

31. In addition, by this Motion, the Debtor requests that all applicable banks and other financial institutions (collectively, the "Banks") be authorized, when requested by the Debtor, to receive, process, honor and pay any and all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to Pre-petition Compensation, Pre-petition Business Expenses, Pre-petition Benefits, Pre-petition Deductions and Pre-petition Processing Costs, regardless of whether such checks were presented or fund transfer requests were submitted prior to or after the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments. The Debtor represents that these checks are drawn on identifiable payroll and disbursement accounts and can be readily identified as relating directly to the authorized payment of Pre-petition Compensation, Pre-petition Business Expenses, Pre-petition Benefits, Pre-petition Deductions and/or Pre-petition Processing Costs. Accordingly, the Debtor believes that checks will not be honored inadvertently.

32. Nothing contained herein is intended or shall be construed as: (a) an admission as to the validity of any claim against the Debtor; (b) a waiver of the Debtor's rights to dispute any claim on any grounds; (c) a promise to pay any claim; (d) an implication or admission that any particular claim against the Debtor would constitute a claim for Pre-petition Compensation, Pre-petition Business Expenses, Pre-petition Deductions, Pre-petition Benefits or Pre-petition Processing Costs; or (e) the assumption of any contract.

*Requests for Immediate Relief & Waiver of Stay*

33. Pursuant to Rules 6003(b) and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtor seeks (a) immediate entry of an order granting

the relief sought herein and (b) a waiver of any stay of the effectiveness of such an order. Bankruptcy Rule 6003(b) provides, in relevant part, that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . a motion to pay all or part of a claim that arose before the filing of the petition." Accordingly, where the failure to grant any such requested relief would result in immediate and irreparable harm to the Debtor's estate, the Court may allow the Debtor to pay all or part of a claim that arose before the Petition Date prior to the twenty-first day following the Petition Date. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."

34. As set forth above, the payment of the Pre-petition Compensation, the Pre-petition Business Expenses, Pre-petition Deductions, Pre-petition Benefits, Pre-petition Processing Costs and Independent Contractors is necessary to prevent immediate and irreparable damage to the Debtor's (a) operations (and customer confidence therein) and (b) value that would result from a collapse of employee morale. Accordingly, the Debtor submits that ample cause exists to justify (a) the immediate entry of an order granting the relief sought herein and (b) a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit A, granting: (i) the relief requested herein; and (ii) such other and further relief to the Debtor as the Court may deem proper.

Dated:  **December 4, 2019**.

        Respectfully submitted,

        By:*/s/ Stephen A. Roberts*
        **STEPHEN A. ROBERTS**
        stephen.roberts@clarkhillstrasburger.com
        CLARK HILL STRASBURGER
        720 Brazos, Suite 700
        Austin, TX 78701
        (512) 499-3624- Telephone

        and

        **HERBERT J. GILLES**
        Herbert.gilles@clarkhillstrasburger.com
        CLARK HILL STRASBURGER
        Texas Bar No. 07925350
        901 Main Street, Suite 6000
        Dallas, TX 75202
        (214) 651-2167

        **PROPOSED ATTORNEYS FOR DEBTOR NEWSCO INTERNATIONAL ENERGY SERVICES USA**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 4th day of December 2019, a true and correct copy of this Motion was served upon the parties listed below via CM/ECF and via electronic mail, as indicated.

**Debtor:**
Newsco International
Energy Services USA Inc.
12029 Brittmoore Park Drive
Houston, TX 77041

**Counsel for Debtor:**
Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
Stephen.roberts@clarkhillstrasburger.com

**Counsel for Debtor:**
Herbert Gilles
Clark Hill Strasburger
901 Main Street, Suite 6000
Dallas, TX 75202
Herbert.gilles@clarkhillstrasburger.com

**Top Twenty Unsecured Creditors:**
Abaco Drilling Technologies (Basin Tek)
713 Northpark Central, Suite 400
Houston, TX 77073
Mitch.theriot@basintek.com

Paradigm
5707 South 1788
Midland, TX 79706
phillip.garrison@paradigmdownholetools.com

Gator Technologies
415 Rankin Circle North
Houston, TX 77073
mleblanc@gatortechnologies.net

Hill Country Staffing Co.
501 S. Austin Avenue, Suite 1310
Georgetown, TX 78626
Deanna.miller@hillcountrystaff.com

B&T Rentals
PO Box 80962
Lafayette, LA 70598-0962
tvallot@btrentals.com

Moore's Ind. Services Ltd.
3333 – 23 Street N.E.
Calgary, Alberta T2E 6V8
Canada
bcheyne@mooresind.com

Park City
800 Northpark Central, Suite 100
Houston, TX 77073
bferguson@parkcitydt.com

GE Oil & Gas Compression Systems
191 Rosa Parks St., 11th Floor
Cincinnati, OH 45202
Roger.kramer@ge.com

Tycoon Oilfield Services
3468 Schlager Road
Casper, WY 82604
cvermeulen@tycoonoilfield.com

**EMERGENCYMOTION OF DEBTOR FOR INTERIM AND FINAL ORDERS AUTHORIZING THE DEBTOR TO PAY PRE-PETITION EMPLOYEE WAGES, BENEFITS, INDEPENDENT CONTRACTORS, AND RELATED ITEMS – Page 17**

| | |
|---|---|
| TURNTEC<br>4820 Cleveland Street<br>Mills, WY 82604<br>banderson@turntecmfg.com | NOV Tuboscope XL<br>Hardbanding and Fabrication<br>PO Box 51563<br>Casper, WY 82605<br>Anthony.parker@nov.com |
| NOV National Oilwell Varco<br>7909 Parkwood Circle Dr. Bldg #2<br>Houston, TX 77036<br>Anthony.parker@nov.com | Bico Drilling Tools<br>1604 Greens Road<br>Houston, TX 77032<br>Jay.chatha@bicodrilling.com |
| Sniper Drilling IAE International<br>13300 Stonefield Dr.<br>Houston, TX 77014<br>kramen@iaenintl.com | Phoenix Technology Services<br>3610 Elkins Rd<br>Midland, TX 79705<br>bphillips@phxtech.com |
| Salt Creek Properties LLC<br>(Eastland Development LLC)<br>PO Box 2390<br>Casper, WY 82601<br>mthompson@mcmurry.net | Surface Engineering Alloy Co.<br>2895 46th Ave North<br>St. Petersburg, FL 33714<br>seanl@extremecoatings.net |
| Stabil Drill<br>PO Box 81548<br>Lafayette, LA 70598<br>Monica.leblanc@stabildrill.com | JPI, LLC<br>4021 W 39th Street<br>Casper, WY 82604<br>Palmer4021@icloud.com |

**DIP Lender:**
SouthStar Financial LLC
c/o Lindsey W. Cooper Jr.
The Law Offices of L.W. Cooper Jr.
36 Broad Street
Charleston, SC 29401
lwc@lwcooper.com

        */s/ Stephen A. Roberts*
        **STEPHEN A. ROBERTS**