**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **Chapter 11** |
| | § | |
| **NEWSCO INTERNATIONAL ENERGY** | § | **Case No. 19-36767 (DRJ)** |
| **SERVICES USA INC.,** | § | |
| **Debtor.** | § | |

**STIPULATIONS REGARDING HILL COUNTRY STAFFING CO. LLC'S MOTION**
**FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM**

Hill Country Staffing Co. ("**Hill Country Staffing**") and Newsco International Energy Services USA Inc., Debtor and Debtor-in-Possession ("**Debtor**"), by and through their respective undersigned counsel, stipulate to the following facts ("**Stipulations**") regarding Hill Country Staffing 's Motion for Allowance of Administrative Expense Claim Pursuant to Order Approving Compromise [Dkt #95] (the "**Motion**").

The parties have agreed to rely upon these Stipulations in addition to any witnesses or documentary evidence presented at the hearing. The parties also stipulate to the authenticity and admissibility of all of any documents attached as Exhibits to these Stipulations. Further testimony may be adduced on the matters covered in these Stipulations and the matters in these Stipulations may serve as grounds for further questioning of any witnesses presented at the hearing.

**Stipulations of Fact**

1. Debtor performed services used in mineral activities under a contract with XTO Energy, Inc. ("**XTO**"), the mineral property owner, on the following wells on the following leases:

    John Braun A Unit 3 #1341SH Well and associated leases in Midland County, Texas;

    Midkiff 43-06-0625 #0605BH Well and associated leases in Midland County, Texas;

Midkiff 43-06 0627 #0607BH and Midkiff 43-06-0627 #0617AH Wells and associated leases in Midland County, Texas;

Midkiff 43-06 0668 #0668DH Well and associated leases in Midland County, Texas.

The John Braun A Unit 3 will be referred to as the "Braun Lease" and the Midkiff 43-06 0625, Midkiff 43-06 0627, and Midkiff 43-06 0668 will be referred to as the "Midkiff Leases".

2. Hill Country Staffing provided labor used in mineral activities on the Midkiff Leases and the Braun Lease under contracts with Debtor. Hill Country Staffing provided the labor on the Midkiff Leases on the dates reflected in the invoices attached as **Exhibit 1**.

3. Under §56.001 of the Texas Property Code, XTO is a "Mineral property owner", Debtor is a "Mineral contractor", and Hill Country Staffing is a "Mineral subcontractor".

4. On or about January 17, 2020, Hill Country Staffing sent to XTO, by certified mail, notices of its intent to file mineral liens on the Midkiff Leases and the Braun Lease and related property subject to a lien pursuant to Tex. Prop. Code §56.002 for labor provided to Debtor on those leases ("**Lien Notices**").[1] XTO received the Lien Notices on January 22, 2020. The Lien Notices comply with Tex. Prop. Code §56.023.

5. In the Mineral Lien Notices, Hill Country Staffing asserted that it held mineral liens in the amount of $233,795.11 and demanded that XTO withhold payments to Debtor in such amounts pursuant to Tex. Prop. Code § 56.043.

---

[1] The Lien Notices also include the Cassidy Unit 2 #3066DH, Cassidy Unit 2 #3006BH, Cassidy Unit 2 #3076JH, and Cassidy Unit 2 #3006BH Wells and associated leases in Martin County, Texas but Hill Country Staffing later rescinded those notices and no longer claims a lien on those properties.

6.  At the time XTO received the Lien Notices, XTO had paid Debtor for its services in full on the Midkiff Leases.

7.  Debtor owed, and still owes, Hill Country Staffing $62,700.11 for labor provided by Hill Country Staffing to Debtor as a mineral subcontractor of XTO on the Midkiff Leases.

8.  At the time XTO received the Lien Notices, XTO owed Debtor a balance due for all services provided by Debtor on the Braun Lease in excess of $62,700.11.

9.  After Hill Country Staffing sent XTO the Notice of Liens, Debtor paid the balance it owed to Hill Country Staffing in full for the labor Hill Country Staffing performed on the Braun Lease.

10. On February 3, 2020, Hill Country Staffing sent XTO notice modifying the Mineral Lien Notices (the "**Modified Lien Notice**") to reflect that Hill Country Staffing Co. had mineral liens relating only to the Midkiff Leases. In the Modified Mineral Lien Notices, Hill Country Staffing Co. reduced its claim to $62,700.11 and demanded that XTO withhold payments to Debtor in such amounts pursuant to Tex. Prop. Code § 56.043. The Modified Lien Notice is attached as **Exhibit 2.**

11. Hill Country Staffing based the demand in its Modified Lien Notice that XTO withhold payments to Debtor in the amount of $62,700.11 on its contention that XTO was required to withhold funds it owed Debtor at that time relating to the Braun Lease to take advantage of the limitation of liability provided by Texas Property Code § 56.43, notwithstanding that Hill Country Staffing had been paid in full for the labor it performed on the Braun Lease, because Hill Country Staffing was owed $62,700.11 for labor provided as mineral subcontractor on the Midkiff Leases.

12. On or before January 29, 2020, XTO had approved the payment of invoice no. 10769 from Newsco for the work performed on the John Braun Lease in the amount of $139,008.00. XTO paid the invoice by check dated February 5, 2020 by mailing it to SouthStar Capital, who had purchased the account from Debtor. The records of SouthStar Capital reflect that it was received and credited to Debtor's account on February 10, 2020. By a subsequent email, XTO sent Debtor a copy of the check and confirmed that it had been sent on February 5, 2020. On February 6, 2020, XTO owed amounts under invoices from the Debtor exceeding $62,700.11 only for work the Debtor performed on mineral properties for which Hill Country Staffing did not provide any labor, materials, or services.

13. The dispute between Newsco and Hill Country Staffing was partially resolved by the Order Granting Emergency Motion for Approval of Compromise and Settlement with Hill Country Staffing, LLC [Dkt #82] (the "**Compromise Order**").

14. The Compromise Order was entered on the Court's docket on February 11, 2020 and states, in pertinent part:

ORDERED that the following agreement is hereby approved:

1. Hill Country Staffing, LLC waives all of its rights to file liens on the property or interests of XTO Energy, Inc. under Chapter 56 of the Texas Property Code relating to services Hill Country Staffing, LLC provided prior to February 6, 2020, as a subcontractor of Debtor; and, upon the entry of this Order, Hill Country Staffing, LLC shall immediately provide notice to XTO Energy, Inc. that it has waived such lien rights.

2. Hill Country Staffing, LLC shall be allowed an administrative claim up to $62,700.11 to the extent that its waiver under this order constitutes a waiver of valid and enforceable liens.

3. In order for Hill Country Staffing, LLC to be allowed an administrative claim, it must file a motion for the allowance of an administrative claim. The Debtor and any creditors and parties in interest shall have the right to object to the amount and extent of such claim.

15. Hill Country Staffing promptly complied with its obligation under the Compromise Order by providing the notice to XTO Energy, Inc. that it has waived such lien rights, attached as **Exhibit 3**.

16. XTO and Newsco entered into a Master Service Agreement dated September 16, 2014 (the "**MSA**"). A true and correct copy of the MSA is included as **Exhibit 4**. The MSA contains general terms such conduct of work, responsibilities of the parties, payment and audit rights, warranties, patents, confidentiality, liens, indemnities, policies, and insurance. The MSA does not obligate XTO to order work from the contractor and does not obligate the contractor to accept orders for work:

> 1. <u>Preamble</u>. This Master Service Agreement controls and governs the Work (as defined below) performed by Contractor for XTO. It may be used in conjunction with oral or written Work Orders between the parties. Only the particular terms included in this Master Service Agreement that have application to the type of Work that is covered by a particular Work Order will apply. This Master Service Agreement does not obligate XTO to order Work from Contractor and does not obligate Contractor to accept orders for Work from XTO.

17. The MSA did not establish any pricing; rather it provided that pricing is established in individual work orders:

> 5.1 <u>Contract Price</u> – XTO will pay Contractor for the Work based on the rate and terms in the Work Orders. Unless otherwise provided in this Agreement and subject to Article IX hereof and retention rights permitted by law, payment will be due 30 days after XTO's receipt of a correct invoice and supporting documentation therefor.

18. Attached as **Exhibit 5** are documents relating to a particular job performed by Newsco for XTO on the Midkiff Leases, including Debtor's Pricing Proposal (detailing the pricing for the services to be provided), Debtor's Terms and Conditions of Service, the Field Ticket, (showing the well name, the rig, the services performed, the charges for services

performed, and the signature of an XTO representative accepting the work order), and Debtor's invoice (the "**Midkiff Job Documents**"). The Midkiff Job Documents on all jobs performed by Debtor on the Midkiff Leases are substantially similar.

19. Attached as **Exhibit 6** are documents relating to a particular job performed by Newsco for XTO on the Braun Lease, including Debtor's Pricing Proposal (detailing the pricing for the services to be provided), Debtor's Terms and Conditions of Service, the Field Ticket, (showing the well name, the rig, the services performed, the charges for services performed, and the signature of an XTO representative accepting the work order), and Debtor's invoice (the "**Braun Job Documents**"). The Braun Job Documents on all jobs performed by Debtor on the Braun Leases are substantially similar.

20. The Midkiff Job Documents for all jobs performed by Debtor for XTO on the Midkiff Leases reflect that the "ScanGold" rig was used by XTO on those jobs. The Braun Job Documents for all jobs performed by Debtor for XTO on the Braun Lease reflect that the "Felderhoff32" rig was used by XTO on those jobs.


STIPULATED TO THIS 23rd DAY OF JUNE 2020, BY:

**CLARK HILL STRASBURGER**

/s/ *Stephen A. Roberts*
Stephen A. Roberts
720 Brazos Street, Suite 700
Austin, TX 78701
Telephone: (512) 499-3600
Facsimile:  (512) 536-5723
Email: sroberts@clarkhill.com

*Attorneys for Debtor Newsco International*
*Energy Services USA, Inc.*

-and-

**BARRON & NEWBURGER, P.C.**

/s/ *R. J. Shannon*
R. J. Shannon (TBA No. 24108062)
7320 N. MoPac Expwy., Suite 400
Austin, TX 78731
Telephone: (512) 476-9103
Facsimile:  (512) 476-09253
Email: rshannon@bn-lawyers.com

*Attorneys for Hill Country Staffing Co.*

## **EXHIBIT 1 TO STIPULATIONS**

Hill Country Staffing Co. Invoices for Midkiff Leases

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 12975 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
|---|---|---|---|---|---|---|---|---|
| 8/22/2019 | | | 8/22/2019 | | WE 8/17/19 | | JOB # 191169TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| 7.00 | 7.00 | EA | JOB # 191169TX - ROBERT DUTTON | | | | $1,016.50 | $7,115.50 |
| 7.00 | 7.00 | EA | DAY RATE / DAYS WORKED - 8/11-8/17 | | | | $53.50 | $374.50 |
| 1.00 | 1.00 | EA | PER DIEM - _ | | | | $404.25 | $404.25 |
| | | | TRAVEL EXPENSE - 8/12 & 8/17 | | | | | |
| | | | | | | | | |
| | | | JOB # 191169TX - MIDKIFF 43-06 | | | | | |
| | | | 0627-0607BH - SCAN GOLD TX | | | | | |

| | | |
|---|---|---|
| Payment/Terms:  Net 45 Due by 10/6/2019 | Subtotal | $7,894.25 |
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $7,894.25 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 12976 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
|---|---|---|---|---|---|---|---|---|
| 8/22/2019 | | | 8/22/2019 | | WE 8/17/19 | | JOB # 191169TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| 2.00 | 2.00 | EA | JOB # 191169TX - JOHNATHAN HUGHES STAND BY RATE - 8/11-8/12 | | | | $230.05 | $460.10 |
| 5.00 | 5.00 | EA | DAY RATE / DAYS WORKED - 8/13-8/17 | | | | $460.10 | $2,300.50 |
| 7.00 | 7.00 | EA | PER DIEM - 8/11-8/17 | | | | $53.50 | $374.50 |
| 1.00 | 1.00 | EA | TRAVEL EXPENSE - 8/17/19 | | | | $366.00 | $366.00 |
| | | | JOB # 191169TX - MIDKIFF 43-06 - 0067 -0607BH – SCAN GOLD - TX | | | | | |

| Payment/Terms:  Net 45 Due by 10/6/2019 | | Subtotal | $3,501.10 |
|---|---|---|---|
| | | Tax | |
| | | Freight Charges | |
| Received By : x_____ | | **Total Amount Due** | **$3,501.10** |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
| --- |
| NEWSCO |
| Invoice No. |
| 12977 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions |
| --- | --- | --- | --- | --- | --- |
| 8/22/2019 | | 8/22/2019 | | WE 8/17/19 | JOB # 191169TX |

| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | Unit Price | Amount |
| --- | --- | --- | --- | --- | --- |
| 7.00 | 7.00 | EA | JOB # 191169TX - JUSTIN JACKSON | $909.50 | $6,366.50 |
| 7.00 | 7.00 | EA | DAY RATE / DAYS WORKED - | $53.50 | $374.50 |
| 493.00 | 493.00 | EA | PER DIEM - 8/11-8/17 | $0.75 | $369.75 |
| | | | TRAVEL EXPENSE - 8/17 | | |
| | | | | | |
| | | | MIDKIFF - 43-06 - 0627 - 0607BH - SCAN | | |
| | | | GOLD TX | | |

| Payment/Terms: Net 45 Due by 10/6/2019 | Subtotal | $7,110.75 |
| --- | --- | --- |
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $7,110.75 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
| --- |
| NEWSCO |
| Invoice No. |
| 12978 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 8/22/2019 | | | 8/22/2019 | | WE 8/10/19 | | JOB # 191169TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| 2.00 | 2.00 | EA | JOB # 191169TX - JUSTIN JACKSON | | | | $454.75 | $909.50 |
| 5.00 | 5.00 | EA | STANDBY RATE - 8/4-8/5 | | | | $909.50 | $4,547.50 |
| 7.00 | 7.00 | EA | DAY RATE / DAYS WORKED -  8/6 - 8/10 | | | | $53.50 | $374.50 |
| 1.00 | 1.00 | EA | PER DIEM - 8/4 - 8/10 | | | | $90.00 | $90.00 |
| | | | TRAVEL EXPENSE - _  8/6 & 8/10 | | | | | |
| | | | | | | | | |
| | | | JOB # 191169TX - MIDKIFF 43-06 - 0627 - | | | | | |
| | | | 0607BH -  SCAN GOLD TX | | | | | |

| Payment/Terms:  Net 45 Due by 10/6/2019 | Subtotal | $5,921.50 |
| --- | --- | --- |
| | Tax | |
| | Freight Charges | |
| Received By :  x_____ | **Total Amount Due** | $5,921.50 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 12980 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|
| 8/22/2019 | | 8/22/2019 | | WE 8/10/2019 | JOB # 191169TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | Unit Price | Amount |
| 2.00 | 2.00 | EA | JOB # 191169TX - ROBERT DUTTON | | $508.25 | $1,016.50 |
| 5.00 | 5.00 | EA | STAND BY - 8/4 -8/5 | | $1,016.50 | $5,082.50 |
| 7.00 | 7.00 | EA | DAY RATE / DAYS WORKED - 8/6-8/10 | | $53.50 | $374.50 |
| 1.00 | 1.00 | EA | PER DIEM - _ | | $369.75 | $369.75 |
| | | | TRAVEL EXPENSE - _ | | | |
| | | | | | | |
| | | | JOB # 191169TX - MIDKIFF 43 -06 627 0607BH | | | |
| | | | - SCAN GOLD TX | | | |

Pmt                  Bal

CM 05254  (369⁷⁵)  # 6473⁵⁰

| Payment/Terms:  Net 45 Due by 10/6/2019 | Subtotal | $6,843.25 |
|---|---|---|
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $6,843.25 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Credit Memo

| Customer Number |
| --- |
| NEWSCO |
| Credit Memo No. |
| 05254 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 9/11/2019 | | | 8/22/2019 | | | | Credit Inv# 12980 | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| -1.00 | -1.00 | EA | JOB # 191169TX - ROBERT DUTTON TRAVEL EXPENSE - _ | | | | $369.75 | -$369.75 |
| | | | JOB # 191169TX - MIDKIFF 43 -06 627 0607BH - SCAN GOLD TX | | | | | |
| | | | ** Credit for travel exp as it was billed on Inv# 12982 ** | | | | | |

| Payment/Terms:  CrInv - 12980 - 8/22/2019 | | Subtotal | -$369.75 |
| --- | --- | --- | --- |
| | | Tax | |
| | | Freight Charges | |
| Received By :  x_____ | | **Total Amount Due** | -$369.75 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
| --- |
| NEWSCO |

| Invoice No. |
| --- |
| 12981 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 8/22/2019 | | | 8/22/2019 | | WE 8/10/19 | | JOB # 191169 TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| 5.00 | 5.00 | EA | JOB # 191169 TX - JOHNATHAN HUGHES | | | | $454.75 | $2,273.75 |
| 7.00 | 7.00 | EA | DAY RATE / DAYS WORKED - 8/6 - 8/10 | | | | $53.50 | $374.50 |
| 2.00 | 2.00 | EA | PER DIEM - 8/4-8/10 | | | | $227.38 | $454.76 |
| | | | STAND BY - 8/4-8/5 | | | | | |
| | | | | | | | | |
| | | | JOB # 191169TX - MIDKIFF 43-06 0067 | | | | | |
| | | | 0607BH - SCAN GOLD TX | | | | | |

Payment/Terms:  Net 45 Due by 10/6/2019

| | |
| --- | --- |
| Subtotal | $3,103.01 |
| Tax | |
| Freight Charges | |
| **Total Amount Due** | $3,103.01 |

Received By : x_____

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 12982 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions |
|---|---|---|---|---|---|
| 8/22/2019 | | 8/22/2019 | | JOB # 191169 TX | WE 8/3/2019 |

| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | Unit Price | Amount |
|---|---|---|---|---|---|
| 1.00 | 1.00 | EA | JOB # 191169 - ROBERT DUTTON | | |
| 1.00 | 1.00 | EA | STANDBY - 8/3/19 | $508.25 | $508.25 |
| 1.00 | 1.00 | EA | TRAVEL EXPENSE - 8/3/19 | $369.75 | $369.75 |
| | | | PER DIEM - 8/3 | $53.50 | $53.50 |
| | | | JOB # 191169 - MADKIFF 43-06-0627 0607BH - SCAN  GOLD TX | | |

Payment/Terms:  Net 45 Due by 10/6/2019

Received By : x_____

| | |
|---|---|
| Subtotal | $931.50 |
| Tax | |
| Freight Charges | |
| **Total Amount Due** | **$931.50** |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13011 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|---|
| 9/5/2019 | | | 9/5/2019 | | WE 8/31/2019 | JOB # 191201 TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | Unit Price | Amount |
| 4.00 | 4.00 | EA | JOB # 191201 TX - JOHNATHAN HUGHES DAY RATE / DAYS WORKED - 8/28-8/31 | | | $460.10 | $1,840.40 |
| 1.00 | 1.00 | EA | STAND BY RATE - 8/27/19 | | | $230.05 | $230.05 |
| 5.00 | 5.00 | EA | PER DIEM - 8/27-8/31 | | | $53.50 | $267.50 |
| 488.00 | 488.00 | EA | TRAVEL MILEAGE - 8/26/19 | | | $0.75 | $366.00 |
| | | | JOB # 191201 TX - MIDKIFF 43-06 0627 0617AH - SCAN GOLD TX | | | | |

Payment/Terms:  Net 45 Due by 10/20/2019

Received By : x_____

| | |
|---|---|
| Subtotal | $2,703.95 |
| Tax | |
| Freight Charges | |
| **Total Amount Due** | $2,703.95 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

## Invoice

| Customer Number |
| --- |
| NEWSCO |
| Invoice No. |
| 13021 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions | |
| --- | --- | --- | --- | --- | --- | --- |
| 9/11/2019 | | 9/11/2019 | | JOB # 191169TX | WE 9/7/19 | |

| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | Unit Price | Amount |
| --- | --- | --- | --- | --- | --- |
| 3.00 | 3.00 | EA | JOB # 191169TX - ROBERT DUTTON | | |
| 3.00 | 3.00 | EA | DAY RATE / DAYS WORKED - 9/1-9/3 | $1,016.50 | $3,049.50 |
| 493.00 | 493.00 | EA | PER DIEM - 9/1-9/3 | $53.50 | $160.50 |
| | | | TRAVEL MILEAGE | $0.75 | $369.75 |
| | | | | | |
| | | | JOB # 191169 TX - MIDKIFF 43-06 0627 | | |
| | | | 0617AH - SCAN GOLD TX | | |

| Payment/Terms:  Net 45 Due by 10/26/2019 | Subtotal | $3,579.75 |
| --- | --- | --- |
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $3,579.75 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13022 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|---|
| 9/11/2019 | | | 9/11/2019 | | JOB # 191201 TX | WE 9/7/19 | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | Unit Price | Amount |
| 3.00 | 3.00 | EA | JOB # 191201TX - JUSTIN JACKSON | | | $909.50 | $2,728.50 |
| 3.00 | 3.00 | EA | DAY RATE / DAYS WORKED  - 9/1-9/3 | | | $53.50 | $160.50 |
| 493.00 | 493.00 | EA | PER DIEM - 9/1-9/3 | | | $0.75 | $369.75 |
| | | | TRAVEL MILEAGE | | | | |
| | | | JOB # 191169 TX - MIDKIFF 43-06 0627 | | | | |
| | | | 0617AH - SCAN GOLD TX | | | | |

| Payment/Terms:  Net 45 Due by 10/26/2019 | | Subtotal | $3,258.75 |
|---|---|---|---|
| | | Tax | |
| | | Freight Charges | |
| Received By : x_____ | | **Total Amount Due** | $3,258.75 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13036 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|
| 9/25/2019 | | 9/25/2019 | | JOB # 19121TX | WE 9/14/19 | |

| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | Unit Price | Amount |
|---|---|---|---|---|---|
| 1.00 | 1.00 | EA | JOB # 19121TX - ROBERT DUTTON<br>STAND BY RATE - 9/12/19 | $508.25 | $508.25 |
| 2.00 | 2.00 | EA | DAY RATE / DAYS WORKED - 9/13-9/14 | $1,016.50 | $2,033.00 |
| 3.00 | 3.00 | EA | PER DIEM - 9/12-9/14 | $53.50 | $160.50 |
| | | | | | |
| | | | JOB # 191217TX - MIDKIFF 43-06 0668 # 0668<br>DH - SCAN GOLD - TX | | |

**Payment/Terms:  Net 45 Due by 11/9/2019**

| | |
|---|---|
| Subtotal | $2,701.75 |
| Tax | |
| Freight Charges | |
| **Total Amount Due** | $2,701.75 |

Received By : x_____

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13038 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|
| 9/25/2019 | | 9/25/2019 | | JOB # 19201TX | WE 9/7/19 | |

| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | Unit Price | Amount |
|---|---|---|---|---|---|
| 3.00 | 3.00 | EA | JOB # 191201TX - JOHNATHAN HUGHES<br>DAY RATE / DAYS WORKED - 9/1-9/3 | $460.10 | $1,380.30 |
| 3.00 | 3.00 | EA | PER DIEM - 9/1-9/4 | $53.50 | $160.50 |
| 488.00 | 488.00 | EA | TRAVEL MILEAGE - 9/4/19 | $0.75 | $366.00 |
| | | | | | |
| | | | JOB # 191217TX - MIDKIFF 43-06 0668 # 0668<br>DH - SCAN GOLD - TX | | |

| Payment/Terms: Net 45 Due by 11/9/2019 | | Subtotal | $1,906.80 |
|---|---|---|---|
| | | Tax | |
| | | Freight Charges | |
| Received By : x_____ | | **Total Amount Due** | $1,906.80 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13067 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
|---|---|---|---|---|---|---|---|
| 10/23/2019 | | 10/23/2019 | | WE 10/12/2019 | | JOB # 191226TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | Unit Price | Amount |
| | | | JOB # 191226TX  - JUSTIN JACKSON | | | | |
| 3.00 | 3.00 | EA | STANDBY RATE - 10/6-10/8 | | | $642.00 | $1,926.00 |
| 3.00 | 3.00 | EA | PER DIEM - 10/6-10/8 | | | $42.80 | $128.40 |
| 4.00 | 4.00 | EA | DAY RATE / DAYS WORKED - 10/9-10/12 | | | $909.50 | $3,638.00 |
| 4.00 | 4.00 | EA | PER DIEM - 10/9-10/12 | | | $53.50 | $214.00 |
| | | | | | | | |
| | | | JOB # 191226TX - MIDKIFF 43-06 | | | | |
| | | | 0625#0605BH - FELDERHOFF32 - TEXAS | | | | |

| Payment/Terms:  Net 45 Due by 12/7/2019 | Subtotal | $5,906.40 |
|---|---|---|
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $5,906.40 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
| --- |
| NEWSCO |
| Invoice No. |
| 13068 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY 82601

**Ship To:**

| Date | Salesperson | | Order Date | Order No. | Purchase Order No. | | Special Instructions | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 10/23/2019 | | | 10/23/2019 | | WE 10/12/2019 | | JOB # 191226TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | | | Unit Price | Amount |
| 2.00 | 2.00 | EA | JOB # 191226TX - ROBERT DUTTON<br>STANDBY RATE - 10/7-10/8 | | | | $508.25 | $1,016.50 |
| 4.00 | 4.00 | EA | DAY RATE / DAYS WORKED - 10/9-10/12 | | | | $1,016.50 | $4,066.00 |
| 6.00 | 6.00 | EA | PER DIEM - 10/7-10/12 | | | | $53.50 | $321.00 |
| | | | JOB # 191226TX - MIDKIFF 43-06<br>0625#0605BH - FELDERHOFF32 - TEXAS | | | | | |

| Payment/Terms: Net 45 Due by 12/7/2019 | Subtotal | $5,403.50 |
| --- | --- | --- |
| | Tax | |
| | Freight Charges | |
| Received By : x_____ | **Total Amount Due** | $5,403.50 |

**Hill Country Staffing Co.**
501 S Austin Ave
Suite 1310
Georgetown TX 78626

# Invoice

| Customer Number |
|---|
| NEWSCO |
| Invoice No. |
| 13111 |

**Bill To:**

NEWSCO INTERNATIONAL
3101 WOOD COURT
Casper WY  82601

**Ship To:**

| Date | Salesperson | Order Date | Order No. | Purchase Order No. | Special Instructions | |
|---|---|---|---|---|---|---|
| 11/26/2019 | | 11/26/2019 | | WE 10.27.19 | JOB # 191226 TX | |
| Qty. Ordered | Qty. Shipped | U/M | Description / Stock Number | | Unit Price | Amount |
| 2.00 | 2.00 | EA | JOB # 191226 TX - DANIEL CHASE | | $963.00 | $1,926.00 |
| 2.00 | 2.00 | EA | DAY RATE / DAYS WORKED - 10/26-10/27 | | $53.50 | $107.00 |
| 492.00 | 492.00 | EA | PER DIEM - 10/26-10/27 | | $0.55 | $270.60 |
| | | | TRAVEL EXPENSE - _ | | | |
| | | | | | | |
| | | | JOB # 191226TX - MIDKIFF 43-06 0625 | | | |
| | | | #0605BH - FELDERHOFF - TX | | | |

| Payment/Terms:  Net 45 Due by 1/10/2020 | | Subtotal | $2,303.60 |
|---|---|---|---|
| | | Tax | |
| | | Freight Charges | |
| Received By : x_____ | | **Total Amount Due** | $2,303.60 |

**<u>EXHIBIT 2 TO STIPULATIONS</u>**

Modified Lien Notice



**BARRON & NEWBURGER, P.C.**

R. J. Shannon

7320 N MoPac Expy, Suite 400, Austin, Texas
Direct Dial: (512) 569-9106 I rshannon@bn-lawyers.com

February 3, 2020

**VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

XTO Energy Inc.
c/o Corporation Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Re:   Modification of Mineral Lien Notice—Hill Country Staffing Co. LLC / Newsco
International Energy Services USA Inc.

To whom it may concern:

The undersigned firm of attorneys has been retained by Hill Country Staffing Co., LLC
("Hill Country Staffing Co.") with respect to a lien claim against mineral property pursuant to
Chapter 56 of the Texas Property Code.

Hill Country Staffing Co. sent you notices of mineral liens dated January 17, 2020 (the
"Mineral Lien Notices") in connection with the following properties (the "Subject Property"):

- Cassidy Unit 2 #3066DH, Cassidy Unit 2 # 3006BH, Cassidy Unit 2 #3076JH, and
Cassidy Unit 2 # 3006BH Wells and associated leases in Martin County, Texas;

- John Braun A Unit 3 #1341SH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0625 #0605BH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0627 #0607BH and Midkiff 43-06 0627 #0617AH Wells and
associated leases in Midland County, Texas;

- Midkiff 43-06 0668 #0668DH Well and associated leases in Midland County, Texas.

In the Mineral Lien Notices, Hill Country Staffing Co. asserted that it held mineral liens in
the amount of $233,795.11 and sought that you withhold payments to Newsco International Energy
Services USA Inc. ("Newsco") in such amounts pursuant to Tex. Prop. Code § 56.043.

Newsco hereby modifies the Mineral Lien Notices to reflect that Hill Country Staffing has
mineral liens securing only SIXTY-TWO THOUSAND SEVEN HUNDRED AND 11/100
DOLLARS ($62,700.11) and that the liens attach ***only*** to the following properties:

**BꙮN**

February 3, 2020
Page 2

---

- Midkiff 43-06 0625 #0605BH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0627 #0607BH and Midkiff 43-06 0627 #0617AH Wells and associated leases in Midland County, Texas;

- Midkiff 43-06 0668 #0668DH Well and associated leases in Midland County, Texas.

Hill Country Staffing Co. does not request that you withhold payments to Newsco in any amount more than $62,700.11 pursuant to the Mineral Lien Notices and Tex. Prop. Code, § 56.043.

Hill Country Staffing Co. reserves all other rights, including the right to file an affidavit or affidavits in support of such liens, collect attorney's fees in any action to enforce the liens or declare its lien or claim is invalid or unenforceable in whole or in part, and assert additional claims in Newsco's bankruptcy case.

If you have any questions or concerns, please do not hesitate to contact the undersigned.

Yours truly,

R. J. Shannon
BARRON & NEWBURGER, P.C.

cc: **VIA EMAIL**

Attn: Stephen A. Roberts
Bankruptcy Counsel to Newsco Energy Services USA Inc.
Clark Hill Strasburger
720 Brazos Street STE 700
Austin, TX 78701
Email: stephen.roberts@clarkhillstrausburger.com

## **EXHIBIT 3 TO STIPULATIONS**

Hill Country Staffing Release Pursuant to Compromise Order



**BARRON & NEWBURGER, P.C.**

R. J. Shannon

7320 N MoPac Expy, Suite 400, Austin, Texas
Direct Dial: (512) 569-9106 l rshannon@bn-lawyers.com

February 10, 2020

**VIA CERTIFIED MAIL/RETURN RECEIPT REQUESTED**

XTO Energy Inc.
c/o Corporation Service Company
211 E. 7th Street, Suite 620
Austin, TX 78701-3218

Re:    Withdrawal of Mineral Lien Notices and Waiver of Mineral Liens—Hill Country Staffing
       Co. LLC / Newsco International Energy Services USA Inc.

To whom it may concern:

The undersigned firm of attorneys has been retained by Hill Country Staffing Co., LLC
("Hill Country Staffing Co.") with respect to a lien claim against mineral property pursuant to
Chapter 56 of the Texas Property Code.

Hill Country Staffing Co. sent you notices of mineral liens dated January 17, 2020 (the
"Mineral Lien Notices") in connection with the following properties (the "Subject Property"):

- Cassidy Unit 2 #3066DH, Cassidy Unit 2 # 3006BH, Cassidy Unit 2 #3076JH, and
  Cassidy Unit 2 # 3006BH Wells and associated leases in Martin County, Texas;

- John Braun A Unit 3 #1341SH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0625 #0605BH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0627 #0607BH and Midkiff 43-06 0627 #0617AH Wells and
  associated leases in Midland County, Texas;

- Midkiff 43-06 0668 #0668DH Well and associated leases in Midland County, Texas.

In the Mineral Lien Notices, Hill Country Staffing Co. asserted that it held mineral liens in
the amount of $233,795.11 and sought that you withhold payments to Newsco International Energy
Services USA Inc. ("Newsco") in such amounts pursuant to Tex. Prop. Code § 56.043.

On February 3, 2019, Hill Country Staffing Co. sent notice modifying the Mineral Lien
Notices (the "Mineral Lien Modification") to reflect that Hill Country Staffing Co. had mineral liens
securing only $62,700.11 and that the liens attached only to the following properties:

February 10, 2020
Page 2

---

- Midkiff 43-06 0625 #0605BH Well and associated leases in Midland County, Texas;

- Midkiff 43-06 0627 #0607BH and Midkiff 43-06 0627 #0617AH Wells and associated leases in Midland County, Texas;

- Midkiff 43-06 0668 #0668DH Well and associated leases in Midland County, Texas.

Since the Mineral Lien Modification was sent, Newsco has settled the debt on which the lien asserted by Hill Country Staffing Co. was based. Accordingly, Hill Country Staffing Co. no longer requests that you retain or withhold any payment under section 56.043 of the Texas Property Code to Newsco on account of Newsco's obligations to Hill Country Staffing Co. or Hill Country Staffing Co.'s previously asserted liens.

**PURSUANT TO THE SETTLEMENT AND THE ORDER OF THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS ATTACHED HERETO AS <u>EXHIBIT A</u>, HILL COUNTRY STAFFING CO. HAS WAIVED ALL OF ITS RIGHTS TO FILE LIENS ON THE PROPERTY OR INTERESTS OF XTO ENERGY, INC. UNDER CHAPTER 56 OF THE TEXAS PROPERTY CODE RELATING TO SERVICES HILL COUNTRY STAFFING CO. PROVIDED PRIOR TO FEBRUARY 6, 2020, AS A SUBCONTRACTOR OF NEWSCO.**

Hill Country Staffing Co. reserves all other rights, including the right to file assert claims in Newsco's bankruptcy case.

If you have any questions or concerns, please do not hesitate to contact the undersigned.

Yours truly,

R. J. Shannon
BARRON & NEWBURGER, P.C.

Enclosure

cc: **VIA EMAIL**

Attn: Stephen A. Roberts
Bankruptcy Counsel to Newsco Energy Services USA Inc.
Clark Hill Strasburger
720 Brazos Street STE 700
Austin, TX 78701
Email: stephen.roberts@clarkhillstrausburger.com

## EXHIBIT A

**Order of U.S. Bankruptcy Court for the Southern District of Texas**



**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
02/11/2020

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **NEWSCO INTERNATIONAL ENERGY** | § | **Case No. 19-36767 (DRJ)** |
| **SERVICES USA, INC.,** | § | |
| | § | **Chapter 11** |
| Debtor. | § | |

**ORDER GRANTING EMERGENCY MOTION FOR APPROVAL OF**
**COMPROMISE AND SETTLEMENT WITH HILL COUNTRY STAFFING, LLC**
(Docket No. 78)

The Court has considered the Debtor's Emergency Motion for Approval of Compromise

and Settlement with Hill Country Staffing Co., LLC under Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Motion").[1] The Court has jurisdiction to hear and

determine the Motion and to grant the relief requested therein, pursuant to 28 U.S.C. § 1334.

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court finds that

proposed compromise is fair, equitable, reasonable and in the best interests of the estate and its

creditors, is a valid and sound exercise of the Debtor's business judgment and should be

approved. Adequate notice of the Motion has been given to creditors and parties-in-interest

in this case. Accordingly, it is therefore:

ORDERED that the following agreement is hereby approved:

1. Hill Country Staffing, LLC waives all of its rights to file liens on the property or

    interests of XTO Energy, Inc. under Chapter 56 of the Texas Property Code

    relating to services Hill Country Staffing, LLC provided prior to February 6,

    2020, as a subcontractor of Debtor; and, upon the entry of this Order, Hill

---

[1] All terms not defined herein are given the meaning ascribed to them in the Application.

Country Staffing, LLC shall immediately provide notice to XTO Energy, Inc. that it has waived such lien rights.

2. Hill Country Staffing, LLC shall be allowed an administrative claim up to $62,700.11 to the extent that its waiver under this order constitutes a waiver of valid and enforceable liens.

3. In order for Hill Country Staffing, LLC to be allowed an administrative claim, it must file a motion for the allowance of an administrative claim. The Debtor and any creditors and parties in interest shall have the right to object to the amount and extent of such claim.

**Signed: February 10, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

## **EXHIBIT 4 TO STIPULATIONS**

Master Services Agreement



October 7, 2014

Lee Harns
Newsco International Energy Services USA Inc.
1600 Glenarm Place, Suite 2205
Denver, CO  80202

Dear Sir or Madam,

A fully executed copy (or original if you provided two originals) of XTO Energy's
Master Service Agreement is enclosed for your files.

We value our relationship with you and have appreciated your cooperation in this
matter.  Please contact me you have any questions.

Sincerely,

Susan E. King
Procurement Assistant, Master Contracts

XTO Energy Inc.                    Office:  817-885-3356
810 Houston Street                    Fax:  817-887-4960
Fort Worth, TX 76102             E-Mail:  sue_king@xtoenergy.com



September 30, 2014

Lee Harns
Newsco International Energy Services USA Inc.
1600 Glenarm Place, Suite 2205
Denver, CO 80202



Dear Sir or Madam,

As a supplier to XTO Energy Inc. (an ExxonMobil Subsidiary), the services you perform and the well being of your company are directly linked to the continued success of XTO Energy Inc. In this regard, we believe it benefits both our companies to execute a Master Service Agreement to define the non-commercial terms and conditions that apply to the work you perform for XTO Energy Inc.

The attached Master Service Agreement is written to distribute the responsibilities and liabilities associated with the work equitably between XTO Energy Inc. and its suppliers. We are asking all suppliers performing work on one of our locations to execute this Agreement.

Please execute the Master Service Agreement included with this letter and note the following requirements.

1.  Request your insurance agent to mail or fax (817-887-4960) a current certificate of insurance evidencing coverage in accordance with Article 11.0 of the Master Service Agreement. Please pay particular attention to the Waiver of Subrogation and Named Additional Insured requirements. A sample certificate is enclosed for your review.

2.  Please fill in the blank lines on page 1 of the Agreement by writing the type of organization your company is and by indicating the principal place of business for the company.

3.  Sign page 13 of the Agreement.

4.  Provide your company's Federal Tax I.D. number in the space provided on page 13.

5.  Make corrections to pages 1 and 13, if necessary, to accurately reflect the legal name of your company and initial if name changes are made.

6.  Provide a list of all affiliated companies, if any, covered by this Agreement.

7.  Briefly list below the products and/or services provided by your company.
    Directional Drilling Services i.e. Down Hole Mud Motors, Measurement While Drilling, Logging While Drilling

Return a copy of this letter and the entire original executed Agreement to the following address:
XTO Energy Inc.
Attn: Sue King
810 Houston Street
Fort Worth, Texas 76102

Or via e-Fax: 817-887-4960

We value our relationship with you and appreciate your cooperation in this matter. Please contact me at 817-885-3356 with any questions.

Sincerely,

Susan E. King
Procurement Assistant, Master Contracts

CONFIDENTIAL

**THIS MASTER SERVICE AGREEMENT CONTAINS INDEMNIFICATION PROVISIONS, RELEASE OF LIABILITY AND ALLOCATION OF RISK. BY EXECUTING THIS MASTER SERVICE AGREEMENT AND/OR COMMENCING THE WORK, XTO ENERGY INC. AND CONTRACTOR AGREE TO BE BOUND BY ALL OF THESE PROVISIONS.**

## MASTER SERVICE AGREEMENT

THIS MASTER SERVICE AGREEMENT is made and entered into this 30th day of September, 2014, between **XTO ENERGY INC. ("XTO")**, a corporation having its principal place of business at 810 Houston St., Fort Worth, TX 76102, and **Newsco International Energy Services USA Inc.**, a _____Corp._____ having its principal place of business at **7197 W. Derrick Dr. Casper, WY 82604** ("Contractor"). XTO and Contractor are referred to herein individually as a "Party" and collectively as the "Parties."

I.   Preamble.  This Master Service Agreement controls and governs the Work (as defined below) performed by Contractor for XTO. It may be used in conjunction with oral or written Work Orders between the parties. Only the particular terms included in this Master Service Agreement that have application to the type of Work that is covered by a particular Work Order will apply. This Master Service Agreement does not obligate XTO to order Work from Contractor and does not obligate Contractor to accept orders for Work from XTO.

II.  Definitions.

2.1   "Affiliate" means, with respect to either Party, any individual, partnership, joint venture, firm, corporation, association, trust or other entity directly or indirectly controlling, controlled by, or under common control with, such Party.

2.2   "Agreement" means this Master Service Agreement and any oral or written Work Orders between the Parties.

2.3   "Contractor Group" shall mean individually or in any combination Contractor, its Affiliates, any Subcontractor of Contractor, and their respective directors, officers, employees, representatives, agents, licensees, invitees and assignees.

2.4   "Master Service Agreement" means this document standing alone.

2.5   "Site" means the location or locations at which Contractor is performing the Work for XTO.

2.6   "Subcontractor" means a party that Contractor engages to perform all or a part of the Work. References to Contractor in this Agreement will include, where appropriate, Contractor's Subcontractors.

2.7   "Subsidiary" means, with respect to either Party, any individual, partnership, joint venture, firm, corporation, association, trust or other entity directly or indirectly controlled by such Party.

2.8   "XTO Group" shall mean individually or in any combination XTO, its Affiliates, co-owners or co-lessees (whether of a fee, lease, mineral lease or otherwise) at the Site, joint interest owners, joint venturers, partners, contractors and subcontractors other than Contractor or its Subcontractors and all of their respective directors, officers, employees, representatives, agents, licensees and invitees.

2.9   "Work" means everything to be provided or performed by the Contractor Group from time to time under this Master Service Agreement, whether with or without a particular written or oral Work Order.

CONFIDENTIAL          NewscoUSA 0156

2.10    "Work Order" means the directions from XTO to Contractor, which may be oral (which may be followed by a writing within ten (10) days of the oral request) or written, to provide or furnish XTO with equipment (including, without limitation, equipment fabricated by the Contractor Group), material or services at a specific time, place and cost; such directions are incorporated in this Master Service Agreement by reference.

III.    <u>Conduct of Work</u>.

3.1    <u>Commencement of Work</u>. When the terms of a Work Order for the materials, services and/or equipment desired by XTO are agreed upon, Contractor will commence furnishing same at the agreed time, and continue such operations safely, diligently and without delay, in strict conformity with the specifications and requirements contained herein and in such Work Order until complete.

3.2    <u>Work Standards</u>. All Work by the Contractor Group will be performed with due diligence, in a good, safe and workmanlike manner, using skilled, competent and experienced workers and supervisors and in accordance with good oilfield servicing or other applicable business or professional practices. All materials, equipment, supplies or manufactured articles furnished or fabricated by the Contractor Group (collectively for convenience called "Contractor Provided Equipment") in the performance of the Work will be selected and used with good oilfield or other applicable business or professional practices for their respective purposes and will be free from defects. The Work and all Contractor Provided Equipment will be covered by all implied warranties available at law unless expressly provided to the contrary by this Master Service Agreement or expressly disclaimed in a separate writing signed by an authorized representative of XTO. In addition to all rights and remedies available to XTO by law, all of which are reserved, any portion of the materials, equipment, services or Work found defective or unsuitable will be removed, replaced or corrected by Contractor with no additional cost or risk to XTO. Contractor agrees to inspect all materials and equipment furnished by XTO and will notify XTO of any apparent defects therein before using the materials and equipment. Should the Contractor Group use such materials and equipment without notifying XTO of any such defect, Contractor will be deemed to have assumed all risk and liability for any mishap that may occur in operations conducted hereunder by reason of failure or defects in such material and equipment. Contractor will not be liable for claims due solely to latent defects.

3.3    <u>Time and Quality</u>. Time and quality of work shall be the essence of this Agreement.

IV.    <u>Responsibilities of the Parties</u>.

4.1    <u>Contractor's Responsibilities</u>. Contractor, at its sole cost, risk and expense, will:

4.1.1    Furnish the services of all personnel required to perform and complete the Work.

4.1.2    Supply all machinery, equipment, tools, materials and expendable construction items, transportation, and supplies that are required to perform and complete the Work, unless XTO has agreed in writing to supply such materials and equipment.

4.1.3    Provide all necessary safeguards for the protection of all aspects of the Work and all persons employed directly or indirectly by the Contractor Group or third parties.

CONFIDENTIAL      NewscoUSA 0157

4.1.4 Obtain and provide evidence to XTO of all permits and licenses that are required to perform the Work, except for air permits and EPA permits.

4.1.5 Pay (i) any occupation or similar taxes which arise from the Work and which are required under the law or for which XTO has elected not to give the Contractor a direct pay certificate or other valid exemption certificate; (ii) all payroll taxes, all taxes measured by payrolls, all assessments or charges for social security purposes, unemployment compensation, old-age pensions or benefits, annuities or other charges that are required to be made with respect to or measured by the wages and salaries of persons employed by the Contractor Group that are imposed by or under the laws of either the United States or the State in which the Work is performed; and (iii) for all labor and materials furnished by the Contractor Group for the Work. Contractor shall protect, defend, indemnify and hold harmless the XTO Group from and against the failure of any member of the Contractor Group to pay such taxes. Contractor agrees to require this same agreement from each of its Subcontractors and to indemnify the XTO Group for any breach or failure to obtain such agreements.

4.1.6 Immediately notify XTO of any incident arising out of or relating to the Work resulting in death or personal injury to any person or property damage or loss, including, but not limited to, environmental damages or losses, and will furnish XTO a written report within 72 hours of the incident detailing all relevant facts. Contractor will furnish XTO with a copy of all documents made by Contractor to any insurer or governmental authority regarding such accidents or occurrences.

4.1.7 Be responsible for the training, supervision and safety of all persons within the Contractor Group who are performing the Work, the Work performed and all materials, services and equipment provided by the Contractor Group or any member thereof, and any vendor or supplier of the Contractor Group incidental to the Work.

4.2 **XTO's Responsibilities**. XTO will:

4.2.1 Furnish materials and equipment that XTO has agreed to furnish.

4.2.2 Provide access to the Site.

4.2.3 Provide other goods and/or services as agreed in writing by the Parties.

V. **Payment and Audit Rights**.

5.1 **Contract Price**. XTO will pay Contractor for the Work based on the rate and terms in the Work Orders. Unless otherwise provided in this Agreement and subject to Article IX hereof and retention rights permitted by law, payment will be due 30-60 days after XTO's receipt of a correct invoice and supporting documentation therefor. *PB*

5.2 **Audit Rights**. Contractor will preserve documentation related to a Work Order for three years after completion of the Work Order. XTO may audit Contractor's compliance with this Agreement and any Work Order hereunder and Contractor will provide XTO access to Contractor's documentation, personnel and facilities in support of any such audit and will permit XTO to reproduce any of the documentation. Contractor will cause any subcontractors to preserve documentation and allow XTO to audit to the same extent. XTO will bear its own costs to perform an audit, but will not be liable for Contractor's or subcontractor's costs resulting from an audit.

CONFIDENTIAL          NewscoUSA 0158

## VI.   Warranties.

6.1   Services.  For services provided, Contractor warrants that the Work will be and has been completed in accordance with this Agreement, the applicable Work Order, and the most current applicable codes and industry standards, using its best professional efforts and in accordance with the most current generally accepted standards in the applicable industry, business or profession.

6.2   Equipment/Materials.  For equipment and materials provided by the Contractor Group, Contractor, in addition to the other provisions hereof, warrants (i) good and merchantable title to the equipment so provided; (ii) that the equipment provided will be free from defects in material and workmanship for a period of 12 months following the date of installation; and (iii) that they will conform to applicable specifications, drawings and samples.

## VII.   Patents.

Contractor represents and warrants that the use or construction of any and all tools, equipment and other materials furnished by the Contractor Group and used in the Work does not infringe on any license or patent issued to, or applied for by, a third party.

## VIII.   Confidentiality.

Contractor will treat, and will cause the Contractor Group to treat, all information obtained in the performance of the Work as confidential, and Contractor will not, and will ensure that the Contractor Group will not, divulge such information to any person or entity without the prior written consent of XTO.  Contractor will not, and Contractor will ensure that the Contractor Group will not, use any such information except in connection with the Work and will not disclose details of the Work to any third party except to those who are to perform the Work, and then only to the extent that it is required to perform the particular portion of the Work.  Contractor will take, and Contractor will ensure that the Contractor Group will take, all reasonable precautions to safeguard any documents containing proprietary information.  The restrictions in this Section VIII shall not apply to any information: (i) which is at the time of disclosure in, or after disclosure falls into, the public domain through no fault of Contractor or any member of the Contractor Group; (ii) which is first received by Contractor from a third party who, insofar as is known to Contractor, is lawfully in possession of such information and not in breach of any contractual, legal or fiduciary obligation to XTO or the XTO Group; and (iii) disclosure of which, upon advice of counsel, Contractor reasonably deems necessary to comply with any legal or regulatory obligation which Contractor believes in good faith it has.  In the event that either Party or anyone to whom it transmits confidential information pursuant to this Agreement becomes legally required to disclose any such information, that Party shall provide the other Party with prompt written notice so that it may seek a protective order or other appropriate remedy.  In the event that such protective order or other remedy is not obtained, the disclosing Party shall furnish only that portion of the confidential information which is legally required to be furnished in the opinion of the disclosing Party's counsel and no more.

## IX.   Liens.

Contractor will make timely and full payments to all workmen, materialmen and Subcontractors, insure that all members of the Contractor Group make timely and full payments to all workmen, materialmen and Subcontractors, and take all other action necessary to keep the Site and the Work free of liens.  Contractor agrees to indemnify, protect, defend and hold harmless the XTO Group from and against all such charges, claims and liens unless caused by XTO's failure to pay Contractor.  XTO may withhold payment of amounts due to any member of the Contractor Group under this Agreement (including the applicable Work Order and any other Work Orders) and any other contract between XTO and Contractor until XTO has been furnished with proof satisfactory to it that either all amounts have been paid or Contractor has provided for satisfactory payment.  If a lien arising from the Work attaches to the Site or the Work, XTO may, at its sole option, make any payment necessary to discharge the lien, and it may offset the amount of the lien, together with damages and costs, including court costs and reasonable attorneys' fees, that it

CONFIDENTIAL          NewscoUSA 0159

incurs because of the lien or its discharge against any payment owing or to be owed to Contractor or any other member of the Contractor Group. Contractor will furnish, on request by XTO, receipts and releases with respect to the Work that show that costs and expenses of the Work have been paid and that no claims, liens, or rights to liens exist against the XTO Group or its property. Contractor agrees to require this same agreement from each of its Subcontractors and to defend and indemnify the XTO Group for any breach of such agreements by any of its Subcontractors.

X.    **RELEASE, DEFENSE, INDEMNITY AND HOLD HARMLESS.**

   10.1    **Contractor's Obligations.**

   10.1.1    Contractor hereby agrees to release, defend, indemnify and hold the XTO Group harmless from and against any and all claims, demands, and causes of action of every kind and character (including without limitation, fines, penalties, remedial obligations, court costs and reasonable attorneys' fees, including attorneys' fees incurred in the enforcement of this indemnity) (collectively the "Indemnifiable Claims") arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the Contractor Group, and/or loss of or damage to property or interests in property of any one or more members of the Contractor Group in any manner incident to, connected with or arising out of the performance of the Work. This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the XTO Group.

   10.1.2    To the extent not covered in Section 10.3, Contractor hereby further agrees to protect, release, defend, indemnify and hold the XTO Group harmless from and against any and all Indemnifiable Claims arising out of the emission, discharge or release of pollutants or substances prohibited by law, to the extent that such emission, discharge or release arises out of the sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the Contractor Group, which is in any manner incident to, connected with or arises out of the performance of the Work.

   10.1.3    Contractor agrees that its indemnity obligations herein will be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the XTO Group and shall provide waivers of subrogation against all members of the XTO Group. To the extent that applicable law prohibits the monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.

   10.2    **XTO's Obligations.**

   10.2.1    XTO hereby agrees to release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of, without limitation, any physical or mental injury, illness and/or death of any one or more members of the XTO Group, and/or loss of or damage to property or interests in property of any one or more members of

CONFIDENTIAL                    NewscoUSA 0160

the XTO Group in any manner incident to, connected with or arising out of the performance of the Work. This obligation is without regard to the cause or causes of such physical or mental injury, illness, death, or loss of or damage to property or interests in property and includes, but is not limited to, Indemnifiable Claims resulting from any sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the Contractor Group.

10.2.2   To the extent not covered in Section 10.3, XTO hereby further agrees to protect, release, defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising out of the emission, discharge or release of pollutants or substances prohibited by law, to the extent that such emission, discharge or release arises out of the sole, gross, joint or concurrent negligence, willful misconduct, strict liability, or other act and/or omission of any one or more members of the XTO Group, which is in any manner incident to, connected with or arises out of the performance of the Work.

10.2.3   XTO agrees that its indemnity obligations herein will either be supported by insurance with at least the minimum amounts provided in Article XI, which insurance will be primary to any other insurance provided by or available to any one or more members of the Contractor Group and shall provide waivers of subrogation against all members of the Contractor Group; or XTO may be self-insured. To the extent that applicable law prohibits monetary limits of insurance required or the indemnities voluntarily assumed hereunder, the requirements will automatically be revised to conform, to the maximum extent permitted, with applicable law.

10.3   <u>Drilling of Oil or Gas Well</u>. Notwithstanding any provision in this Article X to the contrary (but expressly subject to Section 10.3.4 hereof) the following provisions will apply to operations involved in the drilling of an oil or gas well:

10.3.1   XTO hereby releases and agrees to defend, indemnify and hold the Contractor Group harmless from and against any and all Indemnifiable Claims arising from pollution or contamination below the surface of the land, seabed or water, resulting from blowout, fire, cratering, seepage or any other uncontrolled flow of oil, gas or mineral substance during the performance of the Work, except to the extent such loss or damage is caused by the Contractor Group's gross negligence or willful misconduct.

10.3.2   XTO hereby releases and agrees to defend, indemnify and hold the Contractor Group harmless from and against the loss or damage (i) to any geological formation, strata or oil or gas reservoir or minerals resource beneath the surface of the land or water, (ii) for the loss of or damage to any hole(s) or well(s), and (iii) for any impairment of any property rights or other interests in or to any oil, gas or minerals resources resulting from blowout, fire, cratering or any other cause, which may result during the performance of the Work, except to the extent such loss or damage is caused by the Contractor Group's gross negligence or willful misconduct.

10.3.3   If equipment or instruments of the Contractor Group become lost in the well, XTO will either recover them without cost to the Contractor Group or pay the Contractor Group for the equipment or instruments (depreciated to date of loss); PROVIDED, HOWEVER, IF THE LOSS IS CAUSED BY THE GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF THE CONTRACTOR GROUP, XTO WILL NOT BE LIABLE TO ANY

CONFIDENTIAL

NewscoUSA 0161

EXTENT FOR THE LOSS AND THE CONTRACTOR GROUP WILL RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS THE XTO GROUP FROM AND AGAINST ANY LOSS, COST OR EXPENSE, INCLUDING COURT COSTS AND REASONABLE ATTORNEY'S FEES, SUFFERED OR INCURRED BY THE XTO GROUP THAT ARISES OR RESULTS THEREFROM. Contractor will be required to furnish backup documentation to support the calculation of reimbursable costs for equipment or instruments lost in the hole.

10.3.4   To the extent any provision in this Section 10.3 applicable to the drilling of an oil or gas well is in conflict with any other provision of this Article X, then such provision of this Section 10.3 will prevail, but in the event there is no such conflict the entire Article X will apply.

10.4   SPECIAL PROVISION FOR NEW MEXICO AND WYOMING.   THE FOLLOWING PROVISION APPLIES WHERE WORK IS TO BE PERFORMED IN NEW MEXICO OR WYOMING, NOTWITHSTANDING ANY PROVISIONS IN THIS AGREEMENT TO THE CONTRARY.   To the extent this Article X is governed by New Mexico or Wyoming law, then the provisions therein shall be read not to include indemnification for one's own negligence.

10.5   SPECIAL PROVISIONS FOR LOUISIANA.  THE FOLLOWING PROVISIONS APPLY WHERE WORK IS TO BE PERFORMED IN OR OFFSHORE LOUISIANA,   NOTWITHSTANDING   ANY   PROVISIONS   IN   THIS AGREEMENT TO THE CONTRARY.

10.5.1   To the extent Article X is governed by Louisiana law, then the provisions therein shall be read not to include indemnification for one's own negligence.

10.5.2   The Parties acknowledge and agree that all Work performed by Contractor and its employees pursuant to this Agreement is an integral part of and is essential to the ability of XTO to generate XTO's goods, products or services. Without limiting the foregoing, XTO and Contractor agree that XTO is and will be deemed a statutory employer of Contractor's employees for purposes of La. R.S. 23:1061(A)(3), as the same may be amended from time to time. In further consideration of the amounts to be received by Contractor pursuant to this Agreement, XTO and Contractor agree that Contractor will be responsible for the payment of all compensation benefits paid to or for the benefit of Contractor's employees. Contractor and/or Contractor's underwriters agree that they will have no right to seek and will not seek any contribution or indemnity from XTO for any compensation benefits paid by Contractor and/or Contractor's underwriters.

XI.   Insurance.

11.1   Coverages.   Subject to the provisions of Section 11.2, Contractor will secure and maintain, and will require its Subcontractors to secure and maintain, during the term of this Agreement the following insurance coverages with limits not less than the amounts specified, and with companies satisfactory to XTO who are authorized to do business in the jurisdiction where the Work is to be performed, and will furnish certificates of such insurance satisfactory to XTO before commencing the Work; provided, however, that no waiver of the provisions of this Article XI will occur to any extent merely from a failure on the part of XTO to object or complain about Contractor's failure to furnish certificates of insurance satisfactory to XTO.

11.1.1   Worker's Compensation and Employer's Liability Insurance with limits of not less than $500,000 per accident, which will fully comply with the statutory requirements of State laws as well as Federal laws, if applicable. Such insurance must be endorsed, if applicable, to cover claims under the United States Longshore and Harbor Workers' Compensation Act, the Outer Continental Shelf Lands Act, the Jones Act and general maritime law, with an "in rem" endorsement stating that an action "in rem" will be treated as a claim against the insured "in personam."

11.1.2   Commercial General Liability Insurance INCLUDING CONTRACTUAL LIABILITY, with minimum limits of liability for injury, death, or property damage of $1,000,000 combined single limit per occurrence, and an aggregate annual limit of not less than $2,000,000.

11.1.3   Automobile Liability Insurance covering owned, hired, and non-owned vehicles used by Contractor, with minimum limits of liability for injury, death, or property damage of $1,000,000 combined single limit per occurrence.

11.1.4   If the Work requires the use of marine vessels or other watercraft, Contractor will carry, or require the owner of the watercraft to carry: (i) all risk hull insurance in an amount equal to the vessel's declared value and (ii) protection and indemnity insurance, including, but not limited to, collision liability, removal of debris, towing liability and coverage for Admiralty benefits and damages under the Jones Act and general maritime law, in a minimum amount of $1,000,000 combined single limit per occurrence, and that in all such insurance the "other than owner clause" will be deleted.

11.1.5   If the Work requires the use of aircraft, Contractor will carry, or require the owner of the aircraft to carry: (i) all risks hull insurance in the amount equal to the replacement value of the aircraft and (ii) bodily injury liability, including passenger liability and property damage, of not less than $10,000,000 combined single limit per occurrence.

11.2   <u>Actual Insurance</u>. Notwithstanding the minimum coverages specified in Sections 11.1.1-11.1.5 above, should Contractor maintain on a general, blanket, comprehensive or similar basis any insurance, including but not limited to excess liability insurance or contractual liability insurance, in amounts greater than such minimums, then the actual insurance which Contractor shall provide hereunder will be such larger amounts carried by Contractor (or indicated in any certificate of insurance furnished by Contractor) and not the minimums referenced in Sections 11.1.1-11.1.5 above.

11.3   <u>Limit Adjustments</u>. XTO may at any time upon prior written notice require Contractor to increase the limits set forth to such amounts as inflation, industry practice or other factors indicate are reasonable. The foregoing insurance requirements will apply whether or not required by any other provision of this Agreement and the limits of coverage do not alter the indemnities and allocation of responsibilities in this Agreement.

11.4   <u>Primary Coverage and Additional Insureds</u>. ALL INSURANCE POLICIES AND COVERAGES LISTED IN THIS ARTICLE XI WILL EXTEND TO AND PROTECT THE XTO GROUP TO THE FULL EXTENT AND AMOUNT OF SUCH COVERAGE, INCLUDING EXCESS OR UMBRELLA INSURANCES AND WILL BE PRIMARY TO, AND RECEIVE NO CONTRIBUTION FROM, ANY OTHER INSURANCE OR SELF-INSURANCE PROGRAMS MAINTAINED BY OR ON BEHALF OF OR BENEFITING THE XTO GROUP. THE LIMITS AND COVERAGES OF THE INSURANCES OBTAINED BY CONTRACTOR WILL IN NO WAY LIMIT THE

CONFIDENTIAL                                    NewscoUSA 0163

LIABILITIES OR OBLIGATIONS ASSUMED BY CONTRACTOR UNDER THIS AGREEMENT. ALL OF CONTRACTOR'S LIABILITY INSURANCE POLICIES WILL NAME THE XTO GROUP AS AN ADDITIONAL INSURED AND CONTAIN A WAIVER ON THE PART OF THE INSURER, BY SUBROGATION OR OTHERWISE, OF ALL RIGHTS AGAINST THE XTO GROUP.

11.5    Certificate of Insurance. Contractor's insurance carrier(s) will provide, as evidence that the required insurance coverage has been obtained and maintained, a certificate of insurance reflecting the insurance requirements of this Article XI, which certificate shall be on a form approved by the Texas Department of Insurance.

No waiver of the provisions of this Article XI will be inferred from any failure on the part of XTO to object or complain about any failure of Contractor's insurance carrier to provide such certificate of insurance. Contractor shall provide XTO notice and evidence of any modification to, or extension or cancellation of, Contractor's required insurance coverage.

XII.    Independent Contractor. Contractor will be an independent contractor with respect to the Work, and neither Contractor nor any Subcontractor, nor their respective officers, employees or agents, will be deemed the agent, representative, employee or servant of XTO. Subject to the provisions of Section 10.5.2, if applicable, Contractor and any Subcontractor will have complete and sole control over their respective employees and the details of the Work performed and the methods by which the Work is accomplished, it being understood that XTO is interested only in the results that Contractor obtains. Notwithstanding the foregoing:

(i)     XTO retains the right to (a) review a list, in advance of the commencement of the Work, of the names the Contractor Group workers who will be performing work on an XTO location, and (b) refuse entry to or request that the Contractor Group replace any unsatisfactory worker who is or may be performing work at an XTO location. XTO shall have the right to immediately remove from its location a worker of the Contractor Group whose behavior is unsafe or otherwise unacceptable, rude, harassing or threatening.

(ii)    XTO shall not be precluded from asserting any borrowed employee or statutory employer defense or other defense that may exist.

(iii)   All materials, equipment and services shall meet the approval of XTO and shall be subject to a general right of inspection.

XIII.   Compliance with Laws and XTO Regulations and Policies.

13.1    Safety. Safe operations are of paramount importance to XTO. Accordingly, XTO has established a safety and environmental program for its own employees and requires that all members of the Contractor Group have an appropriate safety and environmental program. Contractor understands that the Work may involve danger and risk of injury, and the inherent danger is understood and assumed by Contractor. Contractor shall have sole responsibility for the safety of the Contractor Group employees, agents, and representatives, and acknowledges and agrees that XTO has no duty to supervise the work of, or to provide a safe place to work for, the employees, agents or representatives of the Contractor Group. Contractor shall adequately instruct all its employees and those of its Subcontractors or other members of the Contractor Group in the use of safety equipment and proper work procedures for the purpose of doing everything reasonably possible to protect against (i) personal injury or illness and (ii) damage to property or equipment. Contractor shall take all reasonable measures necessary to provide safe working conditions. Contractor shall furnish XTO promptly with a report of any and all

CONFIDENTIAL                                      NewscoUSA 0164

accidents involving the Work (whether involving Contractor or the Contractor Group) and shall notify all government agencies of accidents as required by law. Contractor agrees to provide XTO with any reasonable information about any member of the Contractor Group that XTO requests for its internal use in evaluating the safety and environmental record of the Contractor Group.

13.2 <u>XTO Regulations and Policies.</u>   Contractor will comply with and will cause the Contractor Group to comply with all applicable XTO rules and regulations (as revised from time to time) that relate to the safety and security of persons and property, protection of the environment, housekeeping and plant work hours, including, but not limited to, XTO's Drug, Alcohol, Firearms, Vehicle Search and Contraband Policy attached hereto as Attachment 1 and XTO's Safety, Health and Environmental Policy attached hereto as Attachment 2, both of which are incorporated by reference herein. Depending upon the scope and nature of the Work to be performed, XTO may require Contractor or the Contractor Group to execute other XTO safety policies or to complete policy questionnaires or surveys. XTO may revise, amend or alter its rules or policies or adopt new or additional rules or policies and they will become a part of this Agreement when Contractor receives a copy of them.

13.3 <u>Compliance with Laws.</u>   Contractor will comply, and will cause the Contractor Group to comply, with all federal, state and local laws, rules, regulations, ordinances, executive orders and other applicable requirements of all governmental agencies having jurisdiction over the Work which now or in the future may be (i) applicable to all Work performed hereunder or (ii) applicable to Contractor's or the Contractor Group's business, equipment or employees engaged in or in any manner connected with its performance hereunder. All of the provisions of this Agreement shall be expressly subject to all applicable laws, orders, rules and regulations of any governmental body or agency having jurisdiction over the premises, and all Work contemplated hereunder shall be conducted in conformity therewith. Any provision of this Agreement which is inconsistent with any such laws, orders, rules or regulations shall be modified so as to conform therewith, and this Agreement, as so modified, shall continue in full force and effect. XTO and Contractor shall execute such documents, purchase orders and other instruments as may be reasonably required to conform with any applicable laws or orders.

13.4 To the extent that Attachment 3, Equal Employment Opportunity Provision, Certification of Non-Segregated Facilities, and Employment of Qualified Disabled Individuals and Veterans, applies to this Agreement, Contractor will abide by Attachment 3, and will ensure that the Contractor Group abides by Attachment 3.

XIV.   <u>Miscellaneous.</u>

14.1 <u>Attorneys' Fees.</u>   In the event the Parties become involved in litigation, arbitration or mediation arising out of or related to this Agreement in which the services of an attorney or other expert are reasonably required, the prevailing Party will be fully compensated for the cost of its participation in such proceedings, including court costs, expenses and the reasonable costs incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award will not be computed in accordance with any court schedule, but will be such as to fully reimburse all reasonable attorneys' fees actually incurred by the prevailing Party, regardless of the size of the judgment and regardless of whether the payment of all or a portion of such fees was contingent upon the outcome of the arbitration or litigation.

14.2 <u>Term.</u>   This Master Service Agreement will be for a term of 1 year from the date hereof and from year to year thereafter until terminated. Either Party may terminate this Master Service Agreement at any time, with or without cause; provided, however that Contractor

CONFIDENTIAL                                                      NewscoUSA 0165

will provide 30 days prior written notice of any such termination. Any termination will not affect any rights or obligations that have accrued under this Agreement.

14.3    Force Majeure. A delay in or failure to perform by a Party, other than the payment of money, will not constitute a default that exposes it to liability for breach if and to the extent the delay or failure to perform is unforeseeable and is caused by an occurrence beyond the reasonable control of the Party, including, but not limited to an act of God or the public enemy; expropriation or confiscation of facilities; compliance with any order or requirement of any governmental authority that was unforeseeable; act of war, rebellion, terrorism, piracy or sabotage or damage resulting therefrom; fire, flood, storm, hurricane, tornado, explosion or accident; riots or strikes or other concerted acts of workers, whether direct or indirect; inability after diligent effort to obtain necessary licenses or permits; or any other cause, whether or not of the same class or kind as those specifically above named, which is not within the control of the Party and which, by the exercise of reasonable diligence, the Party is unable to prevent or remedy.

14.4    Rebates. All Work is to be performed on an arm's-length basis. Neither Contractor nor the Contractor Group will pay any commissions, salary or fees or grant any rebates or other remuneration or gratuity to any employee of XTO, any relative of an employee of XTO, or any representative or agent of XTO, other than gifts of nominal value and entertainment, meals, and social invitations that are customary and proper under the circumstances which do not place the recipient under obligation. The foregoing prohibition will not apply to the payment of salaries to employees of Contractor or the Contractor Group who are related to XTO employees, if employment of the relative is not related to XTO's business relationship with Contractor. If any employee of XTO should solicit a gift or gratuity from Contractor or the Contractor Group, Contractor agrees to notify the Controller of XTO of such act. It is further understood that failure by Contractor to comply with this policy regarding rebates may, among other remedies, result in the termination of this Agreement by XTO and may preclude any future dealings between the parties.

14.5    Assignments and Subcontractors. Neither Party may assign or subcontract its rights or duties under this Agreement, except to an Affiliate, without the prior written consent of the other Party. An assignment, delegation or subcontract in violation of this Section 14.5 will be void. Any consent given by a Party will not relieve the other Party of responsibility for performance of its obligations under this Agreement. Any assignee or Subcontractor of this Agreement shall expressly assume all obligations of the Party hereunder making the assignment, including, but not limited to, indemnity obligations, upon acceptance of assignment of this Agreement.

14.6    Waiver. The waiver by either Party of a breach or default by the other Party will not be deemed a waiver of any different or later breach.

14.7    Conflicts. For conflicts between or among provisions in the Master Service Agreement and any oral or written Work Order, this Master Service Agreement controls over any written or oral Work Order. It is expressly understood and agreed that no provision of any delivery ticket, invoice, confirmation of purchase order, published rate schedule or other instrument used or provided by Contractor will supersede the provision of this Master Service Agreement or any other agreement to any extent, for any purpose.

14.8    Applicable Law. This Agreement will be governed by the laws of the State of Texas, excluding the Texas rules on conflicts of law. For Work performed offshore, the provisions of this Agreement shall be construed in accordance with the General Maritime Law of the United States or, if not applicable, with the law of the state applicable to the Work.

14.9    Consequential Damages.  In no event will either Party be liable to the other under this Agreement for indirect, special, incidental, punitive or consequential damages, including, but not limited to, loss of profits, loss of use of assets or loss of product or facilities downtime.   This Section 14.9, however, shall in no way limit or modify a Party's indemnity obligations under Article X above.

14.10    Captions.  The captions used in this Agreement are for convenience only and will in no way define, limit or describe the scope or intent of this Agreement or any part thereof.

14.11    Notices.  All notices and other communications required by this Agreement to be in writing will be deemed duly given to a Party two business days after such notice or other communication is sent to such Party by registered or certified mail, return receipt requested, postage prepaid, addressed to the individual and address indicated for such Party in a Work Order or such other person as a Party may designate from time to time as their representative.  A Party may send a notice or other communication to the other Party using any other means of delivery, including personal delivery, facsimile, telex, ordinary mail, or electronic mail, but no such notice or other communication will be deemed given unless and until it actually is received by such other Party.  A Party may change the individual and/or address for notices by giving the other Party notice of such change in the manner set forth herein.

14.12    Entire Agreement.  This Master Service Agreement, together with its Attachments and any written or oral Work Order between XTO and Contractor, as the case may be, are the entire agreement between the Parties on the subject matter referred to therein and supersede all prior negotiations, agreements, discussions and correspondence.   This Master Service Agreement may not be changed orally, but may be changed only by an amendment, signed by both Parties, which specifies the change, addition or deletion.  An amendment that is not in writing is void.  This Master Service Agreement, when executed by Contractor, supersedes any previous contracts between Cross Timbers Operating Company, Cross Timbers Production Company, or XTO and Contractor identified as a Master Service Agreement or Master Field Service Agreement.

14.13    Subsidiaries of XTO.  If Contractor or an Affiliate of Contractor performs any Work for XTO or a Subsidiary of XTO and the Subsidiary has not signed a similar Master Service Agreement, then the Work performed by or for the Subsidiary shall be governed by the terms of this Agreement as if the Subsidiary had signed the same Agreement but as a contract separate and apart from this Master Service Agreement.

14.14    Severability.  If any provision of this Master Service Agreement is held to be unenforceable, this Master Service Agreement will be deemed to be amended to the extent necessary to make it enforceable, or, if necessary, this Master Service Agreement will be deemed to be amended to delete the unenforceable provision or portion thereof. In the event any provision is deleted or amended, the remaining provisions will remain in full force and effect.

14.15    Use of Name and Marks.  Contractor shall not use XTO's name, trade name, or trademarks, or those of any affiliate, in any advertising or communication to the public, or make publicity releases or announcements concerning the Work Order, Services, or related activities, in any format without XTO's prior express written consent.

CONFIDENTIAL                                        NewscoUSA 0167

IN WITNESS WHEREOF, the Parties have caused this Master Service Agreement to be executed by their duly authorized representatives as of the date first above written.

### XTO ENERGY INC.

Representative: _Katie Baker_
(Authorized Representative Signature)

Print Name: Katie Baker

Print Title: Supervisor, Master Contracts

Date: 10/8/14

### Newsco International Energy Services USA Inc.

Representative: _____
(Authorized Representative Signature)

Print Name: James R. Boyles

Print Title: General Manager – Rocky Mountain Region

Date: October 1st, 2014

Federal Tax I.D. #: 42-1772814

CONFIDENTIAL

THIS PAGE INTENTIONALLY LEFT BLANK

CONFIDENTIAL                              NewscoUSA 0169

*MSA Attachment 1*

## XTO ENERGY INC.
### DRUG, ALCOHOL, FIREARM, VEHICLE SEARCH AND CONTRABAND POLICY

XTO PROHIBITS THE USE, MANUFACTURE, SALE, TRANSFER, OR POSSESSION OF ALCOHOLIC BEVERAGES, ILLEGAL AND NON-PRESCRIBED DRUGS, DRUG PARAPHERNALIA, EXPLOSIVES, FIREARMS AND OTHER WEAPONS ON ANY XTO PREMISES OR ANY WORK SITE WHERE XTO'S EMPLOYEES, CONTRACTORS, VENDORS OR SUBCONTRACTORS ARE ENGAGED.

IF PRESCRIPTION MEDICATION MUST BE BROUGHT TO ANY SUCH WORK LOCATION, THE MEDICATION MUST BE KEPT IN ITS PRESCRIPTION CONTAINER UNTIL USED. ANY USE OF A PRESCRIBED MEDICATION MUST BE IN STRICT ACCORDANCE WITH THE PRESCRIPTION. NO ONE MAY WORK ON AN XTO WORK LOCATION IF HE/SHE IS TAKING MEDICATION THAT INTERFERES WITH HIS/HER ABILITY TO PERFORM HIS/HER JOB SAFELY. THE USE OF ANY MEDICATION THAT MIGHT INTERFERE WITH AN INDIVIDUAL'S ABILITY TO PERFORM HIS/HER JOB SAFELY MUST BE REPORTED TO THE SENIOR XTO OFFICIAL ON SITE, OR, IF NO XTO OFFICIAL IS ON SITE, TO XTO'S ENVIRONMENTAL, HEALTH AND SAFETY DEPARTMENT.

ANY PERSON WHO IS FOUND DEPARTING XTO'S WORK LOCATION IN POSSESSION OF XTO OR A LANDOWNER'S PROPERTY THAT IS NOT AUTHORIZED IN WRITING FOR REMOVAL FROM XTO'S WORK LOCATION IS SUBJECT TO DISCIPLINARY ACTION, INCLUDING IMMEDIATE DISCHARGE, OR REMOVAL AND FUTURE PROHIBITION FROM THE PREMISES.

ENTRY INTO OR PRESENCE ON XTO'S JOB SITE BY ANY PERSON IS CONDITIONED UPON XTO'S RIGHT TO SEARCH THE PERSON AND PROPERTY OF ANY PERSON. AT ANY TIME, AND WITHOUT NOTICE, ANY PERSON, HIS/HER VEHICLE, OR PERSONAL PROPERTY IS SUBJECT TO SEARCH. PROPERTY MAY INCLUDE, BUT IS NOT LIMITED TO, THE FOLLOWING: WALLETS, PURSES, LOCKERS, BAGGAGE, OFFICES, DESKS, TOOL BOXES, CLOTHING, AND VEHICLES. ANY ILLEGAL CONTRABAND OR UNAUTHORIZED PROPERTY FOUND MAY BE TURNED OVER TO THE APPROPRIATE AUTHORITIES.

XTO RESERVES THE RIGHT TO REQUIRE ANY PERSON ON AN XTO LOCATION TO SUBMIT TO A DRUG TEST OR TO REQUIRE ANY CONTRACTOR, VENDOR, OR SUB-CONTRACTOR TO TEST ITS EMPLOYEES. REFUSAL TO SUBMIT TO OR FAILING A DRUG TEST WILL RESULT IN THE IMMEDIATE REMOVAL FROM THE LOCATION.

CONTRACTORS, VENDORS, OR SUB-CONTRACTORS VIOLATING THIS POLICY MAY BE SUBJECT TO AN IMMEDIATE CANCELLATION OF THEIR CONTRACT.

IN THE EVENT CONTRACTOR, VENDOR, OR SUB-CONTRACTOR ARE PERFORMING WORK SUBJECT TO DEPARTMENT OF TRANSPORTATION (DOT) REGULATIONS, SUCH PARTIES WILL SUBMIT A COPY OF THEIR ALCOHOL AND DRUG TESTING PROGRAMS FOR REVIEW BY XTO. XTO MAY USE A THIRD PARTY TO REVIEW THE PROGRAMS, AND IN THE EVENT THE PROGRAMS ARE NOT SUFFICIENT BY DOT STANDARDS, THE COST OF ANY SUBSEQUENT REVIEW FOR COMPLIANCE SHALL BE PAID BY SUCH PARTIES.

SHOULD YOU HAVE ANY QUESTIONS REGARDING THIS POLICY, PLEASE SEE YOUR XTO CONTRACT REPRESENTATIVE.

CONFIDENTIAL          NewscoUSA 0170

THIS PAGE INTENTIONALLY LEFT BLANK

CONFIDENTIAL                    NewscoUSA 0171

*MSA Attachment 2*

## XTO ENERGY INC. SAFETY, HEALTH AND ENVIRONMENTAL POLICY

XTO is committed to protecting the environment and the health and safety of employees, contractors, local communities, and others who may be impacted by its business activities. XTO requires its contractors to actively participate, and to cause its affiliates, subcontractors, and other members of the Contractor Group to actively participate, in the establishment of a safe working environment as follows:

## CONTRACTOR AND THE CONTRACTOR GROUP'S RESPONSIBILITIES

- Perform all work in a safe, environmentally sensitive, and workmanlike manner and provide necessary safety precautions and equipment for their employees, contractors, consultants, and other personnel.

- Report all injuries and incidents (including property damage) immediately (including a written report within 72 hours of the accident) to the XTO supervisor or designated alternate.

- Report all spills and releases immediately (including a written report within 72 hours of the incident) to the XTO supervisor or designated alternate and communicate to XTO any other environmental risks or exposures.

- Instruct its employees in the applicable XTO standards and practices.

- Conduct its operations in a manner that protects human health and safety, minimize adverse environmental impacts, and mitigates unavoidable impacts on the environment.

- Comply with all applicable safety, health, and environmental laws and regulations, and apply responsible standards where law or regulations do not exist.

- Have in place an active injury and loss prevention program and advise and train line managers in safety, health, and environmental requirements.

- Provide its employees with adequate training in safety, health, and environmental matters, and hold each employee accountable for compliance with this policy.

- Provide technical and legal support to those line managers responsible for compliance with this policy.

- Require timely communication between employees and their supervisors regarding safety, health, and environmental issues.

- Require employees to communicate their concerns to management about any unresolved safety, health, and environmental risks they might have identified in the Contractor's operations.

- Monitor, evaluate and report performance in safety, health, and environmental protection.

- Provide a copy of this policy to the Contractor's contractors and notify them that they and their subcontractors will be expected to perform all work for the Contractor in compliance with this policy.

- Emphasize the importance of maintaining safety and environmental standards in economically-competitive situations.

CONFIDENTIAL                    NewscoUSA 0172

## CONTRACTOR AND THE CONTRACTOR GROUP'S PERSONNEL (EMPLOYEE/ SUBCONTRACTOR / CONTRACTOR / CONSULTANT) RESPONSIBILITIES:

Each employee shall demonstrate a positive attitude toward injury-prevention and environmental protection and company property. Each employee is responsible for:

♦ Performing their job safely, for their personal safety, the safety of fellow workers, and the protection of the environment and company property. This includes the proper use of safety equipment and strict adherence to safe work practices.

♦ Understanding all safety and environmental policies pertinent to their job responsibilities.

♦ Performing safety and environmental assessments.

♦ Actively participating in safety and environmental meetings.

♦ Reporting promptly all unsafe conditions and practices (including those of contractors), to their supervisor.

♦ Reporting every spill/release to their supervisor.

CONFIDENTIAL                    NewscoUSA 0173

## EQUAL EMPLOYMENT OPPORTUNITY PROVISION, CERTIFICATION OF NONSEGREGATED FACILITIES, AND EMPLOYMENT OF QUALIFIED DISABLED INDIVIDUALS AND VETERANS

The term "Contractor" as used herein shall mean the party designated as Contractor, of which this Attachment is a part. The term "Agreement," as used herein shall mean the foregoing agreement to which this Attachment is a part. This Agreement, and all activities or operations conducted by the Parties under this Agreement, are expressly subject to, and shall comply with, all laws, orders, rules, and regulations of all federal, state, and local governmental authorities having jurisdiction over the Work, including but not limited to Executive Order 11246.

1.   **EQUAL EMPLOYMENT OPPORTUNITY PROVISION.**

If the value of this Agreement exceeds $10,000, then during the performance of this Agreement, Contractor agrees as follows:

A.   The contract clause prescribed in Section 202 of Executive Order No. 11246 of September 24, 1965 (41 CFR 60-1), is incorporated by reference into this Attachment.

B.   Contractor further agrees and certifies that, if the value of this Agreement is $50,000 or more and Contractor has 50 or more employees, and is not otherwise exempt, Contractor will:

(1) Develop a written affirmative action compliance program for each of his establishments in accordance with the requirements of 41 CFR 60-1.40 and 60-2. This program shall be developed within 120 days of the commencement of a covered contract, and shall be maintained as long as required by law or regulation.

(2) File annually, complete and accurate reports on Standard Form 100, Equal Employment Opportunity Information Report EEO-1, in accordance with the requirements of 41 CFR 60-1.7, and otherwise comply with and file such other compliance reports as may be required under Executive Order 11246, as amended, and Rules and Regulations adopted thereunder.

2.   **CERTIFICATION OF NONSEGREGATED FACILITIES.**

Contractor certifies that it does not maintain or provide for its employees any segregated facilities at any of its establishments, and that it does not permit its employees to perform their services at any location under its control where segregated facilities are maintained. Contractor certifies further that it will not maintain or provide for its employees any segregated facilities at any of its establishments, and that it will not permit its employees to perform their services at any location, under its control, where segregated facilities are maintained. Contractor agrees that a breach of this certification is a violation of the Equal Opportunity clause in this Agreement. The term "segregated facilities" means any waiting room, work areas, restrooms and wash rooms, restaurants and other eating areas, time clocks, locker rooms and other storage or dressing areas, parking lots, drinking fountains, recreation or entertainment areas, transportation, and housing facilities provided for employees which are segregated by explicit directive or are in fact segregated on the basis of race, color, religion or national origin, because of habit, local custom or otherwise. Contractor further agrees that (except where it has obtained identical certifications from proposed subcontractors for the specific time period) it will obtain identical certification from proposed subcontractors prior to the award of subcontracts exceeding $10,000 which are not exempt from the provisions of the Equal Opportunity clause; that it will retain such certifications in its files; and that it will forward the following notice to such proposed subcontractors (except where the proposed subcontractors have submitted identical certifications for the specific time period).

"NOTICE TO PROSPECTIVE VENDORS AND SUBCONTRACTORS
REQUIREMENT FOR CERTIFICATION OF NONSEGREGATED FACILITIES

A Certification of Nonsegregated Facilities, as required by 41 CFR 60-1.8, must be submitted prior to the award of any contract or subcontract exceeding $10,000 which is not exempt from the provisions of the Equal Opportunity Clause (41 CFR 60-1.4). The Certification may be submitted either for each subcontract or for all subcontracts during a period (i.e., quarterly, semi-annually or annually). (NOTE: The penalty for making false statements is prescribed in 18 (U.S.C. 1001)."

3.      **EMPLOYMENT OF QUALIFIED DISABLED INDIVIDUALS AND VETERANS.**

Contractor will not discriminate against any employee or applicant for employment because of physical or mental disability in regard to any position for which the employee or applicant for employment is qualified. To comply with 41 CFR 60-471 (Section 503 of the Rehabilitation Act of 1973, as amended), any Contractor with a contract over $10,000 in value must establish an affirmative action program to employ and advance in employment qualified disabled individuals.

Contractor will not discriminate against any employee or applicant for employment because he or she is a special disabled veteran, veteran of the Vietnam era, recently separated veteran, or other protected veteran in regard to any position for which the employee or applicant for employment is qualified. To comply with 41 CFR 60-250 (Section 402 of the Vietnam Era Veterans Readjustment Act of 1974, as amended), each Contractor with a contract over $100,000 must take affirmative action to employ and advance in employment qualified special disabled veterans, recently separated veterans, veterans of the Vietnam Era, veterans who served on active duty in the Armed Forces during a war or in a campaign or expedition for which a campaign badge has been authorized; veterans who, while serving on active duty in the Armed Forces, participated in a United States military operation for which an Armed Forces Service Medal was awarded pursuant to Executive Order No. 12985; or other protected veterans, and list with appropriate local employment service offices all suitable employment openings.

The additional contract clauses prescribed in 41 CFR 60-741.4 and 60-250.4 are incorporated by reference into this Attachment.

**<u>EXHIBIT 5 TO STIPULATIONS</u>**

Example Midkiff Job Documents



## NEWSCO
**International Energy Services USA Inc.**
12029 Brittmoore Park Drive
Houston Texas 77041
Mid-Continent Region

# INVOICE

| | |
|---|---|
| **Invoice No.:** | 10716 |
| **Date:** | 08/20/2019 |

**REMIT TO:**

Drawer #2320
PO Box 5935
Troy, MI 48007-5935

**Sold to:**

**XTO Energy (NCT0067)**
Melissa Hare
1 Riverway
Houston, TX  77056

**Wire Transfer To:**

Crestmark Bank
ABA Rounting No.: ▮
Account Name:
Newsco International Energy Services USA, Inc.
Account No.: ▮

| **Sold By:** | Nate LaRue |
|---|---|

| Project/Job: | 191169TX Midkiff 43-06 0627 0607BH Scan Gold | Terms: 2%/15, Net 30. Due 09/19/2019. |
|---|---|---|

| Quantity | Unit | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | WELL: MIDKIFF 43-06 0627 0607BH / RIG: SCAN GOLD / PERMIAN, MIDLAND CO. TX / AFE NO.: DD.2019.02806.CAP / GFCM CODE: 0048705000 / DESCRIPTION: DIR WORK AND TOOLS / XTO REP: JAMES MARTIN / PERIOD OF: 7.28 - 8.17.19 | ▮ | ▮ |
| 5.0 | DAY | DAILY OPERATING RATE - PK 3A | | |
| 1.0 | DAY | DAILY STANDBY RATE - PK 3B | | |
| 3.0 | DAY | CALL OUT CHARGE, MWD | | |
| 66.0 | DAY/MAN | PERSONNEL SUBSISTENCE | | |
| 400.0 | MILE | PERSONNEL MILEAGE | | |
| 12.0 | DAY | HORIZONIAL DRILLING PACKAGE - OPERTING CURVE LATERAL | | |
| 3.0 | DAY | HORIZONIAL DRILLING PACKAGE - STANDBY | | |
| -105.2 | HOURS | MOTOR CREDIT (8108 DRILLING HOURS) | | |
| 1.0 | TOOL | MOTOR CHARGE, 6-3/4" 7/8 5.7 | | |
| 1.0 | TOOL | MOTOR CHARGE, 6-3/4" 7/8 5.0 | | |
| 12.0 | TOOL | INSPECTION | | |
| 1.0 | WELL | MOB / De-Mob | | |
| 1.0 | WELL | WELL PLANNING | | |
| -16.0 | HOURS | NON-PRODUCTIVE TIME DISCOUNT, MWD | | |
| 3.0 | TOOL | FLOAT VALVE REBUILD | | |
| 4.0 | TOOL | MWD BATTERY DISPOSAL | | |

| **Thank you for choosing Newsco!** | **Total Amount USD:** | 108,980.44 |
|---|---|---|

CONFIDENTIAL



≡NEWSCO    Job Number    191169TX    Field Ticket

| Customer: | XTO Energy | | State: | | Texas | Mid-Continent District |
| Well Name: | Midkif 43-06 0627 0897BH | | Field Name: | | Permian | 900 Old Hwy 105 W |
| Rig: | Scan Gold | | AFE Number: | | DO.2019.02806 | Conroe, TX 77304 |
| County: | Midland | | Start Date: | 26-04-19 | End Date: | (832) 924-4020 |

| Description | QTY | Price | Unit | Item Totals | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DAILY OPERATING RATE - PK 3A | 5 | | DAY | | | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DAILY STANDBY RATE - PK 3B | 1 | | DAY | | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MWD Call Out Charge | 3 | | EACH | | | | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PERSONNEL SUBSISTENCE | 66 | | EACH | | 1 | 1 | 1 | 1 | 1 | 1 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | | | | | | | | | | | | | | | | |
| PERSONNEL MILEAGE | 400 | | MILE | | | | | | | | 200 | | | | | | | | | 200 | | | | | | | | | | | | | | | | | | | |
| Directional Driller Call Out to Slide | | | EACH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Directional Drill Call Out - DV Tool | | | EACH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Horizontal Drilling Package - Operating Curve/Lateral | 12 | | DAY | | | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | |
| Horizontal Drilling Package - Standby | 3 | | DAY | | | | | | | | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MOTOR CREDIT (81 OF DRILLING HOURS) 145 PER HOUR | 105.2 | | HOUR | | | | | | | | | | | | | | | | | | 105.2 | | | | | | | | | | | | | | | | | | |
| PERFORMANCE DRILLING MOTOR 6 3/4" 7/8 5.7 | 1 | | EACH | | | | | | | | | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| PERFORMANCE DRILLING MOTOR 6 3/4" 7/8 5.0 | 1 | | Each | | | | | | | | | | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Inspections | 12 | | Each | | 4 | | | | | | | 6 | | 2 | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Trucking | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MOB/DE-MOB | 1 | | WELL | | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| WELL PLANNING SERVICES | 1 | | WELL | | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MWD DOWNTIME (MFT @54 W PER HOUR) | 16 | | HOUR | | | | | | | | | | | 16 | | | | | | | | | | | | | | | | | | | | | | | | | |
| FLOAT REBUILD CHARGE | 3 | | EACH | | | | | | | | | 1 | | 1 | | 1 | | | | | | | | | | | | | | | | | | | | | | | |
| MWD BATTERY DISPOSAL | 4 | | EACH | | | | | | | | | 2 | | 2 | | | | | | | | | | | | | | | | | | | | | | | | | |
| HIGH FLOW SURFACE PIPE SCREENS | | | EACH | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DD 1: | Jordon Ellis | 6 | Days | | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DD 2: | Rob Dutton | 15 | Days | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | |
| DD 3: | Justin Jackson | 15 | Days | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | |
| DD 4: | | | Days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| DD 5: | | | Days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MWD 1: | John Hughes | 15 | Days | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | |
| MWD 2: | Dave Chaput | 6 | Days | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | | | | | | | |
| MWD 3: | Anthony Barrera | 8 | Days | | | | | | | | | | | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | | | | | | | | | | | | | | | | | |
| MWD 4: | Thaddeus Johnson | 2.5 | Days | | | | | | | | | | | | | | | | | 1 | 1 | 1 | | | | | | | | | | | | | | | | | |
| MWD 5: | | | Days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MWD 6: | | | Days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MWD 7: | | | Days | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

THIS IS NOT AN INVOICE. FIELD ESTIMATE ONLY

Sub Total

NOTE: TRUCKING, REPAIRS, DAMAGES, AND ANY THIRD PARTY CHARGES TO FOLLOW ON A SEPARATE TICKET

**$108,980.44**

| 1 | Newsco Field Representative Signature |
| 4 | |

Print Name    Justin Jackson

| 2 | Newsco Coordinator Name Signature |

Print Name    Jeremy Brinlee

| 3 | Newsco Account Manager Signature |

Print Name

XTO WELL NAME _Midkiff 0607BH_
AFE DD.2019.02896 .CAP
GFCM Code: 0048705000
Amount: 108,980.44    Date: 8-19-19
Description: Dir work n Tool's
Signature: Jamie Mart
Print Name: James Martin

CONFIDENTIAL

NewscoUSA 0024

Page 1





## Pricing Proposal

**Date Submitted:** MaY 16th, 2019

**Submitted By:** Nate LaRue

**Expiration:** 4 WELL INTRODUCTORY PRICING / UNMANNED AND VERTICAL CONTROL

Newsco Mid-Continent
900 Old Hwy 105 W
Conroe, TX 77304





XTO Energy

Midland, TX 79701

Dear XTO Group,

Newsco International Energy Services USA Inc. (Newsco) appreciates the opportunity to submit this commercial proposal to XTO Energy.  Pricing for any services or products not covered in this proposal can be provided as an addendum as needed.

Please understand by calling out Newsco you are accepting our Terms and Conditions. Newsco Terms and Conditions are included in this document and may be superseded by an existing Master Service Agreement.

Per the Sarbanes-Oxley Act of 2002, Newsco, as a supplier of services must receive written acceptance of all proposals in order to recognize the subsequent revenue. As such, if the proposal meets your expectations, please accept the pricing proposal by signing and dating below.

Newsco looks forward to providing you with service and technology that meets and exceeds your expectations. Should you require additional information or have any questions, please contact me at +1 (817) 688-7819 or via email at nate.larue@newsco-drilling.com

Respectfully,

**Nate LaRue**                                        **Accepted By:** _____

**U.S. Account Manager**                 **Position:**        _____

**Newsco International Energy Services USA Inc.**        **Date:**            _____

*The information contained within this document is the property of Newsco International Energy Services USA Inc. and is subject to change without notice. The information contained herein shall not be altered, copied or transmitted with the expressed written consent of Newsco International Energy Services USA Inc.*

Newsco International Energy Services USA Inc.                                        CONFIDENTIAL
333 Clay Street, Suite 2800
Houston, TX 77002                                                                           www.newsco-drilling.com

2

CONFIDENTIAL                                                    NewscoUSA 0026





## Overview

Newsco International Energy Services USA Inc. is a global technology and drilling services provider based in Houston, TX USA providing advanced directional drilling techniques.

## Mission Statement

To provide quality directional drilling services through technical innovation, performance and gain customer trust through top quality service.



## Core Values

**Trust:**   $T = r + d$ (reliability & dependability)
Trust comes from meeting and exceeding expectations.



**Service:** Service is in our name therefore it is more than value added; it is part of our genetics.

**Ingenuity:**   Always taking pride in devising creative solutions for the most complex issues.

**Integrity:**   Sets the standard for everything we do – we strive to be Honest, Ethical and Fair.

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

3

CONFIDENTIAL

NewscoUSA 0027



## NEWSCO MWD PACKAGES / 4 Well Introductory Rate

**Horizontal Drilling Package**

B– Directional & MWD Package (Motors) – OPERATING ......................... ███████

Standby..................................... ███████

- *Newsco Performance Drilling Mud Motors all sections*
- *Newsco Mud Pulse MWD System*
- *Newsco Gamma Ray (For Curve and Lateral Operations)*
- *MWD Specialist (2) Curve and Lateral*
- *Directional Drillers (2) Curve and Lateral*
- *(2) Non-Magnetic Drill Collars per Section*
- *All Required Cross Over & Lifting Subs, and Inspections*
- *Shock and Vibration*
- *Continuous Inclination in Lateral*

**Package 2 – MWD ONLY**

A - MWD Package – OPERATING...................................................................... ███████

- **MWD Package - STANDBY .............................................................** ███████

**Includes:**

- *Newsco MWD System and backup (All hole Sections)*
- *Newsco Gamma Ray*
- *Continuous Inclination (Curve and Lateral)*
- *MWD Supervision (2 Hands for all Operating Days)*
- *(2) Non-Magnetic Drill Collars per section*

.......................................................... *All Required Cross Over & Lifting Subs* ==Package==

==**3 – Unmanned MWD / Vertical Control with Steerable Assembly**==

==**A - MWD Package - OPERATING....................................................................** ███████==

==**STANDBY...............................................................................**== ███████

**Directional Driller- Call out to Slide....................................................................** ███████

**MWD Call out charge outside of Mob/Demob days..................................................** ███████

**Monels/ UBHO.........................................................................................................** ███████

==**\*\*\*\*\* Inspections on all monels and ubho's will be covered by XTO. Trucking charges will also be covered by XTO.**==

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

CONFIDENTIAL

NewscoUSA 0028



## ADDITIONAL PERSONNEL CHARGES (WHERE APPLICABLE)

Lead Directional Driller ................................................................................... ▪ ███████

Directional Driller ........................................................................................... ▪ ███████

Lead MWD Supervisor ..................................................................................... ▪ ███████

MWD Supervisor ............................................................................................ ▪ ███████

Personnel Mileage(Included in all in Package) .............................................. ▪ ███████

Personnel Subsistence .................................................................................... ▪ ███████

Personnel Lodging (if not provided by customer) ........................................ ▪ ███████

## ADDITIONAL CHARGES (WHERE APPLICABLE)

MOB/De-Mob ................................................................................................... ▪ ███████

MOB/De-Mob(Unmanned Services) Included in Full Package Mob/Demob............ ▪ ███████

Well Planning Services .................................................................................... ▪ ███████

MWD Battery Disposal ..................................................................................... ▪ ███████

Motor Stabilizer/built up kick pad .................................................................. ▪ ███████

Surface Pipe Screen ......................................................................................... ▪ ███████

MWD Inspection(2xIncluded) .......................................................................... ▪ ███████

Non-Mag and Miscellaneous Tubular Inspections(Included) ......................... ▪ ███████

Equipment Damages and Repairs .................................................................... ▪ ███████

Equipment Transportation ............................................................ ███████████

## ADDITIONAL CHARGES (WHERE APPLICABLE)

DS1 Cat 3-5 Inspections .................................................................................. ▪ ███████

Equipment Transportation .............................................................................. ▪ ███████

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

CONFIDENTIAL

NewscoUSA 0029



| NEWSCO PERFORMANCE DRILLING MUD MOTORS RENTAL RATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Motor Size | Motor Configuration | Rubber Type | Motor RPG | Flow Rate (GPM) | Hourly Rate* | Re-Line Rate** | MW&I |
| Newsco 5" | 6:7 9.0 | HR | .82 | 150 – 350 | | | |
| Newsco 5" | 7:8 6.4 | HR | .29 | 150 – 350 | | | |
| Newsco 5" | 7:8 3.8 | HR | .51 | 150 – 300 | | | |
| Newsco 5" | 7:8 5.0 | HR | .63 | 150 – 300 | | | |
| Newsco 6 1/2" | 7:8 5.0 | HR | .16 | 300 – 600 | | | |
| Newsco 7" | 4:5 7.0 | HR | .48 | 300 – 600 | | | |
| Newsco 7" | 7:8 3.0 | HR | .15 | 300 – 600 | | | |
| Newsco 7" | 7:8 5.0 | HR | .28 | 300 – 600 | | | |
| Newsco 7" | 7:8 5.7 | HR | .24 | 300 – 600 | | | |
| Newsco 7" | 7:8 6.4 | HR | .29 | 300 – 600 | | | |
| Newsco 8" | 7:8 4.0 | HR | .16 | 300 – 800 | | | |
| Newsco 9 5/8" | 7:8 4.0 | HR | .16 | 300 – 900 | | | |

*Hourly Rate per drilling hour

**Reline charges apply for Motors run in OBM, 120,000 PPM Chloride, and/or Temperature
Environments >200°F

## DEFINITIONS & TERMS

1) Operating Rate is charged when equipment is below rotary table for any portion of a day

2) Standby Rate is charged when equipment is on location and above rotary table for an entire
   day

3) A Day is defined as Midnight to Midnight

4) Per Used is defined as equipment that has gone below rotary table

5) Equipment damages beyond normal wear and tear will be charged back to the Customer at

6) Equipment damaged beyond repair will be charged per the LIH replacement schedule below

7) Payment terms are net 30 days from the date of the invoice

8) In the event of a tool failure Newsco will not compensate the customer for rig down time

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com



## LOST IN HOLE TERMS & REPLACEMENT SCHEDULE

Lost in Hole Coverage is offered to cover 50% of the replacement cost of the lost equipment

2) Lost in Hole Coverage must be accepted or declined prior to the first BHA being run in hole

3) Operating Day Rate will continue until Customer declares equipment Lost in Hole

4) Lost in Hole Coverage and Replacement rates will be charged per the schedule below

5) Lost in Hole availability for a 2nd lost tool event on a project will be determined on a case-by-case basis after the first Lost in Hole event

| Newsco Tool | Replacement Cost | Coverage Rate/Day |
|---|---|---|
| NEWSCO Mud Pulse MWD System | ███████ | ███ |
| NEWSCO Gamma Ray (GR) | | |
| NEWSCO NVADER™ MWD System | | |
| NEWSCO Performance Drilling Mud Motor (9.625") | | |
| NEWSCO Performance Drilling Mud Motor (8") | | |
| NEWSCO Performance Drilling Mud Motor (6.25" to 6.75") | | |
| NEWSCO Performance Drilling Mud Motor (4.75" to 5") | | |

| BHA Component | 4.75" to 5" OD | 6.25" to 7" OD | 7.5" to 9.5" OD | Coverage Rate/Day |
|---|---|---|---|---|
| Slick Non-Magnetic Drill Collar | ███ | ███ | ███ | ████ |
| Flex Non-Magnetic Drill Collar | | | | ████ |
| Pony Non-Magnetic Drill Collar | | | | ████ |
| MWD UBHO Sub | | | | ████ |
| Cross Over Sub | | | | ████ |
| Float Sub | | | | ████ |
| | | | | |
| | | | | |

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

7

CONFIDENTIAL

NewscoUSA 0031



# Terms and Conditions of Service

The operations to be conducted, services to be rendered or personnel or equipment to be provided (collectively the 'Services') by Newsco International Energy Services USA, Inc. ('Newsco') at the sole request of Customer ('Customer') shall only be offered, rendered or provided under the terms and conditions of any Master Service Agreement in force between the parties hereto or, if no such agreement is in force between the parties, according to the following general terms and conditions ('Terms').

**1. Acceptance of Terms.** Customer agrees that the prices levied by Newsco for the Services take in to consideration and are predicted on Customer assuming and releasing Newsco of certain liabilities and responsibilities. By requesting Services of Newsco, Customer voluntarily elects to enter into this agreement and to be bound by all of the Terms hereof and to provide adequate insurance by and for the expense of Customer to protect Newsco against the liabilities and responsibilities assumed by Customer herein.

**2. Indemnifications.** All Services are hereby supplied by Newsco with the following understanding:

(a) Newsco agrees to protect, defend, indemnify and hold harmless Customer and its officers, directors and employees harmless from and against any and all claims, demands, damages, liens, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive) arising in connection herewith in favor of Newsco employees or Newsco subcontractors or their employees, or Newsco invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under this section (which Newsco and Customer hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirement or indemnities shall automatically be amended to conform to the maximum limits permitted under such law.

(b) Customer agrees to protect, defend, indemnify and hold harmless Newsco and its officers, directors and employees from and against any and all claims, demands, damages, fines, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive) arising in connection herewith in favor of Customer's employees or Customer's other contractors or their employees, or Customer's invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under this section (which Newsco and Customer hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirement or indemnities shall automatically be amended to conform to the maximum limits permitted under such law.

(c) Notwithstanding the general indemnity obligations assumed in Section 2(a) and 2(b) above, Customer shall protect, defend, indemnify and hold harmless Newsco and it officers, directors and employees from and against any and all claims, demands, damages, liens, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive), arising from (1) pollution or contamination, including clean up and control of the pollutant or contamination, (2) subsurface trespass, reservoir, formation, strata or other underground damage, including, but not limited to, loss or damage of any wellbore, or loss or impairment of any property right in or to oil, gas, other mineral substance or water, or (3) subsurface pressure, cratering, loss of control of a well and/or a well blow out or fire,

(d) Customer acknowledges it is aware that downhole equipment used by Newsco in the provision of Services is designed to operate under conditions normally encountered in the wellbore. Customer shall notify Newsco in advance of hazardous or unusual wellbore condition and make any special arrangements necessary to safely complete the Services. Notwithstanding Section 2(a), Customer shall pay the cost of repair to all damaged equipment or, if the equipment is damaged beyond repair, Customer shall pay the current replacement cost thereof for all equipment subjected to the hazardous conditions. In the event any downhole equipment of Newsco is damaged or lost in the well, Customer shall either recover same without cost to Newsco or pay for any damage to or loss of such equipment at the current replacement. In the event it is necessary for Customer to fish for any of Newsco downhole equipment, Customer assumes the entire responsibility for such operations. Newsco will however, if so requested by Customer but without any responsibility or liability on the part of Newsco, render assistance in an advisory capacity for the recovery or fishing of such equipment and instruments. Customer further agrees that Newsco shall not be liable or responsible in any way for any damage that Customer may incur or sustain by reason of any equipment supplied or advice or assistance rendered of such fishing operations.

(e) Except as otherwise expressly limited herein, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under the Terms of this agreement, including, without limitation, Sections 2(a) through 2(d) hereof, be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels, strict liability, or the negligence or fault of any party or parties whether such negligence be sole, joint or herein will be supported by either available liability insurance or voluntarily self-insurance, in part or in whole.

(f) Unless expressly stated otherwise herein, Customer and Newsco agree to accept liability and indemnify the other for loss or damage to third party property or personnel to the extent such loss or damage is caused by or arises out of the their respective acts or omissions. As used herein, 'third party' refers to any person or entity other than those referenced in Sections 2(a) and 2(b).

**3. Custody and Control of Well.** The Customer recognizes and accepts that at all times it has full care, custody and control or well and all conditions and equipment situated on or at the wellsite and has sole stimulations, workover, production procedure and all other activities at the wellsite. The Customer agrees to responsibility for all decisions regarding the drilling, abandonment, testing, cementing, completion, have an authorized representative at the well at all times to exercise this control and custody and in instances where such representative is not present, the Customer agrees to supply Newsco with all necessary information in writing so the Services requested by Customer can be performed safely by Newsco. The responsibilities assumed herein by the Customer and Newsco shall not be changed.

**4. Wellsite and Return of Equipment.** Customer shall be responsible for and pay the entire cost of any repairs to roadbeds and bridges damaged during an attempt by Newsco to gain access to or depart from any wellsite to provide the Services, whether such attempt was successful or not. Furthermore, the Customer shall arrange and pay the entire cost of the use of any vehicles, vessels, aircraft or other special means of transportation or services for Newsco equipment or personnel to gain access to and return from any onshore or offshore wellsite to or from the point or origin or other mutually agreed location.

**5. Wellbore Conditions.** Customer acknowledges and agrees that Newsco has not control over wellbore conditions that may affect the work. Customer further acknowledges its responsibility to verify i) the success of any work performed under this agreement and II) that other work can be continued safely following completion of the Services. Customer shall protect, defend, indemnify and hold Newsco harmless from any claims, demands, judgments, losses, damages, suits, liabilities or expenses (including attorneys' fees and associated costs) and causes or action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole,

joint or concurrent, active or passive), arising from or relating to Services performed on the wellbore.

**6. Independent Contractor.** In the provision of Services to Customer, it is understood that Newsco acts always as an independent contractor and nothing in the provision of such Services shall be interpreted so as to make Newsco an agent or servant of Customer or any other party.

**7. Authority of Customer.** Where the Customer is not the sole owner of the well, field or concession but instead shares ownership in such property with one or more other parties, the Customer represents that it is the operator or a duly authorized agent with full power to act for or on behalf of all owners in all acts, decisions and other matters regarding the provision of the Services. The Customer shall indemnify and Newsco harmless from and against any and all losses, liabilities, claims, demands and causes of action (including attorneys' fees and associated costs) without limit, brought in favor of any third party which may arise as a result of any breach of deficiency of the representations set out in this section.

**8. No Warranties.** Any interpretation of logs or surveys, either through optical or electronic processing means or otherwise, or any recommendation or description of any reservoir based on such interpretations or other data are opinions based upon measurements, assumption and empirical relationships, which inference and assumptions are not incapable of error. Newsco cannot and does not guarantee the accuracy, correctness or completeness of such interpretations, recommendations or descriptions, and Customer agrees that Newsco shall not be liable or responsible for any loss, cost, damage or expense incurred or sustained by Customer resulting directly or indirectly therefrom. Under no circumstances should any such interpretation, recommendation or description be relied upon as the basis for any procedure conducted in or on a well which WHETHER EXPRESS OR IMPLIED, THAT MAY ARISE OR BE MADE WITH RESPECT TO ANY GOODS OR SERVICES involves any risk to the safety of any personnel, equipment or venture. NEWSCO DISCLAIMS ALL WARRANTIES, PROVIDED DURING THE COURSE OF ITS PERFORMANCE OF THIS AGREEMENT. SUCH DISCLAIMER OR WARRANTIES SHALL INCLUDE BUT NOT BE LIMITED TO, ANY IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**9. Terms of Payment.** Customer shall pay Newsco for work performed per the agreed terms and prices within thirty (30) days from the date of the invoice. Terms of payment for Services rendered by Newsco are the net cash in USD at the time of Service. Invoices not paid in thirty (30) days can be charged a finance charge equal to one and one-half percent (1.5%) per month of unpaid balance (but in no event to exceed the highest lawful value).

**10. Taxes.** Customer shall pay Newsco for Services provided as contemplated herein and shall pay all taxes authority with respect to the charges made or payments received in connection with Newsco products or or other levies (other than U.S. Federal and State income taxes) imposed by any government or similar Services.

**11. Force Majeure.** Neither Newsco nor Customer shall be liable for delay or non-performance due to government regulations, strikes, hostile actions, weather, acts of God, or any other cause beyond their reasonable control (any and all of which causes are referred to herein as 'Force Majeure'). Force Majeure shall not however excuse payment for Services performed or any personnel and equipment charges accrued and unpaid prior to declaration of Force Majeure.

**12. Amendments, Severability, No Waiver.** These Terms constitute the entire agreement between parties with respect to the provision of Services and supersedes all other terms either expressed or implied by law. No employee or agent of Newsco is empowered to alter or amend these Terms as set out herein. In the event of any part or parts of these Terms being held invalid, such holding shall not invalidate the remainder. Both parties agree that the exculpatory, indemnification and hold harmless provisions herein shall be modified or altered only insofar as required by any jurisdiction purporting to limit such provisions, it being the intent of the parties to enforce to the fullest extent all Terms as are herein agreed to.

applicable to the jurisdiction in which the Services are performed. **13. Governing Law.** The Terms of the agreement shall be construed in accordance with the laws of and

**14. Limitation of Damages.** Customer understands and agrees that if Newsco should be found liable to limited to the total sum paid by Customer to Newsco under this agreement, which shall be the exclusive remedy Customer for loss or damage relating to or concerning the Service, Newsco's liability to Customer shall be of Customer against Newsco. Newsco shall not be liable for any special, punitive, incidental or consequential damages relating to or concerning the Services, including, without limitation, loss of profit, business interruptions, or loss or delay of production EXCEPT to the extent of damages provided above. The provisions of this section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to Customer's person or property, from performance or nonperformance of Newsco's work under this agreement, or from negligence, active or otherwise, of Newsco, its agents, employees or assigns.

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

CONFIDENTIAL

NewscoUSA 0032



# Contact Information

### Mid-Continent Operations

900 Old Hwy 105 W

Conroe, TX 77304

Main: +1 (832) 924-4020


**Nate LaRue**                          Mobile: +1 (817) 688-7819

U.S. Account Manager            nate.larue@newsco-drilling.com

Newsco International Energy Services USA Inc.
333 Clay Street, Suite 2800
Houston, TX 77002

CONFIDENTIAL

www.newsco-drilling.com

9

CONFIDENTIAL

NewscoUSA 0033

## **EXHIBIT 6 TO STIPULATIONS**

Braun Job Documents



**International Energy Services USA Inc.**

PO Box 40794

Houston Texas 77240

Mid-Continent Region

# INVOICE

| Invoice No.: | 10769 |
|---|---|
| Date: | 12/02/2019 |

**Remit by Check:**

SouthStar Financial, LLC
c/o Newsco International Energy Services USA
PO Box 2323
Mt. Pleasant, SC 29465

**Sold to:**

**XTO Energy (NCT0067)**

Melissa Hare
1 Riverway
Houston, TX  77056

**ACH / Wire Transfer To:**

Bank of America
ACH Routing:
Wire Routing:
Account Name: SouthStar Financial, LLC
c/o Newsco International Energy Services USA
Account No.:

| Sold By: | Chris Keller |
|---|---|

| Project/Job: | 191252TX John Braun A Unit 1341SH Felderhoff 32 | Terms: 2%/15, Net 30. Due 01/01/2020. |
|---|---|---|

| Quantity | Unit | Description | Unit Price | Amount |
|---|---|---|---|---|
| | | WELL: JOHN BRAUN A UNIT #1341SH / RIG: FELDERHOFF32 / PERMIAN, MIDLAND CO. TX / AFE NO.: DD.2019.06164.CAP / GFCM CODE: 48705000.CAP.DRL / DESCRIPTION: DIRECTIONAL SERVICES / XTO REP: CHRIS F. / PERIOD OF: 11.4 - 11.25.19 | | |
| 5.00 | DAY | DAILY OPERATING RATE - PK 3A | | |
| 1.00 | DAY | DAILY STANDBY RATE - PK 3B | | |
| 6.00 | DAY | CALL OUT CHARGE, MWD | | |
| 70.00 | DAY/MAN | PERSONNEL SUBSISTENCE | | |
| 1,800.00 | MILE | PERSONNEL MILEAGE | | |
| 2.00 | DAY | CALL OUT CHARGE, DIRECTIONAL DRILLER / SLIDE | | |
| 7.00 | DAY | EQUIPMENT RENTAL: MONETS UBHO | | |
| 15.00 | DAY | HORIZONIAL DRILLING PACKAGE - OPERATING CURVE/LATERAL | | |
| 1.00 | DAY | HORIZONIAL DRILLING PACKAGE - STANDBY | | |
| 1.00 | TOOL | MOTOR RELINE, 6-3/4" 7/8 6.7 | | |
| 1.00 | TOOL | MOTOR RELINE, 6-3/4" 7/8 6.0 | | |
| 1.00 | TOOL | MOTOR RELINE, 7.00" 7/8 5.7 NOV | | |
| 10.00 | TOOL | INSPECTION | | |
| 1.00 | WELL | MOB / De-Mob | | |
| 1.00 | WELL | WELL PLANNING | | |
| 3.00 | TOOL | FLOAT VALVE REBUILD | | |
| 3.00 | TOOL | MWD BATTERY DISPOSAL | | |
| 1.00 | ITEM | SCREENS, SURFACE PIPE / HIGH FLOW | | |
| -71.67 | HOUR | MOTOR CREDIT, 7.00" 7/8 5.7 NOV | | |
| -1.00 | TOOL | MOTOR RELINE, 7.00" 7/8 5.7 NOV - CREDIT | | |

| **Thank you for choosing Newsco!** | **Total Amount USD:** | 139,008.00 |
|---|---|---|

NewscoUSA 0001

# NEWSCO

Job Number: 191262TX

**Field Ticket**

Mid-Continent District
800 Old Hwy 105 W.
Conroe, TX 77304
(832) 924-4020

| | |
|---|---|
| Customer: | XTO Energy |
| Well Name: | John Braun A Unit #1341SH |
| Rig: | Felderhoff 22 |
| County: | Midland |

| | |
|---|---|
| State: | Texas |
| Field Name: | Permian |
| AFE Number: | DD.2019.06164 |
| Start Date: | 04-Nov-19 |
| End Date: | |



| Description | QTY | Price | Unit | Item Totals |
|---|---|---|---|---|
| DAILY OPERATING RATE - PKG A | 5 | | DAY | |
| DAILY STANDBY RATE - PK 3B | 1 | | DAY | |
| MWD Call Out Charge | 8 | | EACH | |
| PERSONNEL SUBSISTENCE | 70 | | EACH | |
| PERSONNEL MILEAGE | 1600 | | MILE | |
| Directional Driller Call Out to Slice | 2 | | EACH | |
| Directional Drill Call Out - DV Tool | | | EACH | |
| Motors (UBHO) | 7 | | DAY | |
| Horizontal Drilling Package - Operating Consultational | 15 | | DAY | |
| Horizontal Drilling Package - Standby | 1 | | DAY | |
| PERFORMANCE DRILLING MOTOR 6 3/4" 7/8 5.7 | 1 | | EACH | |
| PERFORMANCE DRILLING MOTOR 6 3/4" 7/8 5.0 | 1 | | EACH | |
| PERFORMANCE DRILLING MOTOR 7" 7/8 5.7 NOV | 1 | | EACH | |
| Inspections | 10 | | Each | |
| Tracking | | | | |
| MOB/DE-MOB | 1 | | WELL | |
| WELL PLANNING SERVICES | 1 | | WELL | |
| FLOAT REBUILD CHARGE | 3 | | EACH | |
| MWD BATTERY DISPOSAL | 3 | | EACH | |
| HIGH FLOW SURFACE PIPE SCREENS | 1 | | EACH | |
| DD 1: Rob Dutton | 11 | | Days | |
| DD 2: Justin Jackson | 16 | | Days | |
| DD 3: Marcus Colvin | 7 | | Days | |
| DD 4: Damon Peters | 6 | | Days | |
| DD 5: | | | Days | |
| MWD 1: Thaddeus Johnson | 8 | | Days | |
| MWD 2: Rocky Lewis | 15 | | Days | |
| MWD 3: Dillon Phillips | 9 | | Days | |
| MWD 4: | | | Days | |
| MWD 5: | | | Days | |
| MWD 6: | | | Days | |
| MWD 7: | | | Days | |

THIS IS NOT AN INVOICE, FIELD ESTIMATE ONLY

NOTE: TRUCKING, REPAIRS, DAMAGES, AND ANY THIRD PARTY CHARGES TO FOLLOW ON A SEPARATE TICKET.

**Sub Total**

**$154,075.00**

---

| Newsco Field Representative Signature |
|---|
| |
| Print Name: Justin Jackson |

| Newsco Coordinator Name Signature |
|---|
| |
| Print Name: Jaredd Modell |

| Newsco Account Manager Signature |
|---|
| |

**XTO WELL NAME:** John Braun 1341 SH
Customer Representative Stamp and Signature

**AFE:** DD2019._06164_.CAP DRL

**GFCM Code:** 00 48 70 5000

**Amount:** 154 075.00 **Date:** 12.05.19

**Description:** Direction services

**Signature:** JWri

**Print Name:** Jason Williams

---

CONFIDENTIAL

NewscoUSA 0002





## Pricing Proposal

**Date Submitted:** September 9th, 2019

**Submitted By:** Nate LaRue

**Expiration:** MULTI RIG FULL PACKAGE AND UNMANNED/ VERTICAL CONTROL

Newsco Mid-Continent
12029 Brittmore Park Dr.
Houston, TX 77304





XTO Energy

Midland, TX 79701

Dear XTO,

Newsco International Energy Services USA Inc. (Newsco) appreciates the opportunity to submit this commercial proposal to XTO Energy.  Pricing for any services or products not covered in this proposal can be provided as an addendum as needed.

Please understand by calling out Newsco you are accepting our Terms and Conditions. Newsco Terms and Conditions are included in this document and may be superseded by an existing Master Service Agreement.

Per the Sarbanes-Oxley Act of 2002, Newsco, as a supplier of services must receive written acceptance of all proposals in order to recognize the subsequent revenue. As such, if the proposal meets your expectations, please accept the pricing proposal by signing and dating below.

Newsco looks forward to providing you with service and technology that meets and exceeds your expectations. Should you require additional information or have any questions, please contact me at +1 (817) 688-7819 or via email at nate.larue@newsco-drilling.com

Respectfully,

**Nate LaRue**                                        **Accepted By:** _____

**U.S. Account Manager**                      **Position:**      _____

**Newsco International Energy Services USA Inc.**      **Date:**      _____

*The information contained within this document is the property of Newsco International Energy Services USA Inc. and is subject to change without notice. The information contained herein shall not be altered, copied or transmitted with the expressed written consent of Newsco International Energy Services USA Inc.*





## Overview

Newsco International Energy Services USA Inc. is a global technology and drilling services provider based in Houston, TX USA providing advanced directional drilling techniques.



## Mission Statement

To provide quality directional drilling services through technical innovation, performance and gain customer trust through top quality service.



## Core Values

**Trust:**    T = r + d (reliability & dependability)

Trust comes from meeting and exceeding expectations.



**Service:** Service is in our name therefore it is more than value added; it is part of our genetics.

**Ingenuity:**    Always taking pride in devising creative solutions for the most complex issues.

**Integrity:**    Sets the standard for everything we do – we strive to be Honest, Ethical and Fair.



## NEWSCO MWD PACKAGES / 4 Well Introductory Rate

**Horizontal Drilling Package**

  **B– Directional & MWD Package (Motors) – OPERATING** .......................... ███████████

                   **Standby**……………………………..: ███████████

- *Newsco Performance Drilling Mud Motors all sections*
- *Newsco Mud Pulse MWD System*
- *Newsco Gamma Ray (For Curve and Lateral Operations)*
- *MWD Specialist (2) Curve and Lateral*
- *Directional Drillers (2) Curve and Lateral*
- *(2) Non-Magnetic Drill Collars per Section*
- *All Required Cross Over & Lifting Subs, and Inspections*
- *Shock and Vibration*
- *Continuous Inclination in Lateral*

******************** **INCENTIVE PROGRAM**********************************************

*XTO Will pay*

████████████████████████

████████████████████████

 ██ ███████

 ██ ██████████

  *Bonus is payed if* █████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████

  *********

*50% of the Bonus will be split between Newsco and Newsco DD's, MWD's and Newsco's Operations Team at the request of XTO.  Please note that there will be Taxes, and 10% Handling fees taken out on all bonus's and that bonus's will not be invoiced by contractors or employees until Newsco is Paid in Full by XTO.  Newsco DD and MWD Coordinators will notify each hand of the bonus's earned and they will be split for the team.  50% MWD 50% DDs.*

**Package 3 – Unmanned MWD / Vertical Control with Steerable Assembly**

  **A - MWD Package - OPERATING**.................................................................…... ███████████

      **STANDBY**.................................................................…. ███████████

**Directional Driller- Call out to Slide**...............................................................…. ███████████

**MWD Call out charge outside of Mob/Demob days**...............................................…. ███████████

**Monels/ UBHO**.................................................................................................…. ███████████

***** Inspections on all monels and ubho's will be covered by XTO. Trucking charges will be covered by XTO.

Newsco International Energy Services USA Inc.            CONFIDENTIAL

4

CONFIDENTIAL         NewscoUSA 0006



## ADDITIONAL PERSONNEL CHARGES (WHERE APPLICABLE)

**Lead Directional Driller** ........................................................................ ████████

**Directional Driller** ................................................................................ ████████

**Lead MWD Supervisor** .......................................................................... ████████

**MWD  Supervisor** .................................................................................. ████████

**Personnel Mileage(Included in all in Package)** .................................. ████████

**Personnel Subsistence** ........................................................................ ████████

**Personnel Lodging (if not provided by customer)** ............................. ████████

## ADDITIONAL CHARGES (WHERE APPLICABLE)

**MOB/De-Mob** ........................................................................................ ████████

**MOB/De-Mob(Unmanned Services) Included in Full Package Mob/Demob**............ ████████

**Well Planning Services** ........................................................................ ████████

**MWD Battery Disposal** ......................................................................... ████████

**Motor Stabilizer/built up kick pad** .................................................... ████████

**Surface Pipe Screen** ............................................................................ ████████

**MWD Inspection(2xIncluded)** ............................................................. ████████

**Non-Mag and Miscellaneous Tubular Inspections(Included)** ..................... ████████

**Equipment Damages and Repairs** ....................................................... ████████

**Equipment Transportation** ................................................................. ████████

## ADDITIONAL CHARGES (WHERE APPLICABLE)

**DS1 Cat 3-5 Inspections** ...................................................................... ████████

**Equipment Transportation** .................................................................. ████████



| NEWSCO PERFORMANCE DRILLING MUD MOTORS RENTAL RATES | | | | | | | |
|---|---|---|---|---|---|---|---|
| Motor Size | Motor Configuration | Rubber Type | Motor RPG | Flow Rate (GPM) | Hourly Rate* | Re-Line Rate** | MW&I |
| Newsco 5" | 6:7 9.0 | HR | .82 | 150 – 350 | | | |
| Newsco 5" | 7:8 6.4 | HR | .29 | 150 – 350 | | | |
| Newsco 5" | 7:8 3.8 | HR | .51 | 150 – 300 | | | |
| Newsco 5" | 7:8 5.0 | HR | .63 | 150 – 300 | | | |
| Newsco 6 1/2" | 7:8 5.0 | HR | .16 | 300 – 600 | | | |
| Newsco 7" | 4:5 7.0 | HR | .48 | 300 – 600 | | | |
| Newsco 7" | 7:8 3.0 | HR | .15 | 300 – 600 | | | |
| Newsco 7" | 7:8 5.0 | HR | .28 | 300 – 600 | | | |
| Newsco 7" | 7:8 5.7 | HR | .24 | 300 – 600 | | | |
| Newsco 7" | 7:8 6.4 | HR | .29 | 300 – 600 | | | |
| Newsco 8" | 7:8 4.0 | HR | .16 | 300 – 800 | | | |
| Newsco 9 5/8" | 7:8 4.0 | HR | .16 | 300 – 900 | | | |

**\*Hourly Rate per drilling hour**

**\*\*Reline charges apply for Motors run in OBM, 120,000 PPM Chloride, and/or Temperature Environments >200°F**

## DEFINITIONS & TERMS

1) **Operating Rate is charged when equipment is below rotary table for any portion of a day**

2) **Standby Rate is charged when equipment is on location and above rotary table for an entire day**

3) **A Day is defined as Midnight to Midnight**

4) **Per Used is defined as equipment that has gone below rotary table**

5) **Equipment damages beyond normal wear and tear will be charged back to the Customer** ▮

6) **Equipment damaged beyond repair will be charged per the LIH replacement schedule below**

7) **Payment terms are net 30 days from the date of the invoice**

8) **In the event of a tool failure Newsco will not compensate the customer for rig down time**



## LOST IN HOLE TERMS & REPLACEMENT SCHEDULE

Lost in Hole Coverage is offered to cover 50% of the replacement cost of the lost equipment

2) Lost in Hole Coverage must be accepted or declined prior to the first BHA being run in hole

3) Operating Day Rate will continue until Customer declares equipment Lost in Hole

4) Lost in Hole Coverage and Replacement rates will be charged per the schedule below

5) Lost in Hole availability for a 2nd lost tool event on a project will be determined on a caseby-case basis after the first Lost in Hole event

| Newsco Tool | Replacement Cost | Coverage Rate/Day |
|---|---|---|
| NEWSCO Mud Pulse MWD System | ███ | ███ |
| NEWSCO Gamma Ray (GR) | | ███ |
| NEWSCO NVADER™ MWD System | | ███ |
| NEWSCO Performance Drilling Mud Motor (9.625") | | ███ |
| NEWSCO Performance Drilling Mud Motor (8") | | ███ |
| NEWSCO Performance Drilling Mud Motor (6.25" to 6.75") | | ███ |
| NEWSCO Performance Drilling Mud Motor (4.75" to 5") | | ███ |

| BHA Component | 4.75" to 5" OD | 6.25" to 7" OD | 7.5" to 9.5" OD | Coverage Rate/Day |
|---|---|---|---|---|
| Slick Non-Magnetic Drill Collar | ███ | ███ | ███ | ███ |
| Flex Non-Magnetic Drill Collar | | | | |
| Pony Non-Magnetic Drill Collar | | | | |
| MWD UBHO Sub | | | | |
| Cross Over Sub | | | | |
| Float Sub | | | | |
| | | | | |



| | | | | |
|---|---|---|---|---|
| | | | | |

# Terms and Conditions of Service

The operations to be conducted, services to be rendered or  personnel or equipment to be provided (collectively the 'Services') by Newsco International Energy Services USA, Inc. ('Newsco') at the sole request of Customer ('Customer') shall only be offered, rendered or provided under the terms and conditions of any Master Service Agreement in force between the parties hereto or, if no such agreement is in force between the parties, according to the following general terms and conditions ('Terms').

**1. Acceptance of Terms.** Customer agrees that the prices levied by Newsco for the Services take in to consideration and are predicted on Customer assuming and releasing Newsco of certain liabilities and responsibilities. By requesting Services of Newsco, Customer voluntarily elects to enter into this agreement and to be bound by all of the Terms hereof and to provide adequate insurance by and for the expense of Customer to protect Newsco against the liabilities and responsibilities assumed by Customer herein.

**2. Indemnifications.** All Services are hereby supplied by Newsco with the following understanding:

(a)        Newsco agrees to protect, defend, indemnify and hold harmless Customer and its officers, directors and employees harmless from and against any and all claims, demands, damages, liens, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive) arising in connection herewith in favor of Newsco employees or Newsco subcontractors or their employees, or Newsco invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under this section (which Newsco and Customer hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirement or indemnities shall automatically be amended to conform to the  maximum limits permitted under such law.

(b)        Customer agrees to protect, defend, indemnify and hold harmless Newsco and its officers, directors and employees from and against any and all claims, demands, damages, fines, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive) arising in connection herewith in favor of Customer's employees or Customer's other contractors or their employees, or Customer's invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under this section (which Newsco and Customer hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnities, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirement or indemnities shall automatically be amended to conform to the maximum limits permitted under such law.

(c)        Notwithstanding the general indemnity obligations assumed in Section 2(a) and 2(b) above, Customer shall protect, defend, indemnify and hold harmless Newsco and it officers, directors and employees from and against any and all claims, demands, damages, liens, losses, suits, judgments, liabilities, expenses (including attorneys' fees and associated costs) and causes of action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole, joint or concurrent, active or passive), arising from (1) pollution or contamination, including clean up and control of the pollutant or contamination, (2) subsurface trespass, reservoir, formation, strata or other underground damage, including, but not limited to, loss or damage of any wellbore, or loss or impairment of any property right in or to oil, gas, other mineral substance or water, or (3) subsurface pressure, cratering, loss of control of a well and/or a well blow out or fire,

(d)        Customer acknowledges it is aware that downhole equipment used by Newsco in the provision of Services is designed to operate under conditions normally encountered in the wellbore. Customer shall notify Newsco in advance of hazardous or unusual wellbore condition and make any special arrangements necessary to safely complete the Services. Notwithstanding Section 2(a), Customer shall pay the cost of repair to all damaged equipment or, if the equipment is damaged beyond repair, Customer shall pay the current replacement cost thereof for all equipment subjected to the hazardous conditions. In the event any downhole equipment of Newsco is damaged or lost in the well, Customer shall either recover same without cost to Newsco or pay for any damage to or loss of such equipment at the current replacement. In the event it is necessary for Customer to fish for any of Newsco downhole equipment, Customer assumes the entire responsibility for such operations. Newsco will however, if so requested by Customer but without any responsibility or liability on the part of Newsco, render assistance in an advisory capacity for the recovery or fishing of such equipment and instruments. Customer further agrees that Newsco shall not be liable or responsible in any way for any damage that Customer may incur or sustain by reason of any equipment supplied or advice or assistance rendered of such fishing operations.

(e)        Except as otherwise expressly limited herein, it is the intent of the parties hereto that all indemnity obligations and/or liabilities assumed by such parties under the Terms of this agreement, including, without limitation, Sections 2(a) through 2(d) hereof, be without limit and without regard to the cause or causes thereof (including pre-existing conditions), the unseaworthiness of any vessel or vessels, strict liability, or the negligence or fault of any party or parties whether such negligence be sole, joint or herein will be supported by either available liability insurance or voluntarily self-insurance, in part or in whole.

(f)        Unless expressly stated otherwise herein, Customer and Newsco agree to accept liability and indemnify the other for loss or damage to third party property or personnel to the extent such loss or damage is caused by or arises out of the their respective acts or omissions. As used herein, 'third party' refers to any person or entity other than those referenced in Sections 2(a) and 2(b).

**3. Custody and Control of Well.** The Customer recognizes and accepts that at all times it has full care, custody and control or well and all conditions and equipment situated on or at the wellsite and has sole stimulations, workover, production procedure and all other activities at the wellsite. The Customer agrees to be responsibility for all decisions regarding the drilling, abandonment, testing, cementing, completion, have an authorized representative at the well at all times to exercise this control and custody and in instances where such representative is not present, the Customer agrees to supply Newsco with all necessary information in writing so the Services requested by Customer can be performed safely by Newsco. The responsibilities assumed herein by the Customer and Newsco shall not be changed.

**4. Wellsite and Return of Equipment.** Customer shall be responsible for and pay the entire cost of any repairs to roadbeds and bridges damaged during an attempt by Newsco to gain access to or depart from any wellsite to provide the Services, whether such attempt was successful or not. Furthermore, the Customer shall arrange and pay the entire cost of the use of any vehicles, vessels, aircraft or other special means of transportation or services for Newsco equipment or personnel to gain access to and return from any onshore or offshore wellsite to or from the point or origin or other mutually agreed location.

**5. Wellbore Conditions.** Customer acknowledges and agrees that Newsco has not control over wellbore conditions that may affect the work. Customer further acknowledges its responsibility to verify i) the success of any work performed under this agreement and II) that other work can be continued safely following completion of the Services. Customer shall protect, defend, indemnify and hold Newsco harmless from any claims, demands, judgments, losses, damages, suits, liabilities or expenses (including attorneys' fees and associated costs) and causes or action of whatever kind and nature without limitation and without regard to the cause or causes thereof or the negligence or fault of any party or parties (whether such negligence be sole,

joint or concurrent, active or passive), arising from or relating to Services performed on the wellbore.

**6. Independent Contractor.** In the provision of Services to Customer, it is understood that Newsco acts always as an independent contractor and nothing in the provision of such Services shall be interpreted so as to make Newsco an agent or servant of Customer or any other party.

**7. Authority of Customer.** Where the Customer is not the sole owner of the well, field or concession but instead shares ownership in such property with one or more other parties, the Customer represents that it is the operator or a duly authorized agent with full power to act for or on behalf of all owners in all acts, decisions  and other matters regarding the provision of the Services. The Customer shall indemnify and Newsco harmless from and against any and all losses, liabilities, claims, demands and causes of action (including attorneys' fees and associated costs) without limit, brought in favor of any third party which may arise as a result of any breach of deficiency of the representations set out in this section.

**8. No Warranties.** Any interpretation of logs or surveys, either through optical or electronic processing means or otherwise, or any recommendation or description of any reservoir based on such interpretations or other data are opinions based upon measurements, assumption and empirical relationships, which inference and assumptions are not incapable of error. Newsco cannot and does not guarantee the accuracy, correctness or completeness of such interpretations, recommendations or descriptions, and Customer agrees that Newsco shall not be liable or responsible for any loss, cost, damage or expense incurred or sustained by Customer resulting directly or indirectly therefrom. Under no circumstances should any such interpretation, recommendation or description be relied upon as the basis for any procedure conducted in or on a well which  WHETHER EXPRESS OR IMPLIED, THAT MAY ARISE OR BE MADE WITH RESPECT TO ANY GOODS OR SERVICES involves any risk to the safety of any personnel, equipment or venture. NEWSCO DISCLAIMS ALL WARRANTIES, PROVIDED DURING THE COURSE OF ITS PERFORMANCE OF THIS AGREEMENT. SUCH DISCLAIMER OR  WARRANTIES SHALL INCLUDE BUT NOT BE LIMITED TO, ANY IMPLIED WARRANTIES OR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

**9. Terms of Payment.** Customer shall pay Newsco for work performed per the agreed terms and prices within thirty (30) days from the date of the invoice. Terms of payment for Services rendered by Newsco are the net cash in US at the time of Service. Invoices not paid in thirty (30) days can be charged a finance charge equal  to one and one-half percent (1.5%) per month of unpaid balance (but in no event to exceed the highest lawful value).

**10. Taxes.** Customer shall pay Newsco for Services provided as contemplated herein and shall pay all taxes authority with respect to the charges made or payments received in connection with Newsco products or or other levies (other than U.S. Federal and State income taxes) imposed by any government or similar Services.

**11. Force Majeure.** Neither Newsco nor Customer shall be liable for delay or non-performance due to government regulations, strikes, hostile actions, weather, acts of God, or any other cause beyond their reasonable control (any and all of which causes are referred to herein as 'Force Majeure'). Force Majeure shall not however excuse payment for Services performed or any personnel and equipment charges accrued and unpaid prior to declaration of Force Majeure.

**12. Amendments, Severability, No Waiver.** These Terms constitute the entire agreement between parties with respect to the provision of Services and supersedes all other terms either expressed or implied by law. No employee or agent of Newsco is empowered to alter or amend these Terms as set out herein. In the event of any part or parts of these Terms being held invalid, such holding shall not invalidate the remainder. Both parties agree that the exculpatory, indemnification and hold harmless provisions herein shall be modified or altered only insofar as required by any jurisdiction purporting to limit such provisions, it being the intent of the parties to enforce to the fullest extent all Terms as are herein agreed to.

applicable to the jurisdiction in which the Services are performed. **13. Governing Law.** The Terms of agreement shall be construed in accordance with the laws of and

**14. Limitation of Damages.** Customer understands and agrees that if Newsco should be found liable to limited to the total sum paid by Customer to Newsco under this agreement, which shall be the exclusive remedy Customer for loss or damage relating to or concerning the Service, Newsco's liability to Customer shall be of Customer against Newsco. Newsco shall not be liable for any special, punitive, incidental or consequential damages relating to or concerning the Services, including, without limitation, loss of profit, business interruptions, or loss or delay of production EXCEPT to the extent of damages provided above. The provisions  of this section shall apply if loss or damage, irrespective of cause or origin, results directly or indirectly to Customer's person or property, from performance or nonperformance of Newsco's work under this agreement, or from negligence, active or otherwise, of Newsco, its agents, employees or assigns.



# Contact Information

**Mid-Continent Operations**

900 Old Hwy 105 W

Conroe, TX 77304

Main: +1 (832) 924-4020


**Nate LaRue**                              Mobile: +1 (817) 688-7819

U.S. Account Manager               nate.larue@newsco-drilling.com

**Invoice #: 10769**

**Invoice Date: 12/02/2019**

| Remit To: | Bill To: | |
|---|---|---|
| **NEWSCO INTERNATIONAL ENERGY SERVICES USA INC** | **XTO and its Subsidiaries** | Invoice Amount: USD 136,708.00 |
| Casper | XTO ENERGY INC | Remit to Supplier: USD 136,708.00 |
| 3101 Wood Court | Attn: Midland, TX 77M | |
| Casper , WY | 810 Houston St. | |
| US | Fort Worth , TX | |
| 82601 | US | |
| 307-232-6336 | 76102-6298 | |
| Supplier Number: 10000888 | | |

**Description:** WELL: JOHN BRAUN A UNIT #1341SH / RIG: FELDERHOFF32 / PERMIAN, MIDLAND CO. TX / AFE NO.: DD.2019.06164.CAP / GFCM CODE: 48705000.CAP.DRL / DESCRIPTION: DIRECTIONAL SERVICES / XTO REP: CHRIS F. / PERIOD OF: 11.4 - 11.25.19

## Details

| Alert | Item | Part # | Description | Quantity | Units | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | | Daily Operating Rate PK 3A | 5.00 | DAY | | | | | |
| | 2 | | Daily Operating Rate PK 3B STANDBY | 1.00 | DAY | | | | | |
| | 3 | | Product/Service: CALL OUT CHARGE, MWD | 6.00 | DAY | | | | | |
| | 4 | | Personnel Subsistence | 70.00 | MAN/DAY | | | | | |
| | 5 | | Personnel Mileage | 1800.00 | MI | | | | | |
| | 6 | | Product/Service: CALL OUT CHARGE, DIRECTIONAL DRILLER / SLIDE | 2.00 | DAY | | | | | |
| | 7 | | Product/Service: EQUIPMENT RENTAL: MONETS UBHO | 7.00 | DAY | | | | | |
| | 8 | | Product/Service: HORIZONIAL DRILLING PACKAGE - OPERATING CURVE/LATERAL | 15.00 | DAY | | | | | |
| | 9 | | Product/Service: HORIZONIAL DRILLING | 1.00 | DAY | | | | | |

CONFIDENTIAL

NewscoUSA 0012

**ENVERUS** Business Automation

| | 10 | | Product/Service: MOTOR RELINE, 6-3/4" 7/8 6.7 | 1.00 | TOOL | | | | | |
| | 11 | | Product/Service: MOTOR RELINE, 6-3/4" 7/8 6.0 | 1.00 | TOOL | | | | | |
| | 12 | | Product/Service: MOTOR RELINE, 7.00" 7/8 5.7 NOV | 1.00 | TOOL | | | | | |
| | 13 | | Product/Service: INSPECTION | 10.00 | TOOL | | | | | |
| | 14 | | Product/Service: MOB / De-Mob | 1.00 | WELL | | | | | |
| | 15 | | Well Planning Services | 1.00 | Well | | | | | |
| | 16 | FV-R | Float Valve Rebuild | 3.00 | EA | | | | | |
| | 17 | | MWD Battery Disposal | 3.00 | EA | | | | | |
| | 18 | | Product/Service: SCREENS, SURFACE PIPE / HIGH FLOW | 1.00 | ITEM | | | | | |
| | 19 | | Product/Service: MOTOR CREDIT, 7.00" 7/8 5.7 NOV | (71.67) | HRS | | | | | |
| | 20 | | Product/Service: MOTOR RELINE, 7.00" 7/8 5.7 NOV - CREDIT | (1.00) | TOOL | | | | | |

|  | Subtotal: | 0 | 0 |
| USD | | 136708.00 | 136708.00 |

## Supplementary Information

**Status: Saved**

**Current Owner**

Site: Casper
Department:
User: Newsco Energy

**Document Journal**

Saved on 12/02/2019 at 12:35:11 PM MST - by Newsco Energy

CONFIDENTIAL

**ENVERUS** Business Automation

12/2/2019                                                    OpenInvoice



10769 has been submitted to XTO and its Subsidiaries on 12/02/2019

Create Another

CONFIDENTIAL                                    NewscoUSA 0014

**Invoice #: 10769**

**Invoice Date: 12/02/2019**

**Remit To:**

**NEWSCO INTERNATIONAL ENERGY SERVICES USA INC**
Casper
3101 Wood Court
Casper , WY
US
82601
307-232-6336
Supplier Number: 10000888

**Bill To:**

**XTO and its Subsidiaries**
XTO ENERGY INC
Attn: Midland, TX 77M
810 Houston St.
Fort Worth , TX
US
76102-6298

Invoice Amount:          USD 139,008.00
Remit to Supplier:       USD 139,008.00

**Description:**   WELL: JOHN BRAUN A UNIT #1341SH / RIG: FELDERHOFF32 /
PERMIAN, MIDLAND CO. TX / AFE NO.: DD.2019.06164.CAP / GFCM
CODE: 48705000.CAP.DRL / DESCRIPTION: DIRECTIONAL SERVICES
/ XTO REP: CHRIS F. / PERIOD OF: 11.4 - 11.25.19

## Details

| Alert | Item | Part # | Description | Quantity | Units |
|-------|------|--------|-------------|----------|-------|
| | 1 | | Daily Operating Rate PK 3A | 5.00 | DAY |
| | 2 | | Daily Operating Rate PK 3B STANDBY | 1.00 | DAY |
| | 3 | | Product/Service: CALL OUT CHARGE, MWD | 6.00 | DAY |
| | 4 | | Personnel Subsistence | 70.00 | MAN/DAY |
| | 5 | | Personnel Mileage | 1800.00 | MI |
| | 6 | | Product/Service: CALL OUT CHARGE, DIRECTIONAL DRILLER / SLIDE | 2.00 | DAY |
| | 7 | | Product/Service: EQUIPMENT RENTAL: MONETS UBHO | 7.00 | DAY |
| | 8 | | Product/Service: HORIZONIAL DRILLING PACKAGE - OPERATING CURVE/LATERAL | 15.00 | DAY |
| | 9 | | Product/Service: HORIZONIAL DRILLING | 1.00 | DAY |

CONFIDENTIAL

NewscoUSA 0015

**ENVERUS** Business Automation



| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 10 | | Product/Service: MOTOR RELINE, 6-3/4" 7/8 6.7 | 1.00 | TOOL | | | | | | | |
| 11 | | Product/Service: MOTOR RELINE, 6-3/4" 7/8 6.0 | 1.00 | TOOL | | | | | | | |
| 12 | | Product/Service: MOTOR RELINE, 7.00" 7/8 5.7 NOV | 1.00 | TOOL | | | | | | | |
| 13 | | Product/Service: INSPECTION | 10.00 | TOOL | | | | | | | |
| 14 | | Product/Service: MOB / De-Mob | 1.00 | WELL | | | | | | | |
| 15 | | Well Planning Services | 1.00 | Well | | | | | | | |
| 16 | FV-R | Float Valve Rebuild | 3.00 | EA | | | | | | | |
| 17 | | MWD Battery Disposal | 3.00 | EA | | | | | | | |
| 18 | | Product/Service: SCREENS, SURFACE PIPE / HIGH FLOW | 1.00 | ITEM | | | | | | | |
| 19 | | Product/Service: MOTOR CREDIT, 7.00" 7/8 5.7 NOV | (71.67) | HRS | | | | | | | |
| 20 | | Product/Service: MOTOR RELINE, 7.00" 7/8 5.7 NOV - CREDIT | (1.00) | TOOL | | | | | | | |

|  | Subtotal: | 0 | 0 |
|---|---|---|---|
| USD | | 139008.00 | 139008.00 |

## Supplementary Information

**Status: Disputed**

**Current Owner**

    Site: Casper
    Department:
    User: Newsco Energy

**Document Journal**

    Disputed on 12/04/2019 at 08:42:53 AM MST - by Joanne Natividad
        Rate sheet attached does not apply to charges on the invoice. Correct rate sheet needs to be attached

**ENVERUS** Business Automation

Submitted on 12/02/2019 at 12:36:58 PM MST - by Newsco Energy

Field Ticket & Invoice total does not match due to finding over charges once in office. Credits added to org. invoice 10769

Saved on 12/02/2019 at 12:35:11 PM MST - by Newsco Energy

CONFIDENTIAL

NewscoUSA 0017

**ENVERUS** Business Automation

12/12/2019                                          OpenInvoice

                                          Submit                        NEWSCO INTERNATIONAL ENERGY SERVICES USA INC



10769 has been submitted to XTO and its Subsidiaries on 12/12/2019

Create Another

CONFIDENTIAL                                            NewscoUSA 0018

1/8/2020                                                OpenInvoice

Submit                                    NEWSCO INTERNATIONAL ENERGY SERVICES USA INC



10769 has been submitted to XTO and its Subsidiaries on 01/08/2020

Create Another

CONFIDENTIAL                                    NewscoUSA 0019