**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **NEWSCO INTERNATIONAL ENERGY** | § | **Case No. 19-36767 (DRJ)** |
| **SERVICES USA, INC.** | § | |
| | § | **Chapter 11** |
| **Debtor** | § | |

### DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC. UNDER 11 U.S.C. §1125

THIS PROPOSED DISCLOSURE STATEMENT HAS NOT BEEN APPROVED UNDER SECTION 1125(b) OF THE BANKRUPTCY CODE BY THE BANKRUPTCY COURT AS CONTAINING ADEQUATE INFORMATION FOR USE IN CONNECTION WITH THE SOLICITATION OF ACCEPTANCES OR REJECTIONS OF THE PLAN OF REORGANIZATION DESCRIBED HEREIN. ACCORDINGLY, THE FILING AND DISSEMINATION OF THIS PROPOSED DISCLOSURE STATEMENT ARE NOT INTENDED AND SHOULD NOT IN ANY WAY BE CONSTRUED AS A SOLICITATION OF VOTES ON THE PLAN, NOR SHOULD THE INFORMATION CONTAINED HEREIN BE RELIED UPON FOR ANY PURPOSE BEFORE A CONDITIONAL DETERMINATION BY THE BANKRUPTCY COURT THAT THE PROPOSED DISCLOSURE STATEMENT CONTAINS ADEQUATE INFORMATION.


DATED: November 19, 2020

Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

COUNSEL FOR DEBTOR

## TABLE OF CONTENTS

I.     INTRODUCTION .................................................................2
    A.    Identity of the Debtor.................................................2
    B.    General Information Concerning Disclosure Statement ................3
    C.    Definitions..................................................................3
    D.    Answers to Commonly Asked Questions ................................3
        1.    WHO IS THE DEBTOR?.................................................3
        2.    HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11? ...............3
        3.    WHAT IS CHAPTER 11?.................................................4
        4.    WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?.......4
        5.    IF THE PLAN OF REORGANIZATION GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT? ................4
        6.    HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?................4
        7.    WHY IS CONFIRMATION OF THE PLAN OF REORGANIZATION IMPORTANT?................5
        8.    WHAT IS NECESSARY TO CONFIRM THE PLAN OF REORGANIZATION? ................5
        9.    ARE CREDITORS ENTITLED TO VOTE ON THE PLAN? ...............6
        10.   HOW WILL THIS PLAN TREAT MY CLAIM?.........................6
        11.   WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?...........6
II.    INFORMATION CONCERNING THE DEBTOR................................6
    A.    Overview of the Debtor ................................................6
    B.    Management of the Debtor ............................................7
    C.    Events Leading to Filing ..............................................7
III.   FINANCIAL INFORMATION ................................................10
IV.   ANALYSIS AND VALUATION OF PROPERTY ............................10
    A.    Real Property ............................................................10
    B.    Personal Property ......................................................10
V.    PLAN OF REORGANIZATION ............................................11
    A.    Overview of the Plan ..................................................11
    B.    Means for Implementation of the Plan................................12
    C.    The Creditors' Trust....................................................12
    D.    Administrative Expense Claims......................................14
    E.    Analysis and Treatment of Claims....................................15
        1.    Class 1 Claims - Allowed Priority Tax Claims....................15
        2.    Class 2 - Allowed Unsecured Claims. ...........................15
        3.    Class 3 Interests – Allowed Equity Interests in the Debtor. ......16
    F.    Assumption and Rejection of Leases and Executory Contracts ......16
    G.    Claims Allowance Procedure..........................................17
    H.    Post-Confirmation Procedure..........................................17

VI.    FEASIBILITY OF THE PLAN AND RISK TO CREDITORS.........................................17

VII.   EFFECT OF CONFIRMATION OF PLAN...................................................................17
      1.     Discharge ..................................................................................................17
      2.     Injunction .................................................................................................18

VIII.  RETENTION OF JURISDICTION .............................................................................18

IX.    LIQUIDATION VALUE/ANALYSIS .......................................................................18

X.     ALTERNATIVES TO THE DEBTOR'S PLAN ...........................................................19

XI.    TAX CONSEQUENCES..........................................................................................19

XII.   PENDING AND POTENTIAL LITIGATION ...........................................................20
      A.    Pending Litigation....................................................................................20
      B.    Avoidance Actions....................................................................................20
      C.    Other Litigation........................................................................................21
      D.    Preservation of Claims..............................................................................21

XIII.  SOLICITATION OF VOTES....................................................................................22

CLARKHILL\J1452\397071\261299332.v2-11/18/20

<u>IMPORTANT NOTICE AND DISCLAIMER</u>

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST THE DEBTOR WITH "ADEQUATE INFORMATION" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN. THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, SHOULD BE READ. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN.**

**THERE HAS BEEN NO INDEPENDENT AUDIT OF THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT EXCEPT AS EXPRESSLY INDICATED HEREIN. THIS DISCLOSURE STATEMENT WAS COMPILED FROM INFORMATION OBTAINED FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE DEBTOR'S KNOWLEDGE, INFORMATION AND BELIEF. NO GOVERNMENTAL AUTHORITY HAS PASSED ON, CONFIRMED OR DETERMINED THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN.**

**NOTHING STATED HEREIN WILL BE DEEMED OR CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, OR BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE PLAN ON THE DEBTOR OR HOLDERS OF CLAIMS OR EQUITY INTERESTS. CERTAIN STATEMENTS CONTAINED HEREIN, BY NATURE, ARE FORWARD-LOOKING AND CONTAIN ESTIMATES AND ASSUMPTIONS. THERE CAN BE NO ASSURANCE THAT SUCH STATEMENTS WILL REFLECT ACTUAL OUTCOMES.**

**THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF, UNLESS ANOTHER TIME IS SPECIFIED. THE DELIVERY OF THIS DISCLOSURE STATEMENT WILL NOT BE DEEMED OR CONSTRUED TO CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME AFTER THE DATE HEREOF.**

**HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD NOT CONSTRUE THE CONTENTS OF THIS DISCLOSURE STATEMENT OR THE PLAN AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL OR TAX ADVICE. THEREFORE, EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL AND TAX ADVISORS AS TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT OR THE PLAN AND THE TRANSACTIONS CONTEMPLATED**

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125

THEREBY.NO SOLICITATION OF VOTES HAS BEEN OR MAY BE MADE EXCEPT PURSUANT TO THIS DISCLOSURE STATEMENT AND 11 U.S.C. § 1125 AND NO PERSON HAS BEEN AUTHORIZED TO USE ANY INFORMATION CONCERNING THE DEBTOR TO SOLICIT ACCEPTANCES OR REJECTIONS OF THE PLAN OTHER THAN THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT. CREDITORS SHOULD NOT RELY ON ANY INFORMATION RELATING TO THE DEBTOR OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS ATTACHED HERETO OR SUBMITTED HEREWITH.

EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE EXHIBITS, NO REPRESENTATION CONCERNING THE DEBTOR, ITS ASSETS, PAST OR FUTURE OPERATIONS, OR CONCERNING THE PLAN IS AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

NEITHER DELIVERY OF THE DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE DISCLOSURE STATEMENT AND THE PLAN SHALL UNDER ANY CIRCUMSTANCES IMPLY THAT THERE HAS BEEN NO CHANGE IN THE FACTS SET FORTH HEREIN SINCE THE DATE THE DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THE DISCLOSURE STATEMENT WERE COMPILED.

THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR THE COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT AND THE PLAN ATTACHED HERETO SHOULD BE READ IN THEIR ENTIRETY PRIOR TO VOTING ON THE PLAN. FOR THE CONVENIENCE OF HOLDERS OF CLAIMS, THE TERMS OF THE PLAN ARE SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY WITH THIS DISCLOSURE STATEMENT.

## I.      INTRODUCTION

### A.      Identity of the Debtor

NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC. ("Newsco USA" or the "Debtor"), a Delaware corporation, filed a voluntary petition for reorganization under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, et seq. ("Code") on December 4, 2019 in the United States Bankruptcy Court for the Southern District of Texas, Houston Division

("Bankruptcy Court"). The Debtor has been operating as debtor-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108 since the bankruptcy filing.

## B.      General Information Concerning Disclosure Statement

The Debtor has prepared and filed this Disclosure Statement consistent with the provisions of the Bankruptcy Code. The purpose of the Plan is to maximize recovery to the Creditors. The Debtor believes that the Plan achieves maximum recovery to all Creditors while facilitating the reorganization of the Debtor.

The Debtor submits this Disclosure Statement pursuant to 11 U.S.C. § 1125 and Rules 3016 and 3017 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") to all Creditors of the Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for creditors and the members of the Debtor in order to arrive at an intelligent, reasonably, informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan of Reorganization, incorporated herein ("Plan").

This Disclosure Statement describes the reorganization of the Debtor including the specific treatment you, as a Creditor, will receive under the Plan. The disclosure of information contained here is submitted as an aid and supplement to your review of the Plan in an effort to explain the terms and implications of the Plan. If any questions arise, the Debtor urges you to contact the Debtor's counsel and every effort will be made to address your questions. You are also urged to consult with your own counsel.

## C.      Definitions

Capitalized terms used herein are defined herein and in the DEFINITIONS in the Plan. If not defined, capitalized terms have the meanings assigned to in the Bankruptcy Code and Bankruptcy Rules.

## D.      Answers to Commonly Asked Questions

As part of the Debtor's effort to inform Creditors regarding the Debtor's Plan and the Plan confirmation process, the following summary provides answers to various questions which are often asked by a party receiving a disclosure statement.

**THE FOLLOWING SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN, WHICH CONTROLS IN THE EVENT OF ANY INCONSISTENCY.**

## 1.      WHO IS THE DEBTOR?

Newsco International Energy Services USA, Inc.

## 2.      HOW LONG HAS THE DEBTOR BEEN IN CHAPTER 11?

The Debtor filed its bankruptcy on December 4, 2019.

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

3.     **WHAT IS CHAPTER 11?**

Chapter 11 is the business reorganization provision of the Bankruptcy Code. It permits a Debtor to submit a Plan of Reorganization providing for the sale, distribution or retention of its assets to be used for the repayment of its debts on terms it believes to be manageable.

4.     **WHAT IS THE DEBTOR ATTEMPTING TO DO IN CHAPTER 11?**

The principal objective of a Chapter 11 case is confirmation (approval) of a plan of reorganization that enables a financially distressed debtor to restructure its debts and its assets. A plan of reorganization sets forth the means for treating impaired and unimpaired claims against a debtor. A claim is impaired under a plan of reorganization if the plan provides that such claim will not be repaid in full or that the legal, equitable, or contractual rights of the holder of such claim will be altered. A claim is unimpaired if it will be paid in full or the legal, equitable, or contractual rights of the holder of such claim are not altered by the plan of reorganization. A holder of an impaired claim generally is entitled to vote on a plan of reorganization if such claim has been allowed under Section 502 of the Bankruptcy Code.

5.     **IF THE PLAN OF REORGANIZATION GOVERNS HOW MY CLAIM IS TREATED, WHY AM I RECEIVING THIS DISCLOSURE STATEMENT?**

The Bankruptcy Code requires that a debtor solicit acceptances and rejections of its proposed Plan before the Plan can be confirmed (approved) by the Bankruptcy Court. Before a debtor can solicit acceptances of its Plan, the Bankruptcy Court must approve the Disclosure Statement and determine that the Disclosure Statement contains information adequate to allow creditors to make informed judgments about the Plan. After Bankruptcy Court approval of the Disclosure Statement, then the Disclosure Statement, the proposed Plan and a ballot are sent to the holders of claims. The creditors then have the opportunity to vote on the Plan.

6.     **HAS THIS DISCLOSURE STATEMENT BEEN APPROVED BY THE COURT?**

The Court has not approved this Disclosure Statement yet. Before a Plan of Reorganization can be confirmed, the Bankruptcy Court must find that a debtor's Disclosure Statement contains information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition for the debtor's books and records to enable a hypothetical, reasonable investor typical of holders of claims of the relevant classes to make an informed judgment whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of the Disclosure Statement in this case does not constitute an endorsement of any of the information contained in either the Disclosure Statement or the Plan.

Likewise, although the Debtor has utilized information believed to be accurate in preparing this Disclosure Statement, neither the Debtor nor its counsel warrant the accuracy of the information contained in or relied upon in preparing this Disclosure Statement nor should the Disclosure Statement be construed to be any representation or warranty whatsoever, express, implied or otherwise, that the Plan is free from risk, that acceptance or confirmation of the Plan will result in a risk-free or assured restructuring of the debts of the Debtor, or that the projections or plans of the Debtor for payment will be realized.

7.   **WHY IS CONFIRMATION OF THE PLAN OF REORGANIZATION IMPORTANT?**

Confirmation (approval) of the Plan by the Bankruptcy Court is necessary for the Debtor to provide the proposed payment to Creditors under the Plan. Unless the Plan is confirmed by the Bankruptcy Court, the Debtor is legally prohibited from paying you what has been proposed in the Plan.

8.   **WHAT IS NECESSARY TO CONFIRM THE PLAN OF REORGANIZATION?**

At the hearing scheduled by the Bankruptcy Court for _____, 2020 at____, _.m. (Central time), in the U.S. Bankruptcy Court, 903 San Jacinto Blvd., Texas 78701, the Bankruptcy Court will consider whether the Plan of Reorganization should be confirmed. Section 1129 of the Bankruptcy Code contains the requirements for confirmation of a Plan of Reorganization.

YOUR VOTE IS IMPORTANT.

In order for the Plan to be accepted by creditors, at least two-thirds in amount and more than one-half in number of the voting creditors in each class must affirmatively vote for the Plan. Even if all classes of claims accept the Plan, the Bankruptcy Court may refuse to confirm the Plan. The Bankruptcy Court must also find that the Plan complies with the applicable provisions of the Bankruptcy Code and that the proponent of the Plan has also complied with the Bankruptcy Code. The Bankruptcy Court must also find that the Plan has been proposed in good faith and not by any means forbidden by law. The Bankruptcy Court must find that the proponent of the Plan (here, the Debtor) has disclosed the identity and affiliation of the persons who will manage the Debtor after confirmation, that the appointment of such persons is consistent with the interest of creditors and equity security holders and with public policy, and that the identity and compensation of any insiders that will be employed or retained by the reorganized Debtor has been disclosed. The Bankruptcy Court must additionally find that each class of claims has either accepted the Plan or will receive at least as much as it would under a Chapter 7 liquidation. The Bankruptcy Code also provides for the treatment of certain priority claims. If any classes of claims are impaired under the Plan, the Court must find that at least one class of claims that is impaired has accepted the Plan without counting any votes by insiders. The Court must also find that confirmation of the Plan is not likely to be followed by the liquidation or the need for further reorganization of the Debtor. Additionally, the Plan must provide for payment of fees to the United States Trustee.

In the event that the Plan is not accepted by all classes of claims or interest, the Debtor may attempt to obtain confirmation under what is known as "cram-down." To obtain confirmation by cram-down, in general, the Bankruptcy Court must find that the Plan does not discriminate unfairly and is fair and equitable with respect to each class of claims or interests that is impaired by the Plan and has not accepted the Plan. The Code provides several options for a Plan to be "fair and equitable" to a secured creditor, which includes the secured creditor retaining its lien and receiving deferred cash payments at a market interest rate totaling either the value of the property securing the claim or the amount of the allowed claim as found by the Bankruptcy Court, whichever is less. With respect to a class of unsecured claims, the requirement that a Plan be "fair and equitable" requires that the holder of an unsecured claim be paid the allowed amount of its claim or that no junior interest receive or retain any property on account of its prior claim. In the event that the Plan

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

is not accepted by all classes, notice is hereby given that the Debtor will seek to obtain confirmation of the Plan through "cram-down."

**9.      ARE CREDITORS ENTITLED TO VOTE ON THE PLAN?**

Yes, each impaired Creditor is entitled to vote on the Debtor's proposed Plan. If you are a Creditor, a ballot to be used for voting on the Plan has been distributed to you with this Disclosure Statement. If you lose your Ballot, you may request another one from Debtor's counsel. Instructions for completing and returning the Ballot are set forth on the Ballot and should be reviewed carefully.

**10.     HOW WILL THIS PLAN TREAT MY CLAIM?**

People who are owed money by the Debtor hold what is known as a "claim." The Plan organizes claims into classes based upon the type of claim and the treatment which it will receive under the Plan. In order to determine how the Plan treats your claim, you must first determine which class covers your claim. To find the treatment of your claim, look in the Table of Contents to find the category which best describes your claim. Many creditors will hold what are known as unsecured claims.

**11.     WHEN IS THE DEADLINE FOR RETURNING MY BALLOT?**

The Bankruptcy Court has directed that, in order to be counted for voting purposes, the Debtor must receive your ballot by no later than 5:00 p.m. (prevailing central time), on _____ _____, 2020 ("Voting Deadline"), at the following address:

PLAN BALLOTS-NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC. c/o
Clark Hill Strasburger
Attn: Donna Jaenike
720 Brazos, Suite 700
Austin, TX 78701

You may also vote by email by sending your scanned ballot attached to an email addressed to djaenike@clarkhill.com with the language "PLAN BALLOTS-NEWSCO" in the subject line.

**IT IS IMPORTANT THAT ALL CREDITORS VOTE ON THE PLAN. THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RECOVERY TO CREDITORS. FOR THIS REASON, THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE CREDITORS AND RECOMMENDS THAT ALL CREDITORS VOTE TO ACCEPT THE PLAN.**

## II.     INFORMATION CONCERNING THE DEBTOR

**A.      Overview of the Debtor**

Newsco USA, the Debtor, is a Delaware corporation. Founded in 2010, Newsco USA is an

enhanced recovery solutions provider to many of the industry's leading upstream exploration and development ("E&P") operators and service companies with annual sales of approximately $20 million per year. Newsco provides "measurement by drilling" services, using patented and proprietary equipment, to supply custom solutions to customers' directional drilling needs. Newsco's services include a full package of well bore design and navigation capabilities. With its proven technology, Newsco collects downhole well bore information in real time and uses that information to direct the trajectory and direction of the drill bit, reducing the customer's drilling time by up to 20%. Newsco has an established presence in the Permian, Delaware and Bakken Basins in the United States.

**B.     Management of the Debtor**

The Chief Executive Officer is Billy Melville. The President and Chief Financial Officer is Biswajit Mishra. The Chief Operating Officer is Corey D. Campbell.

**C.     <u>Events Leading to Filing</u>**

In March 2017, Newsco was spun off from Marquard & Bahls, a Hamburg-based multinational company whose core lines of business are energy supply, trading and logistics. Newsco inherited an unsustainably high level of fixed costs, legacy leases and debt, and inadequate working capital. Since then, management has improved its service model and quality of service through streamlining its processes and workforce, reducing direct costs by 25% and its selling, general and administrative ("SGA") costs by 40%; but Newsco's turnaround efforts were hampered by capital constraints in a tight financing market, making it difficult for the company to make the necessary capital investments to take full advantage of the demand for its premium products and specialized services.

In July 2019, Newsco engaged J. Paul Ossa and David Mack with the Pathfinder Group to explore all options to sell or refinance the Debtor. Pathfinder prepared and widely distributed a confidential sales memorandum but were unable to attract offers outside of a Chapter 11 case due to the uncertain state of Debtor's continuing operations. Due, in part, to the burden of legacy debt incurred by the Debtor prior to the 2017 spinoff, the Debtor has been unable to pay its mineral subcontractors on a timely basis, which was potentially jeopardizing the collection of accounts receivable and Debtor's relationships with key customers.

Debtor's cash flow problems were exacerbated when the party factoring its accounts declared a default in June 2019 and exercised its right to collect the proceeds from all accounts, not just the purchased accounts, and eventually refused to allow the release of any funds to the Debtor for payroll and other critical operational expenses. The previous factor was paid in full in September 2019. There are no liens on Debtor's assets.

The Debtor was able to obtain a commitment from a new factor conditioned upon the Debtor filing for protection under Chapter 11.

The Debtor filed for protection under Chapter 11 on December 4, 2019.

**Significant Events since Filing Bankruptcy**

In General

Upon filing, Debtor sought and obtained approval to enter into a factoring arrangement to factor its receivables. Debtor also sought and obtained permission to pay employees their pre-petition wages and to pay certain claims secured by subcontractor mineral liens in order to facilitate the factoring arrangement.

The Debtor sought and obtained approval to retain Stephen A. Roberts and the firm of Clark Hill Strasburger as counsel.

The United States Trustee appointed a creditors committee consisting of representatives of Abaco Drilling Technologies, LLC. (James Hanna), Phoenix Technology Services USA, Inc. (Cam Ritchie), IAE International, Inc. (Dave Howe), and Gator Technologies, LLC. (Marcus LeBlanc) (the "**Creditors Committee**").

The Committee sought and obtained approval to employ Justin Renshaw and the law firm of Renshaw, P.C. to serve as counsel to the Committee.

A creditors' meeting under §341 of the Bankruptcy Code was held on January 23, 2020 at which the Debtor appeared and testified

The Court set a Bar Date for government agencies to file Proofs of Claims on June 17, 2020 and the Bar Date for filing all other Proofs Claims was April 22, 2020.

The Debtor reduced its fixed expenses by rejecting the following leases ("**Rejected Leases**"):

| LESSOR | LESSEE | Address1 (Lessor or Sublessee) | Address2 | DESCRIPTION OF CONTRACT OR LEASE CONTRACT | CONTRACT EFFECTIVE DATE |
|---|---|---|---|---|---|
| Bosworth Investment Group c/o this Realty | Newsco International Energy Services USA Inc. | 4000 N. Big Spring, Ste 114 Midland, Tx 79705 | | 36 Month lease on a parcel of real property located at 2454 W Interstate 20, Odessa, TX. | August 1, 2017 |
| FSP 600 17TH STREET LLC | Newsco International Energy Services USA Inc. | c/o Franklin Street Properties Corp. 401 Edgewater Place, Suite 200 Wakefield, MA 01880 Attn: Scott H. Carter | | 65 Month lease on a parcel of real property located at Suite 2450S, 600 17th Street, Denver Colorado. This property was sub-leased by Newsco to SIGIT Operating Company on July 11, 2019 until the end of the lease term. | August 27, 2015 |
| Newsco International Energy Services USA Inc. | Sigit Operating Company LLC | 600 17th Street, Suite 2450S Denver, CO 80202 | | **Sublease** for the unexpired term of the Suite 2450S, 600 7th Street, Denver, Colorado primarily leased by Newsco from Franklin Street Properties Corp. until December 31, 2020 | August 1, 2019 |

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

| LESSOR | LESSEE | Address1 (Lessor or Sublessee) | Address2 | DESCRIPTION OF CONTRACT OR LEASE CONTRACT | CONTRACT EFFECTIVE DATE |
|---|---|---|---|---|---|
| Ricoh USA, Inc. | Newsco International Energy Services USA Inc. | 70 Valley Stream Pkwy Malvern, PA 19355 | Wells Fargo Vendor Financial Services, LLC PO Box 13708 Macon, GA 31208-3708 | #3568399 - 48 month lease of One (1) RICOH MPC3504 Branding Set and One (1) RICOH MP2554SP. | November 1, 2016 |
| Ricoh USA, Inc. | Newsco International Energy Services USA Inc. | 70 Valley Stream Pkwy Malvern, PA 19355 | Wells Fargo Vendor Financial Services, LLC PO Box 13708 Macon, GA 31208-3708 | #3448011 – 48 month lease of Two (2) RICOH MPC4503 Plus copiers | December 11, 2015 |
| RingCentral, Inc. | Newsco International Energy Services USA Inc. | 20 Davis Drive Belmont, CA 94002 | | 24 months starting April 20, 2017, auto renewed for another 24 months starting April 20, 2019. Telephone system at Brittmoore location. | April 20 , 2017 April 20, 2019 auto renew |
| Salt Creek Properties, LLC | Newsco International Energy Services USA Inc. | Salt Creek Properties, LLC Richard Bratton, Manager PO Box 2390 Casper, WY 82602 | | 10-year non-residential real property lease on Casper office space located at 3101 Wood Ct. Casper, WY. | January 9, 2015 |
| THREE ALLEN CENTER CO. LLC | Newsco International Energy Services USA Inc. | Three Allen Center Co. LLC c/o Brookfield Properties 1200 Smith Street, Suite 1200 Houston, Texas 77002 Attention: Three Allen Center Property Manager | Three Allen Center Co. LLC c/o Brookfield Properties 1200 Smith Street, Suite 1200 Houston, Texas 77002 Attention: Senior Vice President | 77 Month lease on a parcel of real property located at Suite #2800, Three Allen Center, 333 Clay Street, Houston, Texas 77002. This property was sub-leased by Newsco. | November 1, 2013 |

The Debtor shut down its operations in Wyoming and, with court approval, either sold the equipment in Wyoming or moved it to Houston.

The Debtor continued operating and began generating positive income and positive cash flow and was poised to propose a reorganization plan and exit Chapter 11. Then, in the Spring of 2020, oil prices collapsed and COVID 19 spread. Because of those events, all the Debtors customers ceased their drilling programs, and Debtor has been unable to generate new business since then.

Debtor collected its outstanding accounts receivable and paid the factor in full, and so the Debtor does not have any secured creditors.

However, the Debtor has been unable to pay its administrative claims, including the claims of vendors providing goods and services since the commencement of this case, on a timely basis.

Debtor has been actively seeking buyers for its business. To maintain minimal operational capacity, the Debtor has generated some revenue from the sale of excess equipment.

The offer presented in the Plan is the highest and best offer to the Debtor and will enable the Debtor to pay all administrative claims and provide a return to pre-petition creditors.

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125

### III.    FINANCIAL INFORMATION

By the date this case was commenced, the Debtor had no lines of credit, vendors with subcontractors' mineral liens were filing liens on the leases of Debtor's customers, jeopardizing the Debtor's relationships, and the company was reaching a point where it could not make payroll.

The financial information of the Debtor as of the date of the commencement of this case is contained in the debtors Schedules of Assets and Liabilities and Statement of Financial Affairs on file with the Court. Parties who do not have access to the courts' online docket may contact Debtor's counsel to obtain a copy of those documents.

The Debtor was able to reach an agreement with a new factor, SouthStar Financial, LLC to acquire its accounts receivable but only by commencing this case and obtaining orders of the court to approve the factoring arrangement and protecting the factor. As a result, the Debtor was able to revive its operations and commence the reorganization process, until the intervention of the decline in oil prices and the spread of the COVID-19 virus.

The Debtor has filed monthly operating reports throughout the case, disclosing the Debtor's financial performance. The Monthly Operating Report covering the period from December 2019 through September 2020 is attached as **EXHIBIT A** hereto.

### IV.    ANALYSIS AND VALUATION OF PROPERTY

**A.    Real Property**

The Debtor does not own any real property.

**B.    Personal Property**

The Debtor's personal property consist primarily of oilfield machinery and equipment which has dramatically dropped in value in the current downturn. The Debtor has sold off excess equipment through the course of the case and obtained an appraisal performed by Gordon Brothers for the remainder of the machinery and equipment. The appraisal report was dated September 29, 2020 and the appraisal was as of July 29, 2020.

The following table provides a recap of the gross values estimated in the appraisal, a summary of the estimated sales expenses, commissions, and holding costs, and the resulting estimated Net Forced and Orderly Liquidation Value conclusions:

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

| Net FLV & OLV Valuations | | |
|---|---|---|
| | FLV | OLV |
| Gross Valuations | $1,547,645 | $2,107,065 |
| Estimated Direct Expenses (Includes personnel expense, liquidator's expense, security, and advertising) | (100,000) | (175,000) |
| Estimated Holding Costs (Includes real property holding costs, personal property holding costs, utilities, etc.) | (60,000) | (180,000) |
| Commission   (10.0% of Gross OLV) | Buyer's Premium NA | (210,707) |
| Estimated Net Calculations | $1,387,645 | $1,541,358 |
| Net FLV & OLV Conclusions (Rounded) | $1,380,000 | $1,540,000 |

**Important Note:** The conclusions of this appraisal assume a sale that is conducted by a professional liquidator on a fee-for-service basis, with no reflection of the required risk or cost of capital to buy or guarantee the asset recoveries.  As such, the conclusions do not represent a guarantee or equity bid from Gordon Brothers Commercial & Industrial, LLC ("Gordon Brothers Commercial & Industrial"), or any Gordon Brothers affiliates.  If a liquidator was requested to make an equity bid (cash offer), or to provide an equity bid-based guarantee of recovery for these assets, the liquidator would incorporate both the costs and risks associated with such a bid.  Both an equity bid and/or a guarantee would result in a proposal that would most likely be lower (and possibly significantly lower) than the appraised value to offset the liquidator's risk, cost of capital, and profit margins.

# V.   PLAN OF REORGANIZATION

## A.   Overview of the Plan

Debtor has entered into a letter of intent and term sheet with Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd, a Saudi Arabia limited liability company pursuant to which Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd or its designee ("Sawafi") will acquire 100% of the equity interest in the Debtor for $2,107,065 in cash at closing (the "Purchase Price").

The letter of intent and term sheet consist of a non-binding agreement among Sawafi, the Debtor and Debtor's affiliates including Debtor's Canadian parent[1] pursuant to which Sawafi intends to purchase the equity in the Debtor and the assets of other affiliates including assets of the Canadian parent, Telemetrix USA, Inc., and the intellectual property assets of Newsco Directional Support Services, Inc.

The Debtor expects to enter into a binding contract with Sawafi prior to the hearing on the Plan, subject to the confirmation of the Plan.

The objective of Sawafi is to expand its international reach in directional downhole drilling and continue operations of the Debtor when the market supports such operations.

In order to assure continued operations, Sawafi is requiring key management personnel, including Corey Campbell and Richard Doncaster, Business Manager – U.S., to enter into employment agreements.

---

[1] Debtor is owned by a holding company, Newsco International Holdings USA, Inc., which, in turn is owned by Newsco International Energy Services, Inc., a Canadian corporation.

The price offered for the Debtor's assets is based upon the orderly liquidation value without deduction for the costs, estimated by Gordon Brothers to be $565,707 or the risk or delay associated with an orderly liquidation of assets. The acquisition will require Sawafi to contribute considerable capital to maintain operations, speculating that the price of oil to increase to profitable levels within a reasonable time.

The individuals who indirectly own the equity in the Debtor and its affiliates: CEO Billy Melville and related entities (80%), CFO Biswajit Mishra and related entities (10%) and COO Corey Campbell and related entities (10%) are not receiving any financial consideration from the conveyance of their interests in the Debtor or its affiliates.

The Letter of Intent and Term Sheet with Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd, have been provided to the Creditors' Committee.

The Debtor will use the funds to fund the Plan.

**B.      Means for Implementation of the Plan**

On the Effective Date of the Plan, Sawafi will contribute capital to the Debtor in the amount of $2,107,065 (the "**Plan Capital Contribution**"). The Debtor will cancel all existing share of stock and issue new shares to Sawafi, so that Sawafi will own 100% of the Equity in the Debtor. The Plan Capital Contribution will be used to pay Administrative Expenses, Cure Amounts under Executory Contracts, Priority Tax Claims, and to establish a reserve for wind down and transition expenses. The balance of the Plan Capital Contribution will be transferred to the Creditors' Trust to administer payments of pre-petition unsecured claims against the Debtor, as provided in the Plan. The effect of the confirmation of the Plan will be to discharge the Debtor from all Claims except as provided under the Plan.

**C.      The Creditors' Trust**

With the Plan Capital Contribution, the Debtor will pay, or establish a reserve for payment, the Administrative Claims, the Priority Tax Claims, the Secured Equipment Claims, and the Cure Amounts and establish a reserve for to resolve any disputed Administrative Claims and to assist the Trustee of the Creditors' Trust. The Debtor will transfer the balance of the funds to a Creditors Trust to be established by the Creditors' Committee.

The Creditors' Trust shall be administered by a trustee (the "**Trustee**") who shall serve until all assets of the Creditors' Trust have been liquidated and proceeds distributed under the terms of the Plan and the Creditors' Trust is terminated or until the Trustee resigns or is removed.

Except as set forth below, the Trustee will be authorized take all actions necessary to administer the Creditors' Trust, to protect the assets and enforce or compromise the rights of the Creditors' Trust, to retain professionals, to object to claims, to make distributions to the creditors under the terms of the Plan, and to seek the entry of an order closing the bankruptcy case upon substantial consummation of the Plan

The Trustee's compensation shall be 5% of all disbursements from the Trust.

The Trustee shall post a bond in the amount of the maximum estimated balance of the trust accounts. The cost of the bond shall be borne by the assets of the Trust

The initial Trustee of the Creditors' Trust will be designated in writing prior to the hearing on the confirmation of the Plan.

A trust committee (the "Trust Committee") will be formed for the purpose of:

1. determining the amount of the trustee's bond;
2. selecting a successor trustee in the event the trustee resigns or is terminated;
3. selecting committee members to replace members who resign or are removed;
4. approving the commencement of any actions by the Creditors' Trust;
5. approving filing the objection to any claim;
6. approving any compromise of claims by the trustee;
7. terminating the Creditors Trust after the final distribution to creditors is made.

There shall be at least three initial members of the Trust Committee to be selected by the Creditors' Committee. All Trust Committee decisions will be made by majority vote. Any member can be removed and replaced by vote of two members. Members of the Trust Committee will not be compensated for their service on the Trust Committee but may obtain reimbursement for any out of pocket expenses.

The Debtor will file the U.S. Trustee's report and pay the quarterly fee for the 4th quarter 2020. The Creditors' Trust will be responsible for filing US Trustee's reports and paying quarterly fees after that.

The Trust shall indemnify and hold harmless any person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was the Trustee, or an employee of the Trust, or an agent, attorney, accountant, or other professional for the Trustee, against all costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit, or proceeding, or the defense or settlement of any claim, issue, or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of willful misconduct or gross negligence. Costs or expense incurred by any such entity in defending any such action, suit, or proceeding may be paid by the Trust in advance of the institution or final disposition of such action, suit, or proceeding, if authorized by the Trustee or, if such action, suit or proceeding is against the Trustee, by the Trust Committee.

The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Plan Trustee shall operate and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service

The Creditors' Trust Agreement will be filed with the court at least five days before the deadline for voting on the Plan.

**D.**     **Administrative Expense Claims**

Administrative Claims generally consist of expenses incurred during the chapter 11 case in administering the bankruptcy case and in operating the Debtor's business. Administrative claims generally include claims for providing goods and services to the Debtor and taxes incurred after the commencement of the case and which are allowable under §503 of the Code ("**Operating Expense Administrative Claims**"), the fees of professionals employed by the Debtor and the Creditors Committee in the bankruptcy case approved by the Bankruptcy Court ("**Professional Fees**"), and the United States Trustee's Fees ("**U.S. Trustee's Fees**").

The **Operating Expense Administrative Claims** in the amount of approximately $625,000 as of October 31, 2020, are scheduled on **Exhibit B.**

On the Effective Date of the Plan, the Operating Expense Administrative Claims listed on **Exhibit B** shall be paid in the amount listed on **Exhibit B**, less any payments made on such claims after October 31, 2020.  No other Operating Expense Administrative Claims arising on or before October 31, 2020 will be paid under the Plan, unless otherwise agreed by the Debtor or upon the entry of an order of the Bankruptcy Court.

The holders of any Operating Expense Administrative Claims arising on or before October 31, 2020 which are not on **Exhibit B** must file an Application for Payment of Administrative Claim at least five days before the commencement of the hearing on the confirmation of the Plan or such claims will not be paid under the Plan. If an Application is timely filed, the Debtor may either pay such claim or reserve funds for payment of such claim and file an objection to such claim. In that case, such claim will be paid pursuant to any settlement agreement or the entry of an order of the Court.

Any Operating Expense Administrative Claims arising after October 31, 2020 will be paid upon the later of the Effective Date of the Plan or when such claim is due.

Any vendor who provides goods or services to the Debtor after October 31, 2020 must submit and invoice to the Debtor within 30 days after providing such goods or services. If a vendor does not timely submit an invoice, the vendor will not be paid.

If the Debtor disputes any Operating Expense Administrative Claims arising after October 31, 2020, the Debtor will file an objection to such claim within 30 days of receipt of such claim. Otherwise the Debtor will pay such claim within 30 days of Debtor's receipt of such claim.

As of October 31, 2020, estimated unpaid Professional Fees are $134,000. Estimated Professional Fees as of the Effective Date of the Plan are estimated to be $175,000.

All Professional Fees will be paid upon the later of the Effective Date of the Plan and the date the Professional Fees are allowed by the Court.

The **United States Trustee's Fees** for the 4th quarter 2020 are estimated to be less than $25,000 and will be paid when due.

E.      **Analysis and Treatment of Claims**

1.      **Class 1 Claims - Allowed Priority Tax Claims**

Class 1 Claims consist of Allowed Claims of governmental authorities for taxes that are entitled to a priority of payment under §507 of the Bankruptcy Code.

The Debtor estimates the Allowed Priority Tax Claims to be $604,139.49, consisting of the claim the New Mexico Taxation and Revenue Department for gross receipts taxes. In addition, Montgomery County, Texas has filed an ad valorem tax claim for 2018 real property taxes in the amount of $36,057.52 and the Texas Comptroller has filed a claim for fuel taxes in the amount of $1,178.33, both of which are disputed.

The Allowed Priority Claims will be paid in full upon the Effective Date of the Plan.

The rights of Class 1 creditors are Unimpaired, and so, they are not entitled to vote on the Plan.

2.      **Class 2 - Allowed Unsecured Claims.**

Class 2 consists of the Allowed Claims of all creditors other than those in Classes 1.

Under the Plan, the Debtor will pay, or reserve for payment, out of the proceeds of the Plan Capital Contribution, the Administrative Claims and the Class 1 claims, and establish a reserve to resolve any disputed Administrative Claims and to assist the Trustee of the Creditors' Trust. The Debtor will transfer the balance of the funds to the Liquidating Trust for distribution to the holders of Class 2 claims on a pro rata basis.

Contemporaneously with the filing of this Disclosure Statement, Debtor has filed amended schedules of unsecured claims to reflect credits and adjustments, including deductions for payments made after this case was commenced, pursuant to the *Order Granting In Part And Denying In Part Motion Of The Debtor To Establish Critical Vendor Payment Procedures Pursuant To 11 U.S.C. §105(A), §363(B) And §1107(A)* [Dkt #15] (the "**Critical Vendor Order**").

The total amount of Class 2 claims scheduled by the Debtor as undisputed is $6,742,126, net of payments made under the Critical Vendor Order.[2] The total amount of potential Allowed Claims based upon the scheduled undisputed claims plus the increased amount stated on the proofs of claims filed by creditors is $9,130,803. However, in most cases the proofs of claims do not reflect credit for payments made under the Critical Vendor Order, which were $434,647. In addition, the Debtor has identified a number of claims that are disputed. The Debtor estimates that the valid amount of Class 3 claims is under $6.8 million.

The Allowed Claims of Class 2 creditors will be paid pro rata from the Creditors' Trust.

---

[2] This amount may not include additional unsecured claims for breach of a lease or executory contract which the Debtor may reject at confirmation. See Article V, F. Assumption and Rejection of Leases and Contracts

The rights of Class 2 creditors are Unimpaired and so they are entitled to vote on the Plan.

**3.      Class 3 Interests – Allowed Equity Interests in the Debtor.**

Class 3 consists of all of the existing equity interest of the Debtor. The Class 3 Interests shall be terminated on the Effective Date of the Plan

**F.      Assumption and Rejection of Leases and Executory Contracts**

The Debtor is a party to the following executory contracts and leases that have not been rejected during the case:

| Lessor | Address | Description | Cure Amount |
|---|---|---|---|
| HWM Properties LLC | 11603 Brittmoore Park Drive, Houston, TX 77041 | 12/1/2018 61 month lease of real property at 12029 Brittmoore Park Drive, Houston, TX 77041 | $29,700.00 |
| Wells Fargo Bank, N.A. | 800 Walnut Street MAC F0005-055, Des Moines, IA 50309 | 3/3/2015 Forklift Rental- Hyundai 30L-7A - Model #30L-7A SN 835-cure amount includes purchase option | $12,554.84 |
| Wells Fargo Bank, N.A. | 800 Walnut Street MAC F0005-055, Des Moines, IA 50309 | 4/16/15 Forklift Rental- Hydrostatic - Model C10000XL SN 26281 -cure amount includes purchase option | $40,224.18 |
| Verizon | PO Box 660108, Dallas, TX 75266-0108 | Mobile phones - 4 lines | $3,520.00 |
| Reliant | PO Box 650475, Dallas, TX 75265-0475 | 12/1/2018 60 month electricity contract with $5,000 est. cancellation fee. | $0.00 |
| Comcast Business | 9602 S 300 W. Ste B, Sandy, UT 84070-3302 | 7/1/2020 36 month internet contract with cancellation fee of $6,000 | $0.00 |

The Debtor may assume any executory contracts and unexpired leases ("Executory Contracts") at or prior to the Confirmation Hearing by giving notice to the Executory Contract of its intent to assume it. If the Debtor assumes an Executory Contract the Debtor will pay the Cure Amounts scheduled on the Chart above to the counterparty to the Contract. The Debtor will also pay any post-petition amounts due under an assumed Executory Contract.

**If a Counterparty objects to the assumption of its Executory Contract or contests the proposed Cure Amount, the Counterparty must timely file an objection to the Plan, or such objection is waived.**

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

Any Executory Contracts that are not expressly assumed shall be deemed to be rejected under the Plan and counterparties to such executory contracts shall have 30 days from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection.

## G.     Claims Allowance Procedure

The claims of Class 3 creditors will be paid based their pro rata share of funds from the Creditors' Trust based on the amount scheduled by the Debtor as undisputed (the "Scheduled Claims") *unless the creditor has timely filed a proof of claim.* Class 3 creditors who have timely filed Proofs of Claims will be paid their pro rata share of funds from the Creditors' Trust based on the amount of their Proof of Claim unless the there is an objection filed to their Proof of Claim. If an objection is filed, then such creditor shall be paid pursuant to a settlement of the objection or pursuant to an order of the Court resolving the objection.

Any party must file an objection to a Proof of Claim within 90 days after the Effective Date of the Plan.

The Creditors' Trust shall establish a reserve for disputed claims to provide for their pro rate payment to the extent that such claims become Allowed Claims.

## H.     Post-Confirmation Procedure

After confirmation of the Plan, the Bankruptcy Court will rule upon applications for compensation of professionals, any objections to Administrative Claims, and any objections to Proofs of Claims. The Debtor will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports for the fourth quarter 2020 and the Creditors' Trust will be required to pay U.S. Trustee fees and file quarterly post-confirmation reports thereafter until such time as a final decree is entered and the case is closed.

## VI.     Feasibility of the Plan and Risk to Creditors

There is no risk to the Creditors under the Plan since the Plan Contribution Payment will fund all of the obligations under the Plan.

## VII.     Effect of Confirmation of Plan

1.     Discharge

Pursuant to the Plan and the Confirmation Order, and except as expressly provided for in the Plan, the rights afforded in the Plan and the treatment of all Claims shall be in exchange for and in complete satisfaction, discharge, and release of all claims of any nature whatsoever against the Debtor and any of the Debtor's property; and, except as otherwise expressly provided in the Plan or the Confirmation Order, upon the Effective Date, the Debtor shall be deemed discharged and released from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not (a) a proof of claim or interest based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon

DISCLOSURE STATEMENT OF NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.
UNDER 11 U.S.C. § 1125
CLARKHILL\J1452\397071\261299332.v2-11/18/20

such debt is allowed under section 502 of the Bankruptcy Code; or (c) the holder of a Claim based upon such debt or interest has accepted the Plan. Except as expressly provided in the Plan, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. As provided in section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and shall operate as an injunction against the prosecution of any action against the Debtor, or their property, to the extent it relates to a Claim discharged.

2.      <u>Injunction</u>

Except as otherwise expressly provided in the Plan or the Confirmation Order, and as provided in section 1141 of the Bankruptcy Code, from and after the Confirmation Date, all Creditors and holders of Claims against the Debtor that are discharged pursuant to the Plan or the Bankruptcy Code are permanently restrained and enjoined from taking any of the following actions against the Estate, the Debtor, the Reorganized Debtor or any of their property on account of any such Claims, debts, liabilities or rights: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim, debt or liability against any Debtor, the Reorganized Debtor or their property on account of such Claims, debts or liabilities, other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against any Debtor, the Reorganized Debtor or their property; (c) creating, perfecting, or enforcing any encumbrance or lien of any kind against any Debtor, the Reorganized Debtor or their property; (d) asserting any right or setoff, subrogation, or recoupment of any kind against any obligation due the Debtor, the Reorganized Debtor or against their property; and (e) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with, or is inconsistent with, the provisions of the Plan; provided, however, that each Creditor and holder of a disputed claim may continue to prosecute its Proof of Claim in the Bankruptcy Court and any creditor and holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. The foregoing injunction shall extend to any successor of the Debtor (including, without limitation, the Reorganized Debtor) and their respective property and interests in property. If allowed by the Bankruptcy Court, any entity injured by any willful violation of such injunction shall recover actual damages, including costs and attorneys' and experts' fees and disbursements, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

# VIII.   <u>Retention of Jurisdiction</u>

After confirmation of the Plan, the Bankruptcy Court will retain jurisdiction to the extent provided by 28 U.S.C. §1334. Basically, this means that the Bankruptcy Court will retain jurisdiction over matters relating to the Plan and to rule on any matters which are pending in the case.

# IX.     <u>LIQUIDATION VALUE/ANALYSIS</u>

One of the requirements to confirm a plan of reorganization is that creditors receive at least as much as they would under a liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

It is intended to compare the payments under the Debtor's proposed Plan to payment under a chapter 7 liquidation. The Gordon Brothers' appraisal of machinery and equipment reflects that the proposed Plan Capital Contribution exceeds the net liquidation value of the Debtor's assets by a material margin and eliminates the inherent market risks in the liquidation process.  See **IV Analysis and Valuation of Property, B Personal Property**.

## X.       ALTERNATIVES TO THE DEBTOR'S PLAN

The only alternative to the Debtor's Plan is liquidation. The Debtor believes that the distribution to creditors under the Plan will be greater than in a liquidation.

The Debtor does not believe there would be any distribution to holders of any unsecured claims if the Secured Creditor were to sell the Debtor's real property at a foreclosure sale.

## XI.      TAX CONSEQUENCES

The transactions contemplated by the confirmation of the Plan may have an impact on the tax treatment received with respect to distributions under the Plan. That impact may be adverse to the creditor or interest holder.

An analysis of federal income tax consequence of the Plan to creditors, interest holder, and the Debtor requires a review of the Internal Revenue Code ("IRS Code"), the Treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. The Debtor has not requested a ruling from the Internal Revenue Service with respect to these matters. Accordingly, no assurance can be given as to the IRS's interpretation of this Plan.

The federal income tax consequences of the implementation of the Plan to a creditor will depend in part on whether, for federal income tax purposes, the obligation from which a creditor's claim arose constitutes a "security." The determination as to whether an obligation for which a creditor's claim arose constitutes a "security" for federal income tax purposes is complex. It depends on the facts and circumstances surrounding the origin and nature of the obligation. Generally, corporate debt obligations evidenced by written instruments with maturities, when issued five (5) years or less, or arising out of the extension of trade credit, do not constitute "securities," whereas corporate debt obligations evidenced by written instruments with original maturities over (10) years or more constitute "securities." Although it appears that most of the creditors' claims do not constitute "securities," the Debtor and their professionals express no view with respect to whether the obligation for which a particular creditor's claim arose constitutes a "security" for federal income tax purposes. Creditors are urged to consult their own tax advisor in this regard.

Generally, creditors whose claims arise from obligations that do not constitute "securities" or whose claims are for wages or services, will be fully taxable exchanges for federal income tax purposes. Such creditors who receive solely cash in discharge of their claims will recognize gain or loss, as the case may be, equal to the difference between (i) the amount realized by the creditor in respect of its claim (other than any claim for accrued interest) and (ii) the creditor's tax basis in its claim (other than any claim for accrued interest). For federal income tax purposes, the "amount

realized" by a creditor who receives solely cash in discharge of its claim will be the amount of cash received by such creditor. Where gain or loss is recognized by a creditor, the character of such gain or loss as a long-term or short-term capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the creditor, whether the obligation from which a claim arose has been held for more than six (6) months, and whether and to what extent the creditor has previously claimed a bad debt deduction. The capital gains deduction for individuals and the alternate tax for corporate net capital gains have been repealed and capital gain is currently taxed to individuals and corporations at their respective maximum tax rates. However, the definitions of long-term and short-term capital gain or loss have to be repealed.

Generally, to the extent any amount received (where cash or other property) by a creditor is received in discharge of interest accrued on its claim during its holding period, such amount will be taxable to the creditor as interest income (if not previously included in the creditor's gross income). Conversely, a creditor will recognize a deductible loss (or, possible, a write-off against a reserve for bad debts) to the extent any interest accrued on its claim was previously included in the creditor's gross income and is not paid in full.

The Creditors Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Plan Trustee shall operate and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

Accordingly, any income earned by the Creditors Trust will generally be taxable to the beneficiaries of the Trust.

**THE TRANSACTION CONTEMPLATED BY THE CONFIRMATION OF THE PLAN MAY HAVE AN IMPACT ON THE TAX TREATMENT OF ANY CREDITOR OR EQUITY INTEREST HOLDER. THAT IMPACT MAY BE ADVERSE TO THE CREDITOR OR EQUITY INTEREST HOLDER. NOTHING HEREIN IS INTENDED TO BE ADVICE OR OPINION AS TO THE TAX IMPACT OF THE PLAN ON ANY INDIVIDUAL CREDITOR OR EQUITY INTEREST HOLDER. EACH CREDITOR AND EQUITY INTEREST HOLDER IS CAUTIONED TO OBTAIN INDEPENDENT AND COMPETENT TAX ADVICE PRIOR TO VOTING ON THE PLAN.**

## XII.   PENDING AND POTENTIAL LITIGATION

### A.   Pending Litigation

There were several lawsuits filed by creditors against the Debtor before the commencement of the case listed in the Debtor's Statement of Financial Affairs that were stayed by the automatic stay upon the commencement of this case. The Debtor believes that any remaining disputes in those lawsuits will be resolved through the claims process in this Court.

## B.      Avoidance Actions

There are several types of "avoidance actions" established by the Bankruptcy Code for the benefit of Debtor, including: actions to recover avoidable preferences under §547 of the Bankruptcy Code; actions to recover fraudulent conveyances under §§ 544 and 548 of the Bankruptcy Code, actions to recover unauthorized post-petition transfers under §549 of the Bankruptcy Code, and actions to invalidate and avoid liens under §§ 544 and/or 545 of the Bankruptcy Code.

Included in the Statement of Financial Affairs on file with the Bankruptcy Court and available for review by interested parties is a disclosure of payments and transfers made to creditors by the Debtor within 90 days of the bankruptcy filing as well as other required disclosures, if any. At the present time, the Debtor does not intend to pursue any preference or fraudulent conveyance actions as the Plan proposes to pay all creditors in full. However, the Debtor (prior to the Effective Date) and Reorganized Debtor (after the Effective Date) reserve the right to pursue any and all causes of action arising under the Bankruptcy Code and applicable law against any persons, and the Plan preserves such rights.

## C.      Other Litigation

The Debtor is not aware of any potential non-bankruptcy claims and causes of action that the Debtor has against third parties.

## D.      Preservation of Claims

The net proceeds, if any, from potential claims of the Debtor are speculative and uncertain and therefore no value has been assigned to any recoveries. Furthermore, it should not be assumed that because any existing or potential litigation claim has not yet been pursued or may not fall within the list above that any such claim has been waived. While the Debtor has attempted to identify claims which may be pursued, its investigation is ongoing and the failure to list any potential or existing claim generally or specifically is not intended to limit the rights of the Debtor or Reorganized Debtor to pursue any such action. Unless a claim against any person or entity is expressly waived, relinquished, released, compromised or settled as provided or identified in the Plan or any Confirmation Order, the Debtor and the Reorganized Debtor expressly reserve all claims for later adjudication. Therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches shall apply to such claim upon or after the confirmation or consummation of the Plan.

All claims of any kind or character whatsoever owed to the Debtor by third parties or against third parties in favor of the Debtor or the Debtor's estate to the extent not specifically compromised and released pursuant to the Plan, will be preserved and retained by the Reorganized Debtor for and against third parties, whether currently known or unknown. Only those claims specifically and expressly compromised and released pursuant to the Plan are excepted from the foregoing.

### XIII.  SOLICITATION OF VOTES

The Debtor has devoted substantial effort to preparation of its Plan of Reorganization. The Debtor believes that the Plan represents a fair adjustment of their relationship with the creditors and will result in payment in full to creditors. The Debtor believes that the Plan is superior to a liquidation of or foreclosure on Omni Bay, which likely reduce the recovery for unsecured creditors. Therefore, the Debtor requests that all creditors vote in favor of its Plan of Reorganization.

Dated: November 19, 2020

PLAN PROPONENT:

**NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**

By: *//Billy Melville* _____
      Billy Melville
      Chief Executive Officer

DRAFTED and APPROVED:

_____
Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

**COUNSEL FOR NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**

**MOR-1**

**UNITED STATES BANKRUPTCY COURT**

| | |
|---|---|
| CASE NAME: Newsco International Energy Services USA Inc. | PETITION DATE: 12/4/2019 |
| CASE NUMBER: 19-36767 | DISTRICT OF TEXAS: Southern |
| PROPOSED PLAN DATE: | DIVISION: Houston |

### MONTHLY OPERATING REPORT SUMMARY  FOR MONTH

| MONTH | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 |
|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-6) | 171,951.92 | 668,301.50 | 1,246,949.10 | 623,290.81 | 199,265.00 | 0.00 | 16,725.00 | 3,309.90 | 1,195.00 | -16,725.00 |
| INCOME BEFORE INT; DEPREC./TAX (MOR-6) | -246,791.17 | -148,336.68 | 86,375.19 | -162,941.60 | -188,029.71 | -228,917.45 | -130,956.25 | -145,388.66 | -122,446.23 | -136,680.13 |
| NET INCOME (LOSS) (MOR-6) | -408,024.06 | -330,062.12 | -123,233.55 | -410,534.65 | -376,814.96 | -328,100.39 | -202,915.44 | -237,142.26 | -83,988.29 | -195,277.36 |
| PAYMENTS TO INSIDERS (MOR-9) | 19,163.38 | 45,624.60 | 33,492.03 | 36,978.43 | 26,359.24 | 24,708.52 | 20,924.49 | 28,389.43 | 20,330.78 | 18,766.20 |
| PAYMENTS TO PROFESSIONALS (MOR-9) | 0.00 | 0.00 | 0.00 | 47,880.90 | 10,000.00 | 58,449.95 | 0.00 | 36,045.00 | 7,290.00 | 10,000.00 |
| TOTAL DISBURSEMENTS (MOR-7) | 763,868.42 | 859,960.52 | 875,751.27 | 954,975.32 | 517,035.38 | 358,190.87 | 199,444.86 | 172,385.73 | 126,509.26 | 160,811.03 |

***The original of this document must be filed with the Bankruptcy Court and a copy must be sent to the United States Trustee***

| REQUIRED INSURANCE MAINTAINED AS OF SIGNATURE DATE | | EXP. DATE | | CIRCLE ONE |
|---|---|---|---|---|
| | | | Are all accounts receivable being collected within terms? | YES  No /N/A |
| | | | Are all post-petition liabilities, including taxes, being paid within terms? | Yes  NO |
| | | | Have any pre-petition liabilites been paid? | Yes  NO |
| CASUALTY | YES ( X ) NO ( ) | 9/15/2021 | If so, describe   subcontractors with mineral rights | |
| LIABILITY | YES ( X ) NO ( ) | 9/15/2021 | Are all funds received being deposited into DIP bank accounts? | Yes  No |
| VEHICLE | YES ( X ) NO ( ) | 9/15/2021 | Were any assets disposed of outside the normal course of business? | Yes  No |
| WORKER'S | YES ( X ) NO ( ) | 8/25/2021 | If so, describe | |
| OTHER D&O | YES ( X ) NO ( ) | 4/1/2021 | Are all U.S. Trustee Quarterly Fee Payments current? | Yes  No |
| | | | What is the status of your Plan of Reorganization? | |
| | | | work in process | |

| | |
|---|---|
| ATTORNEY NAME: Stephen A. Roberts | I certify under penalty of perjury that the following complete |
| FIRM NAME: Clark Hill Strasburger | Monthly Operating Report (MOR), consisting of MOR-1 through |
| ADDRESS: 720 Brazos, Suite 700 | MOR-9 plus attachments, is true and correct. |
| | SIGNED X _Caroline Beck_ TITLE: Controller |
| CITY, STATE, ZIP: Austin, Texas 78701 | (ORIGINAL SIGNATURE) |
| TELEPHONE/FAX: (512) 499-3624 | _Caroline Beck_ _10/21/20_ |
| | (PRINT NAME OF SIGNATORY)   DATE    Revised 07/01/98 |

**MOR-1**

Legal\A6639\A24699\4850-2048-2148.v1-1/21/20

CASE NAME:  Newsco International Energy Services USA Inc.
CASE NUMBER:  19-36767

## COMPARATIVE BALANCE SHEETS

| ASSETS | FILING DATE* 12/4/2019 0:00 | MONTH Dec-19 | MONTH Jan-20 | MONTH Feb-20 | MONTH Mar-20 | MONTH Apr-20 | MONTH May-20 | MONTH Jun-20 | MONTH Jul-20 | MONTH Aug-20 | MONTH Sep-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| CURRENT ASSETS | | | | | | | | | | | |
| Cash | 14,787.01 | 129,489.06 | 206,741.02 | 51,922.54 | 451,007.19 | 472,359.10 | 210,294.24 | 138,552.94 | 40,500.08 | 78,750.77 | 175,675.48 |
| Accounts Receivable, Net | 1,843,345.97 | 1,065,337.70 | 1,241,480.70 | 2,121,535.33 | 2,225,241.55 | 1,094,065.71 | 533,241.77 | 354,910.00 | 308,219.90 | 256,203.59 | 1,293.59 |
| Inventory: Lower of Cost or Market | 954,573.47 | 954,573.47 | 927,766.56 | 927,766.56 | 927,766.56 | 927,766.56 | 927,766.56 | 927,766.56 | 925,740.10 | 925,788.10 | 925,788.10 |
| Prepaid Expenses | 191,230.64 | 385,190.08 | 238,636.48 | 141,342.63 | 149,742.13 | 128,594.42 | 103,091.04 | 112,313.99 | 63,342.80 | 40,688.09 | 95,356.57 |
| Investments | | | | | | | | | | | |
| Other | | | | | | | | 16,725.00 | 16,725.00 | 16,725.00 | |
| TOTAL CURRENT ASSETS | 3,003,937.09 | 2,534,590.31 | 2,614,624.76 | 3,242,567.06 | 3,753,757.43 | 2,623,685.79 | 1,774,393.61 | 1,550,268.49 | 1,354,527.88 | 1,318,155.55 | 1,198,113.74 |
| PROPERTY, PLANT & EQUIP @ COST | 14,153,241.43 | 14,153,241.43 | 14,152,825.43 | 14,152,825.43 | 13,676,634.43 | 13,676,634.43 | 11,345,587.21 | 11,256,060.34 | 11,192,929.54 | 11,192,282.49 | 11,192,282.49 |
| Less Accumulated Depreciation | -12,624,922.06 | -12,786,169.52 | -12,901,060.20 | -13,017,095.95 | -12,688,665.89 | -12,804,701.88 | -10,609,030.37 | -10,567,005.61 | -10,555,087.06 | -10,582,886.44 | -10,607,653.89 |
| NET BOOK VALUE OF PP & E | 1,528,319.37 | 1,367,071.91 | 1,251,765.23 | 1,135,729.48 | 987,968.54 | 871,932.55 | 736,556.84 | 689,054.73 | 637,842.48 | 609,396.05 | 584,628.60 |
| OTHER ASSETS | | | | | | | | | | | |
| 1. Tax Deposits | | | | | | | | | | | |
| 2. Investments in Subsidiaries | | | | | | | | | | | |
| 3. Security Deposit | 39,012.50 | 39,012.50 | 39,012.50 | 39,012.50 | 15,450.00 | 15,450.00 | 15,450.00 | 15,450.00 | 15,450.00 | 15,450.00 | 15,450.00 |
| 4. | | | | | | | | | | | |
| TOTAL ASSETS | $4,571,268.96 | $3,940,674.72 | $3,905,402.49 | $4,417,309.04 | $4,757,175.97 | $3,511,068.34 | $2,526,400.45 | $2,254,773.22 | $2,007,820.36 | $1,943,001.60 | $1,798,192.34 |

* Per Schedules and Statement of Affairs

MOR-2

Revised 07/01/98

CASE NAME: Newsco International Energy Services USA Inc.
CASE NUMBER: 19-36767

## COMPARATIVE BALANCE SHEETS

| LIABILITIES & OWNER'S EQUITY | FILING DATE* 12/4/2019 0:00 | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| LIABILITIES | | | | | | | | | | | |
| POST-PETITION LIABILITIES(MOR-4) | | 275,947.37 | 818,059.51 | 1,451,766.48 | 2,295,978.44 | 1,513,231.39 | 948,048.16 | 927,887.66 | 866,873.80 | 879,082.48 | 878,146.90 |
| PRE-PETITION LIABILITIES | | | | | | | | | | | |
| Notes Payable - Secured | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Priority Debt | | | | | | | | | | | |
| Federal Income Tax | | | | | | | | | | | |
| FICA/Withholding | | | | | | | | | | | |
| Unsecured Debt | 6,953,199.63 | 6,666,771.79 | 6,471,075.33 | 6,470,542.02 | 6,454,485.01 | 6,520,178.41 | 6,526,040.07 | 6,482,585.07 | 6,531,871.36 | 6,531,895.68 | 6,531,895.68 |
| Unsecured Debt | 103,257.22 | 0.00 | | | | | | | | | |
| Net Payroll – Wages | 891,512.00 | 874,197.73 | 847,344.47 | 868,522.71 | 824,170.07 | 663,979.98 | 586,022.59 | 597,743.22 | 616,197.49 | 603,415.17 | 603,466.79 |
| Accrued Liabilities | 2,218,919.56 | 2,206,522.46 | 2,206,522.44 | 2,195,786.19 | 2,180,698.00 | 2,208,075.36 | 2,207,099.36 | 2,207,099.36 | 2,175,562.06 | 2,183,182.32 | 2,222,534.32 |
| Intercompany | 126,692.16 | 108,379.62 | 90,067.08 | 71,754.54 | 53,442.00 | 35,129.46 | 16,816.92 | 0.00 | 0.00 | 0.00 | 0.00 |
| Insurance Loan Payable | | | | | | | | | | | |
| Taxes Payable | 616,542.56 | 615,642.56 | 609,182.59 | 619,019.58 | 619,019.58 | 617,905.83 | 617,905.83 | 617,905.83 | 632,905.83 | 645,004.42 | 657,004.42 |
| TOTAL PRE-PETITION LIABILITIES | 10,910,123.13 | 10,471,514.16 | 10,224,191.91 | 10,225,625.04 | 10,131,814.66 | 10,045,269.04 | 9,953,884.77 | 9,905,333.48 | 9,956,536.74 | 9,963,497.59 | 10,014,901.21 |
| TOTAL LIABILITIES | 10,910,123.13 | 10,747,461.53 | 11,042,251.42 | 11,677,391.52 | 12,427,793.10 | 11,558,500.43 | 10,901,932.93 | 10,833,221.14 | 10,823,410.54 | 10,842,580.07 | 10,893,048.11 |
| OWNERS EQUITY (DEFICIT) | | | | | | | | | | | |
| PREFERRED STOCK | | | | | | | | | | | |
| COMMON STOCK | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 | 25,000,010.00 |
| ADDITIONAL PAID-IN CAPITAL | | | | | | | | | | | |
| RETAINED EARNINGS: Filing Date | -31,338,864.17 | -31,806,796.81 | -32,136,858.93 | -32,260,092.48 | -32,670,627.13 | -33,047,442.00 | -33,375,542.48 | -33,578,457.92 | -33,815,600.18 | -33,899,588.47 | -34,094,865.77 |
| RETAINED EARNINGS: Post Filing Date | | | | | | | | | | | |
| TOTAL OWNERS EQUITY (NET WORTH) | -6,338,854.17 | -6,806,786.81 | -7,136,848.93 | -7,260,082.48 | -7,670,617.13 | -8,047,432.00 | -8,375,532.48 | -8,578,447.92 | -8,815,590.18 | -8,899,578.47 | -9,094,855.77 |
| TOTAL LIABILITIES & OWNERS EQUITY | 4,571,268.96 | 3,940,674.72 | 3,905,402.49 | 4,417,309.04 | 4,757,175.97 | 3,511,068.34 | 2,526,400.45 | 2,254,773.22 | 2,007,820.36 | 1,943,001.60 | 1,798,192.34 |

* Per Schedules and Statement of Affairs

MOR-3

Case 19-36767   Document 200   Filed in TXSB on 10/22/20   Page 4 of 10

CASE NAME:    Newsco International Energy Services USA Inc.
CASE NUMBER:    19-36767

## SCHEDULE OF POST-PETITION LIABILITIES

| | MONTH Dec-19 | MONTH Jan-20 | MONTH Feb-20 | MONTH Mar-20 | MONTH Apr-20 | MONTH May-20 | MONTH Jun-20 | MONTH Jul-20 | MONTH Aug-20 | MONTH Sep-20 |
|---|---|---|---|---|---|---|---|---|---|---|
| *TRADE ACCOUNTS PAYABLE* | 122,394.75 | 52,662.43 | 122,972.54 | 623,039.08 | 642,307.29 | 681,976.00 | 701,149.47 | 655,310.91 | 625,721.98 | 595,486.24 |
| TAX PAYABLE | | | | | | | | | | |
| Federal Payroll Taxes | | | | | | | | | | |
| State Payroll Taxes | | | | | | | | | | |
| Ad Valorem Taxes | | | | | | | | | | |
| Other Taxes | 20,860.34 | 34,270.30 | 37,859.07 | 107,312.63 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 |
| TOTAL TAXES PAYABLE | 20,860.34 | 34,270.30 | 37,859.07 | 107,312.63 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 | 135,034.58 |
| SECURED DEBT POST-PETITION | | 335,177.94 | 616,881.19 | 1,351,193.19 | 593,162.29 | 71,693.58 | -0.08 | | | |
| INSURANCE NOTE PAYABLE | | | | | | | | | | 49,145.11 |
| ACCRUED INTEREST PAYABLE | 15,000.00 | 45,000.00 | 105,000.00 | 124,000.00 | 115,000.00 | | 15,000.00 | | | |
| ACCRUED PROFESSIONAL FEES* | | | | | | | | 13,860.09 | 44,049.49 | 55,255.47 |
| OTHER  ACCRUED LIABILITIES | | | | | | | | | | |
| 1. Equipment Rentals | 10,000.00 | 190,075.00 | 339,721.47 | 0.00 | | | | 16,000.00 | 16,000.00 | 16,000.00 |
| 2. Net Wages Payable | 83,048.05 | 0.00 | 14,000.01 | 18,200.02 | 10,000.00 | 41,540.54 | 49,026.59 | 34,461.50 | 45,461.50 | 31,765.06 |
| 3  Accrued Contract Labor | 23,000.00 | 126,421.33 | 161,893.02 | 29,026.00 | | | | | | |
| 4  US Trustee Fees | | 8,599.85 | 17,681.39 | 27,231.90 | 5,170.35 | 8,754.62 | 11,954.62 | 2,141.12 | 3,406.21 | 5,013.21 |
| 5  Relocation Costs | 25,000.00 | 25,000.00 | 40,000.00 | | | | | | | |
| 6  Insurance | 5,000.00 | 5,000.00 | | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 0.00 | | |
| 7  Travel | 1,704.47 | 534.05 | 11,313.17 | | | | | | | |
| 8  Intercompany-Canada | | | | 27,377.36 | 27,377.36 | 27,377.36 | 37,559.04 | 40,410.20 | 43,261.36 | 31,261.36 |
| 9  Intercompany - Telemetrix USA | 1,644.23 | -6,385.86 | -15,555.38 | -16,401.74 | -19,820.48 | -23,328.52 | -26,636.56 | -30,344.60 | -33,852.64 | -40,814.13 |
| TOTAL POST-PETITION LIABILITIES (MOR-3) | $275,947.37 | $818,059.51 | $1,451,766.48 | $2,295,978.44 | $1,513,231.39 | $948,048.16 | $927,887.66 | $866,873.80 | $879,082.48 | $878,146.90 |

*Payment requires Court Approval

MOR-4

Revised 07/01/98

Legal A6639/A24699/18530c2048e2148.v1r12/120

CASE NAME: Newsco International Energy Services USA Inc.
CASE NUMBER: 19-36767

## AGING OF POST-PETITION LIABILITIES
MONTH Sep-20

| DAYS | TOTAL | TRADE ACCOUNTS | FEDERAL TAXES | TAXES | Equipment Rentals | Insurance Note Payable | Legal Fees | Wages/Contractors | MONTH Intercompany | Other |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 | 81,907.11 | 11,865.28 | | | | 49,145.11 | 20,000.00 | 3,480.05 | -4,110.33 | 1,607.00 |
| 31-60 | 53,669.32 | 665.73 | | | 16,000.00 | | 21,395.38 | 15,000.00 | -656.88 | 1,265.09 |
| 61-90 | 29,708.94 | 17,710.85 | | | | | 10,000.00 | 3,365.01 | -3,508.04 | 2,141.12 |
| 91+ | 712,861.53 | 565,364.38 | | 135,034.58 | | | 3,860.09 | 10,000.00 | -1,277.52 | 0.00 |
| TOTAL | $878,146.90 | $595,486.24 | $0.00 | $135,034.58 | $16,000.00 | $49,145.11 | $55,255.47 | $31,765.06 | ($9,552.77) | $5,013.21 |

## AGING OF ACCOUNTS RECEIVABLE

| MONTH | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0-30 DAYS | 516,875.26 | 882,651.51 | 745,214.51 | 1,741,035.56 | 585,671.95 | 0.00 | 0.00 | 3,309.90 | 1,293.59 | 0.00 |
| 31-60 DAYS | 310,141.92 | 139,008.00 | 165,943.88 | 316,560.00 | 242,563.76 | 82,568.01 | 0.00 | 0.00 | 0.00 | 1,292.59 |
| 61-90 DAYS | 117,150.00 | 55,550.67 | 0.00 | 39,060.00 | 316,560.00 | 154,243.76 | 0.00 | 0.00 | 0.00 | 0.00 |
| 91+ DAYS | 120,970.52 | 164,270.52 | 161,586.19 | 128,586.19 | 29,870.00 | 296,430.00 | 354,910.00 | 304,910.00 | 254,910.00 | 0.00 |
| TOTAL | $1,065,337.70 | $1,241,480.70 | $1,072,744.58 | $2,225,241.55 | $1,094,965.71 | $533,241.77 | $354,910.00 | $308,219.90 | $256,203.59 | $1,293.59 |

MOR-5

Revised 07/01/98

Legal-MAC9 v.2a50994896v2048v2148.v1v121/20

CASE NAME:   Newsco International Energy Services USA Inc.
CASE NUMBER: 19-36767

## STATEMENT OF INCOME (LOSS)

| | MONTH Dec-19 | MONTH Jan-20 | MONTH Feb-20 | MONTH Mar-20 | MONTH Apr-20 | MONTH May-20 | MONTH Jun-20 | MONTH Jul-20 | MONTH Aug-20 | MONTH Sep-20 | FILING TO DATE 9/30/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES (MOR-1) | 171,951.92 | 668,301.50 | 1,246,949.10 | 623,290.81 | 199,265.00 | 0.00 | 16,725.00 | 3,309.90 | 1,195.00 | -16,725.00 | 2,914,263.23 |
| TOTAL COST OF REVENUES | 130,267.87 | 431,033.91 | 827,318.26 | 444,127.32 | 129,647.94 | 59,807.19 | 17,754.39 | -2,213.02 | -48.00 | | 2,037,695.86 |
| GROSS PROFIT | 41,684.05 | 237,267.59 | 419,630.84 | 179,163.49 | 69,617.06 | -59,807.19 | -1,029.39 | 5,522.92 | 1,243.00 | -16,725.00 | 876,567.37 |
| **OPERATING EXPENSES:** | | | | | | | | | | | |
| Selling & Marketing | | | | | | | | | | | 0.00 |
| General & Administrative | 243,527.17 | 335,690.35 | 293,324.51 | 302,174.35 | 216,774.67 | 129,179.52 | 89,996.12 | 122,522.15 | 103,358.45 | 101,188.93 | 1,937,736.21 |
| Insiders Compensation | 29,948.06 | 49,913.93 | 39,931.14 | 39,930.74 | 39,930.74 | 39,930.74 | 39,930.74 | 28,389.43 | 20,330.78 | 18,766.20 | 347,002.49 |
| Professional Fees | 15,000.00 | | | | | | | | | | 15,000.00 |
| Other | | | | | 941.36 | | | | | | 941.36 |
| Other | | | | | | | | | | | 0.00 |
| **TOTAL OPERATING EXPENSES** | 288,475.22 | 385,604.27 | 333,255.65 | 342,105.09 | 257,646.77 | 169,110.26 | 129,926.86 | 150,911.58 | 123,689.23 | 119,955.13 | 2,300,680.06 |
| INCOME BEFORE INT./DEPR./TAX (MOR-1) | -246,791.17 | -148,336.68 | 86,375.19 | -162,941.60 | -188,029.71 | -228,917.45 | -130,956.25 | -145,388.66 | -122,446.23 | -136,680.13 | -1,424,112.69 |
| INTEREST EXPENSE | | 7,504.61 | 12,644.80 | 26,441.90 | 32,214.15 | -1,646.33 | 16,730.07 | 15,199.57 | 12,000.00 | 12,222.72 | 133,311.49 |
| DEPRECIATION | 161,232.89 | 116,035.78 | 116,035.95 | 116,035.99 | 116,035.99 | 101,703.70 | 47,512.11 | 51,022.05 | 28,446.43 | 24,767.45 | 878,828.34 |
| OTHER (INCOME) EXPENSE** Note 1 | -18,089.64 | -18,089.64 | | -40,084.45 | -2,590.70 | -14,527.34 | -10,482.99 | -109.14 | -107,657.97 | 18,089.64 | -193,542.23 |
| OTHER ITEMS** Note 2 | 18,089.64 | 76,274.69 | 80,927.99 | 145,199.61 | 43,125.81 | 13,652.91 | 18,200.00 | 25,641.12 | 28,753.60 | 3,517.36 | 453,382.73 |
| **TOTAL INT. DEPR & OTHER ITEMS** | 161,232.89 | 181,725.44 | 209,608.74 | 247,593.05 | 188,785.25 | 99,182.94 | 71,959.19 | 91,753.60 | -38,457.94 | 58,597.17 | 1,271,980.33 |
| NET INCOME BEFORE TAXES | -408,024.06 | -330,062.12 | -123,233.55 | -410,534.65 | -376,814.96 | -328,100.39 | -202,915.44 | -237,142.26 | -83,988.29 | -195,277.30 | -2,696,093.02 |
| FEDERAL INCOME TAXES | | | | | | | | | | | 0.00 |
| **NET INCOME (LOSS) (MOR-6)** | ($408,024.06) | ($330,062.12) | ($123,233.55) | ($410,534.65) | ($376,814.96) | ($328,100.39) | ($202,915.44) | ($237,142.26) | ($83,988.29) | ($195,277.30) | ($2,696,093.02) |

MOR-6

*Accrual Accounting Required, Otherwise Footnote with Explanation.*

*\* Footnote Mandatory*

*\* \* Unusual and/or infrequent item(s) outside the ordinary course of business require footnote.*

Revised 07/01/98

Note 1: Gain on disposition of truck (insurance settlement) on 1,24.20, Gain on disposition of Casper assets (3.31.20 & 5.31.20 & 6.30.20)
Note 1: Other Income + Payroll Retention Credit of $107,494.71 and foreign currency exchange gain of $163.26
Note 2: Reorganization expenses: legal ($45,000), travel ($5,274.69) & shipping/relocation ($25,000) = $76,274.69 + Jan 20
Note 2: Reorganization expenses: legal ($54,081.50), travel ($9,096.49) & shipping/relocation ($17,750) = $80,927.99+ Feb 20
Note 2: Reorganization expenses: legal ($133,550.55), travel ($3,495.38) shipping/relocation ($8,343.67) & contract labor ($1,810)= $145,199.61+ Mar 20
Note 2: Reorganization expenses: legal ($39,050.81), shipping/relocation ($4,075) = $43,125.81+ Apr 20
Note 2: Reorganization expenses: legal ($10,068.64), US Trustee Fees ($3,584.27) - May 20
Note 2: Reorganization expenses: legal ($15,000), US Trustee Fees ($3,200) - June 20
Note 2: Reorganization expenses (accrued): legal ($10,000), US Trustee Fees ($8,200) - July 20
Note 2: Reorganization expenses (accrued): legal ($10,000), US Trustee Fees ($2,141.12), Appraisal Fees ($13,500) - July 20
Note 2: Reorganization expenses (accrued): legal ($25,000), US Trustee Fees ($1,205.09), Appraisal Fees + Travel ($540), Immigration Fees ($220.81), Inspection Fees ($1727.70) + August 20
Note 2: Reorganization expenses (accrued): legal ($20,000), US Trustee Fees ($1,607) - September 20

CASE NAME:    Newsco International Energy Services USA Inc.
CASE NUMBER:  19-36767

**MOR-7**

| CASH RECEIPTS AND DISBURSEMENTS | MONTH Dec-19 | MONTH Jan-20 | MONTH Feb-20 | MONTH Mar-20 | MONTH Apr-20 | MONTH May-20 | MONTH Jun-20 | MONTH Jul-20 | MONTH Aug-20 | MONTH Sep-20 | FILING TO 9/30/2020 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1. CASH-BEGINNING OF MONTH | $14,787.01 | $129,489.06 | $206,741.02 | $51,842.54 | $451,007.19 | $472,359.10 | $210,294.24 | $138,552.94 | $40,500.08 | $78,750.77 | $14,787.01 |
| **RECEIPTS:** | | | | | | | | | | | |
| 2. CASH SALES | | | | | | | | | | | 0.00 |
| 3. COLLECTION OF ACCOUNTS RECEIVABLE | | 47,935.00 | 58,235.00 | 33,000.00 | 106,035.50 | | 29,870.00 | | | | 275,075.50 |
| 4. LOANS & ADVANCES (attach list) | 877,737.52 | 870,456.24 | 580,783.34 | 1,263,913.10 | 429,746.16 | 42,406.17 | 88,833.56 | 49,680.00 | 49,975.00 | 254,885.00 | 4,508,416.09 |
| 5. SALE OF ASSETS | | 18,089.64 | | 27,309.40 | 2,590.70 | 50,000.00 | 9,000.00 | | | | 106,989.74 |
| 6. OTHER (attach list) | 832.95 | 731.60 | 81,834.45 | 29,917.47 | 14.93 | 3,719.84 | | 24,652.87 | 114,784.95 | 2,850.74 | 259,339.80 |
| 7. TOTAL RECEIPTS | 878,570.47 | 937,212.48 | 720,852.79 | 1,354,139.97 | 538,387.29 | 96,126.01 | 127,703.56 | 74,332.87 | 164,759.95 | 257,735.74 | 5,149,821.13 |
| Withdrawal/Contribution by Individual Debtor MFR-2* | | | | | | | | | | | 0.00 |
| **DISBURSEMENTS:** | | | | | | | | | | | |
| 7. NET PAYROLL | 293,537.27 | 174,745.90 | 194,513.58 | 198,144.50 | 145,879.03 | 83,849.84 | 78,072.41 | 48,419.45 | 48,156.06 | 50,899.81 | 1,316,217.85 |
| 8. PAYROLL TAXES PAID | 94,272.91 | 80,876.66 | 85,334.10 | 86,616.57 | 61,668.27 | 31,884.32 | 27,918.66 | 16,351.32 | 15,238.51 | 20,518.89 | 520,680.21 |
| 9. SALES, USE, & OTHER TAXES PAID | | | 51.00 | | 82.50 | | | | | | 133.50 |
| 10. SECURED/RENTAL LEASES | 12,933.87 | 42,846.72 | 17,465.21 | 18,121.65 | 13,744.71 | 23,889.91 | 15,485.00 | 15,450.00 | 15,450.00 | 15,450.00 | 190,837.07 |
| 11. UTILITIES & TELEPHONE | | 4,371.69 | 1,899.79 | 4,442.93 | 2,074.40 | 1,743.35 | 1,640.01 | 1,674.21 | 2,936.62 | 2,764.61 | 23,547.61 |
| 12. INSURANCE | 9,904.08 | 26,721.00 | 18,320.04 | 38,312.54 | 25,643.06 | 18,312.54 | 16,894.90 | 8,408.46 | 1,687.95 | | 164,204.57 |
| 13. INVENTORY PURCHASES | | 25,435.71 | 12,392.02 | 16,286.87 | | | | | 879.86 | | 54,994.46 |
| 14. VEHICLE EXPENSES | | | | | | | 120.00 | 240.00 | | | 360.00 |
| 15. TRAVEL & ENTERTAINMENT | 362.30 | 5,307.87 | 8,821.48 | | | | | | 120.00 | 150.00 | 14,761.65 |
| 16. REPAIRS, MAINTENANCE & SUPPLIES | 649.49 | 90.10 | 221.96 | 1,116.48 | 3,013.26 | 790.62 | | 228.01 | 159.41 | 515.92 | 6,679.37 |
| 17. ADMINISTRATIVE & SELLING | 1,717.00 | 3,535.36 | 711.04 | 544.48 | 391.01 | 949.65 | 875.21 | 490.41 | 740.95 | | 10,060.99 |
| 18. OTHER (attach list) | 350,091.50 | 402,489.51 | 531,146.05 | 506,353.66 | 221,494.53 | 138,238.19 | 58,438.67 | 34,332.16 | 33,629.09 | 60,511.80 | 2,427,125.16 |
| TOTAL DISBURSEMENTS FROM OPERATIONS | 763,868.42 | 856,420.52 | 870,876.27 | 869,939.68 | 473,908.27 | 299,740.92 | 199,444.86 | 125,594.02 | 118,998.45 | 150,811.03 | 4,729,602.44 |
| 19. PROFESSIONAL FEES | | 3,540.00 | | 47,880.90 | 14,410.00 | 58,449.95 | | 36,045.00 | 7,290.00 | 10,000.00 | 177,615.85 |
| 20. U.S. TRUSTEE FEES | | | 4,875.00 | | 26,907.11 | | | 10,746.71 | | | 42,528.82 |
| 21. OTHER REORGANIZATION EXPENSES (attach list) | | | | 37,154.74 | 1,810.00 | | | | 220.81 | | 39,185.55 |
| TOTAL DISBURSEMENTS** | 763,868.42 | 859,960.52 | 875,751.27 | 954,975.32 | 517,035.38 | 358,190.87 | 199,444.86 | 172,385.73 | 126,509.26 | 160,811.03 | 4,988,932.66 |
| 22. NET CASH FLOW | 114,702.05 | 77,251.96 | -154,898.48 | 399,164.65 | 21,351.91 | -262,064.86 | -71,741.30 | -98,052.86 | 38,250.69 | 96,924.71 | 160,888.47 |
| 23. CASH-END OF MONTH (1+22) | 129,489.06 | 206,741.02 | 51,842.54 | 451,007.19 | 472,359.10 | 210,294.24 | 138,552.94 | 40,500.08 | 78,750.77 | 175,675.48 | 175,675.48 |

* Applies to Individual debtors only
**Numbers for the current month should balance (match)
   RECEIPTS and CHECKS/OTHER DISBURSEMENTS lines on MOR-8

Revised 07/01/98

Legal:M69WA24699 4850b2048e2148.v1-(21/20

CASE NAME: Newsco International Energy Services USA Inc.
CASE NUMBER: 19-36767

| RECEIPTS: | Dec-19 | Jan-20 | Feb-20 | Mar-20 | Apr-20 | May-20 | Jun-20 | Jul-20 | Aug-20 | Sep-20 | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **4. LOANS & ADVANCES** | | | | | | | | | | | |
| SouthStar - Funding Advance | 180,000.00 | 448,407.30 | 38,075.00 | 130,407.50 | 219,833.17 | | | | | | 1,016,722.97 |
| SouthStar - Funding Advance | 145,072.49 | 33,917.31 | 157,820.00 | 138,109.31 | 70,450.51 | | | | | | 545,369.62 |
| SouthStar - Funding Advance | 497,992.96 | 267,840.79 | 97,647.76 | 125,000.00 | 139,462.48 | | | | | | 1,127,943.99 |
| SouthStar - Funding Advance | 54,672.07 | 120,290.84 | 138,618.50 | 67,146.09 | | | | | | | 380,727.50 |
| SouthStar - Funding Advance | | | 45,154.80 | 719,323.70 | | | | | | | 764,478.50 |
| SouthStar - Funding Advance | | 103,467.28 | 75,302.00 | | | | | | | | 178,769.28 |
| SouthStar - Funding Reserve | | | | | | 26,680.32 | 60,626.27 | 49,680.00 | 49,975.00 | 254,885.00 | 441,846.59 |
| SouthStar - Funding Reserve | | | | 8,624.50 | | 15,725.85 | | | | | 24,350.35 |
| TOTAL | 877,737.52 | 870,456.24 | 580,783.34 | 1,263,913.10 | 429,746.16 | 42,406.17 | 60,626.27 | 49,680.00 | 49,975.00 | 254,885.00 | 4,480,208.80 |
| **4. OTHER** | | | | | | | | | | | |
| Utilities - Refund | 832.95 | | | | 14.93 | | | | | | 847.88 |
| AMEX - Refund | | 731.60 | | | | | | | | | 731.60 |
| Cobra - Health Benefits (Former Employees) | | | 5,120.04 | 3,366.84 | | 2,035.49 | 5,568.55 | 4,886.23 | 2,850.74 | 2,850.74 | 26,678.63 |
| Insurance Refund | | | | | | 1,485.00 | 22,416.00 | | | | 23,901.00 |
| Equipment Rental - Refund - Baker Hughes/SLB | | | 76,010.00 | 2,988.13 | | | | 18,922.50 | | | 97,920.63 |
| Security Deposit Refund | | | | 23,562.50 | | | 222.74 | | | | 23,785.24 |
| State Tax Refund | | | 704.41 | | | | | | 1,676.24 | | 2,380.65 |
| Cell Phones | | | | | | | | 735.00 | | | 735.00 |
| IRS - Payroll Retention Credit - Q2 2020 | | | | | | | | | 107,494.71 | | 107,494.71 |
| Sale of inventory parts | | | | | | | | | 2,600.00 | | 2,600.00 |
| Foreign Currency Gain (CAD) | | | | | | 199.35 | | 109.14 | 163.26 | | 471.75 |
| TOTAL OTHER RECEIPTS | 878,570.47 | 871,187.84 | 662,617.79 | 1,293,830.57 | 429,761.09 | 46,126.01 | 88,833.56 | 74,332.87 | 164,759.95 | 257,735.74 | 4,767,755.89 |
| **21. OTHER (attach list)** | | | | | | | | | | | |
| Settlement - AP - Pre-Petition | 170,000.00 | 293,507.68 | | | | | | | | | 463,507.68 |
| Equipment Rentals | | | 81,897.44 | 154,210.47 | 54,388.61 | 85,326.49 | 33,779.67 | 13,000.00 | 22,000.00 | 28,996.02 | 473,598.70 |
| Equipment Rentals - RSS Tool | | | 260,000.00 | 147,438.22 | | | | | | | 407,438.22 |
| Postage & Shipping | | 90.72 | 155.30 | 17.99 | 30.09 | 1,343.17 | 18.17 | 268.60 | 257.10 | | 2,181.14 |
| Subscriptions | | 325.13 | 325.13 | 325.13 | 5,495.23 | 325.13 | 3,828.31 | 1,107.55 | 628.17 | 32.42 | 12,392.20 |
| Trucking | | 5,024.69 | 1,924.00 | 5,908.00 | | 2,170.00 | | 250.00 | 750.00 | | 16,026.69 |
| Bank Fees | 1,600.00 | 1,703.97 | 2,291.65 | 787.73 | 851.54 | 716.49 | 806.27 | 655.56 | 492.05 | 554.60 | 10,459.86 |
| Cell Phones | 725.74 | 1,818.69 | | 830.03 | 787.73 | | | 416.53 | 415.06 | | 4,993.78 |
| Contractors | 102,571.97 | 30,969.32 | 126,421.33 | 151,893.27 | 98,922.23 | 20,063.09 | 975.00 | | 601.42 | 1,150.00 | 533,567.63 |
| Employee Benefits | 41,201.30 | 53,401.02 | 40,074.22 | 32,128.13 | 41,526.53 | 17,352.39 | 17,931.25 | 17,944.17 | 7,795.54 | 17,089.01 | 286,443.56 |
| HSA Contributions | 1,660.65 | 1,640.00 | 861.30 | 1,799.89 | 1,424.37 | 759.75 | | | 689.75 | 689.75 | 11,315.21 |
| Shared Services | 32,731.84 | 27,998.29 | 17,195.68 | 10,778.68 | 17,195.68 | 10,181.68 | 1,100.00 | 689.75 | 689.75 | 12,000.00 | 128,081.85 |
| Uniforms | | | | 236.12 | | | | | | | 236.12 |
| Prepaid Equipment Rental - Baker Hughes | | 76,010.00 | | | | | | | | | 76,010.00 |
| Business Registration Fees | | | | | | | 872.52 | | | | 872.52 |
| TOTAL OTHER DISBURSEMENTS | 350,491.50 | 492,489.51 | 531,146.05 | 506,353.66 | 221,494.53 | 138,238.19 | 58,438.67 | 34,332.16 | 33,629.09 | 60,511.80 | 2,427,125.16 |
| **21. OTHER REORGANIZATION EXPENSES (attach list)** | | | | | | | | | | | |
| Expedited Logistics and Freight Svc LLC | | | | 34,325.00 | | | | | | | 34,325.00 |
| Relocation - contract labor | | | | | 1,810.00 | | | | | | 1,810.00 |
| Relocation - travel (meals & lodging) | | | | 2,829.74 | | | | | 220.81 | | 3,050.55 |
| TOTAL OTHER REORGANIZATION EXPENSES | 0.00 | 0.00 | 0.00 | 37,154.74 | 1,810.00 | 0.00 | 0.00 | 0.00 | 220.81 | 0.00 | 39,185.55 |

CASE NAME:   Newsco International Energy Services USA Inc.
CASE NUMBER:  19-36767

## CASH ACCOUNT RECONCILIATION
### MONTH OF   Sep-20

| BANK NAME: | Wells Fargo | Wells Fargo | Wells Fargo | Wells Fargo | Wells Fargo | Wells Fargo | |
|---|---|---|---|---|---|---|---|
| ACCOUNT NUMBER | 8435786663 | 8435786887 | 8435786895 | 6503401199 | 8504389518 | 7271337235 | |
| ACCOUNT TYPE | OPERATING | PAYROLL | TAX | CASPER FUNDS | CONROE FUNDS | HOUSTON FUNDS | TOTAL |
| BANK BALANCE - August 1, 2020 | 78,531.88 | 218,89 | 0.00 | 0.00 | 0.00 | 0.00 | $78,750.77 |
| DEPOSITS IN TRANSIT | 257,735.74 | 78,200.00 | 62.20 | | | | $335,997.94 |
| OUTSTANDING CHECKS | 165,135.89 | 73,875.14 | 62.20 | | | | $239,073.23 |
| ADJUSTED BANK BALANCE | $171,131.73 | $4,543.75 | $0.00 | $0.09 | $0.00 | $0.00 | $175,675.48 |
| BEGINNING CASH - PER BOOKS | 78,531.88 | 218,89 | 0.00 | 0.00 | 0.00 | 0.00 | $78,750.77 |
| RECEIPTS * | 257,735.74 | | 62.20 | 0.00 | 0.00 | 0.00 | $257,735.74 |
| TRANSFERS BETWEEN ACCOUNTS | -78,262.20 | 78,200.00 | | | | | $0.00 |
| WITHDRAWAL] OR  CONTRIBUTION BY INDIVIDUAL       DEBTOR   MFR-2 | | | | | | | $0.00 |
| CHECKS/OTHER DISBURSEMENTS* | 86,873.69 | 73,875.14 | 62.20 | | | 0.00 | $160,811.03 |
| ENDING CASH - PER BOOKS | $171,131.73 | $4,543.75 | $0.00 | $0.00 | $0.00 | $0.00 | $175,675.48 |

*Numbers should balance (match) TOTAL RECEIPTS and
TOTAL DISBURSEMENTS lines on MOR-7
*The Debtor does not have a bank account.

**MOR-8**

*Revised 07/01/98*

CASE NAME:    Newsco International Energy Services USA Inc.
CASE NUMBER:    19-36767

## PAYMENTS TO INSIDERS AND PROFESSIONALS

Of the total disbursements shown for the month, list the amount paid to insiders (as defined in Section 101(31)(A)-(F) of the U.S. Bankruptcy Code) and the professionals.
Also, for insiders, identify the type of compensation paid (e.g., salary, commission, bonus, etc.) Attach additional pages as necessary.

| INSIDERS: NAME/COMP  TYPE | MONTH 19-Dec | MONTH 20-Jan | MONTH 20-Feb | MONTH 20-Mar | MONTH 20-Apr | MONTH 20-May | MONTH 20-Jun | MONTH 20-Jul | MONTH 20-Aug | MONTH 20-Sep |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Corey Campbell – Net Wages | 8,961.67 | 14,990.43 | 11,364.78 | 15,014.79 | 9,216.14 | 8,144.18 | 7,253.65 | 9,329.92 | 7,567.90 | 6,059.86 |
| 2. Biswajit Mishra – Net Wages | 5,080.74 | 15,257.55 | 11,876.17 | 10,313.56 | 8,531.86 | 8,242.48 | 6,795.73 | 9,470.22 | 6,370.02 | 6,313.48 |
| 3. Billy Melville – Net Wages | 5,120.97 | 15,376.62 | 10,251.08 | 11,651.08 | 8,611.24 | 8,321.86 | 6,875.11 | 9,589.29 | 6,392.86 | 6,392.86 |
| 4. | | | | | | | | | | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL INSIDERS  (MOR-1) | $19,163.38 | $45,624.60 | $33,492.03 | $36,979.43 | $26,359.24 | $24,708.52 | $20,924.49 | $28,389.43 | $20,330.78 | $18,766.20 |

| PROFESSIONALS | MONTH 19-Dec | MONTH 20-Jan | MONTH 20-Feb | MONTH 20-Mar | MONTH 20-Apr | MONTH 20-May | MONTH 20-Jun | MONTH 20-Jul | MONTH 20-Aug | MONTH 20-Sep |
|---|---|---|---|---|---|---|---|---|---|---|
| 1. Clark Hill Strasburger | | | | 43,933.90 | 10,000.00 | 58,449.95 | | 25,000.00 | | 10,000.00 |
| 2. Renshaw PC | | | | 3,947.00 | | | | | | |
| 3. Skagen Conetto & Associates | | | | | | | | 4,295.00 | | |
| 4. Gordon Brothers | | | | | | | | 6,750.00 | 7,290.00 | |
| 5. | | | | | | | | | | |
| 6. | | | | | | | | | | |
| TOTAL PROFESSIONALS  (MOR-1) | $0.00 | $0.00 | $0.00 | $47,880.90 | $10,000.00 | $58,449.95 | $0.00 | $36,045.00 | $7,290.00 | $10,000.00 |

MOR-9

**Newsco Int'l Energy Services USA Inc.**
**Vendor Aged Summary As at 10/31/2020 - Post Petition Liabilities**

| Vendor | Amount |
| --- | --- |
| B&T Rentals | 32,945.80 |
| Big Boy Haulers Inc. | 1,378.25 |
| Big H Transport LLC | 10,252.00 |
| Coverall North America, Inc. | 243.56 |
| DISA Global Solutions | 1,228.86 |
| Discovery Benefits | 629.00 |
| Expedited Logistics and Freight Svc LLC | 6,425.00 |
| FEDEX | 112.13 |
| Global Edge 2020 Inc | 3,415.55 |
| Gordon Technologies, Inc. | 17,959.03 |
| Gorman Uniform | 469.94 |
| HWM Properties, LLc | 2,850.00 |
| Magnetic Variation Services, LLC | 7,400.00 |
| MM Fluid Solutions LLC | 4,956.25 |
| Newsco Energy Services - Calgary | 38,961.68 |
| On Point Logistics LLC | 400.00 |
| Phoenix Technology Services | 198,834.68 |
| Skogen Cometto & Assoc | 4,050.00 |
| Sniper Drilling  IAE international | 62,968.88 |
| Telemetrix USA Inc | 18,090.57 |
| VOYA | 1,090.00 |
| Weatherford | 19,960.58 |
| AIRGAS | 1,264.18 |
| Black Hills Energy | 4,761.44 |
| Century Link Business Services | 1,831.43 |
| City of Casper | 112.47 |
| DeWitt Water System & Service | 54.38 |
| Hilltop Laundromat / Bubbles R Us | 394.01 |
| Rocky Mountain Power | 3,193.81 |
| Salt Creek Properties LLC (Eastland Development LLC) | 53,933.14 |
| **Total Vendor Balances as of 10.31.20** | **500,166.62** |
| | |
| **NM Tax & Revenue*** | **156,265.90** |
| | |
| **Total** | **656,432.52** |

| | |
| --- | --- |
| * Post filing tax | 137,511.60 |
| * Interest on post filing tax | 18,754.30 |
| | 156,265.90 |