THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| **NEWSCO INTERNATIONAL ENERGY** § | **Case No. 19-36767 (DRJ)** |
| **SERVICES USA, INC.** § | |
| § | **Chapter 11** |
| Debtor § | |

<u>**DEBTORS PLAN OF REORGANIZATION**</u>

DATED: November 19, 2020

Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

COUNSEL FOR DEBTOR

THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **In re:** § | |
| § | |
| **NEWSCO INTERNATIONAL ENERGY** § | **Case No. 19-36767 (DRJ)** |
| **SERVICES USA, INC.** § | |
| § | **Chapter 11** |
| **Debtor** § | |

## DEBTOR'S PLAN OF REORGANIZATION

**COMES NOW** Newsco International Energy Services USA, Inc. ("**Newsco USA**" or the "**Debtor**") as debtor-in-possession in this Bankruptcy Case and pursuant to Chapter 11, Title 11, United States Code (the "Bankruptcy Code") propose the following Plan of Reorganization dated November 19, 2020 (the "Plan").

DEFINITIONS AND USE OF TERMS

1.01   **Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a)   **Administrative Expense Claim** means an administrative expense or Claim described in 11 U.S.C. § 503, that arose on or after January 7, 2020 in this bankruptcy case and that is entitled to administrative priority under to 11 U.S.C. § 507(a)(1), including but not limited to Claims for compensation of professionals made pursuant to 11 U.S.C. §§ 330 and 331, and all fees and charges assessed against the Debtors and the Debtors' property under 28 U.S.C. § 1930.

(b)   **Allowed Claim** means either: (i) a Claim against the Debtor or its property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtor or its property that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

(c)   **Bankruptcy Case** means the above-captioned Chapter 11 case pending in this Bankruptcy Court.

(d)   **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(e)   **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other Court that may have jurisdiction with respect to Debtor's Bankruptcy Case.

(f)     **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Bankruptcy Case.

(g)     **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed. The Bar Date for government agencies' Claims was June 17, 2020 and the Bar Date for all other Claims was April 22, 2020.

(h)     **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(i)     **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(j)     **Claimant** means any Person or entity having or asserting a Claim in the Bankruptcy Case.

(k)     **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles V and VI of this Plan.

(l)     **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(m)     **Confirmation Date** means the date on which the Confirmation Order is entered.

(n)     **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(o)     **Contested Claim** means a Claim against the Debtor or its property that either (a) is listed in the Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court, unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(p)     **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

(q)     **Creditors' Committee** means the official committee of unsecured creditors appointed by the United States Trustee.

      (r)      **Creditors' Trust** means the Trust created pursuant to the Plan.

      (s)      **Cure Claim** means a Claim in the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract that has been assumed by the Debtor pursuant to 11 U.S.C. § 365.

      (t)      **Debtor** means Newsco International Energy Services USA, Inc, which is the debtor-in-possession in the Bankruptcy Case.

      (u)      **Effective Date** means the third Business Day after the entry of the Confirmation Order unless a stay of the Confirmation Order is entered, in which case the Effective Date means the first business day after the Confirmation Order becomes a Final Order.

      (v)      **Estate** means the estate of the Debtor created pursuant to 11 U.S.C. § 541.

      (w)      **Equity Interests** means all the interests in the equity of the Debtor, and all rights associated therewith, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

      (x)      **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

      (y)      **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

      (z)      **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Reorganized Debtor (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstate the maturity of such Claim as such maturity existed before such default, (iii) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such Claim receives, on account of such Claim, cash equal to the amount of such Allowed Claim.

      (aa)      **Insider** has the meaning in § 101(31) of the Code.

      (bb)      **Lien** shall mean a contractual or statutory lien against or security interest in an interest of the Debtor in real or personal property.

      (cc)      **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation

of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

(dd)    **Operating Expense Administrative Claims** means all claims against the Debtor arising after the commencement of this case which are entitled to status of an administrative claim under section 503 of the Bankruptcy Code except Professional Fee Claims.

(ee)    **Petition Date** means December 4, 2019 and is the date on which the Debtor filed its petition for relief, commencing the Bankruptcy Case.

(ff)    **Plan** means this Plan of Reorganization, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

(gg)    **Plan Capital Contribution** means the capital contribution to be made by Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd, or its designee.

(hh)    **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

(ii)    **Professional Fee Claim** means the claim for fees and expenses of a professional retained by the Debtor or the Creditors' Committee with court approval.

(jj)    **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

(kk)    **Reorganized Debtor** refers to the new entity that emerges following Confirmation of the Plan, which shall be an entity with the same name and entity name as previously.

(ll)    **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

(mm)    **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

(nn)    **Unsecured Claim** means a Claim that is not a Secured Claim.

(oo)    **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

1.02    **Number and Gender of Terms**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

1.03    **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

1.04        **Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05        **Computation of Time**. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## OVERVIEW OF THE PLAN

2.01        On the Effective Date of the Plan, which Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd or its designee ("Sawafi") will contribute capital to the Debtor in the amount of $2,107,065 (the "**Plan Capital Contribution**"). The Debtor will cancel all existing share of stock and issue new shares to Sawafi, so that Sawafi will own 100% of the Equity in the Debtor. The Plan Capital Contribution will be used to pay Administrative Expenses, Cure Amounts under Executory Contracts, Priority Tax Claims, and to establish a reserve for wind down and transition expenses. The balance of the Plan Capital Contribution will be transferred to the Creditors' Trust to administer payments of pre-petition unsecured claims against the Debtor, as provided in the Plan. The effect of the confirmation of the Plan will be to discharge the Debtor from all Claims except as provided under the Plan.

## ARTICLE III
## MEANS FOR IMPLEMENTATION OF THE PLAN

3.01        On the Effective Date of the Plan, Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd, a Saudi Arabia limited liability company or its designee ("Sawafi") will acquire 100% of the equity interest in the Debtor for $2,107,065 in cash (the "Purchase Price"). The Debtor will use the funds to fund the Plan as detailed below.

## ARTICLE IV
## THE CREDITORS'S TRUST

4.01        With the Plan Capital Contribution, the Debtor will pay, or establish a reserve for payment, the Administrative Claims, the Priority Tax Claims, the Secured Equipment Claims, and the Cure Amounts, and establish a reserve for to resolve any disputed Administrative Claims and to assist the Trustee of the Creditors' Trust. The Debtor will transfer the balance of the funds to a Creditors Trust to be established by the Creditors' Committee.

4.02        The Creditors' Trust shall be administered by a trustee (the "**Trustee**") who shall serve until all assets of the Creditors' Trust have been liquidated and proceeds distributed under the terms of the Plan and the Creditors' Trust is terminated or until the Trustee resigns or is removed.

4.03        Except as set forth below, the Trustee will be authorized take all actions necessary to administer the Creditors' Trust, to protect the assets and enforce or compromise the rights of the Creditors' Trust, to retain professionals, to object to claims, to make distributions to the creditors under the terms of the Plan, and to seek the entry of an order closing the bankruptcy case upon substantial consummation of the Plan

**DEBTOR'S PLAN OF REORGANIZATION        Page 5**

4.04    The Trustee's compensation shall be 5% of all disbursements from the Trust.

4.05    The Trustee shall post a bond in the amount of the maximum estimated balance of the trust accounts. The cost of the bond shall be borne by the assets of the Trust

4.06    The initial Trustee of the Creditors' Trust will be the person designated in the order confirming the Plan.

4.07    A trust committee (the "**Trust Committee**") will be formed for the purpose of:

1. determining the amount of the Trustee's bond;
2. selecting a successor trustee in the event the trustee resigns or is terminated;
3. selecting committee members to replace members who resign or are;
4. approving the commencement of any actions by the Creditors' Trust;
5. approving filing the objection to any claim;
6. approving any compromise of claims by the trustee;
7. terminating the Creditors Trust after the final distribution to creditors is made.

4.08    There shall be at least three initial members of the Trust Committee to be selected by the Creditors' Committee. All Trust Committee decisions will be made by majority vote. Any member can be removed and replaced by vote of two members. Members of the Trust Committee will not be compensated for their service on the Trust Committee but may obtain reimbursement for any out of pocket expenses.

4.09    The Debtor will file the U.S. Trustee's report and pay the quarterly fee for the 4th quarter 2020. The Creditors' Trust will be responsible for filing US Trustee's reports and paying quarterly fees after that until the case is closed.

4.10    The Trust shall indemnify and hold harmless any person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was the Trustee, or an employee of the Trust, or an agent, attorney, accountant, or other professional for the Trustee, against all costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit, or proceeding, or the defense or settlement of any claim, issue, or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of willful misconduct or gross negligence.  Costs or expense incurred by any such entity in defending any such action, suit, or proceeding may be paid by the Trust in advance of the institution or final disposition of such action, suit, or proceeding, if authorized by the Trustee or, if such action, suit or proceeding is against the Trustee, by the Trust Committee.

4.11    The Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Plan Trustee shall operate and maintain the Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service

4.12     The Creditors' Trust Agreement, when executed will become effective on the Effective Date of the Plan.

## ARTICLE V
## ADMINISTRATIVE EXPENSE CLAIMS

5.01     Administrative Claims generally consist of expenses incurred during the chapter 11 case in administering the bankruptcy case and in operating the Debtor's business. Administrative claims generally include claims for taxes and for providing goods and services to the Debtor after the commencement of the case and which are allowable under §503 of the Code ("**Operating Expense Administrative Claims**"), the fees of professionals employed by the Debtor and the Creditors Committee in the bankruptcy case approved by the Bankruptcy Court ("**Professional Fees**"), and the United States Trustee's Fees ("**U.S. Trustee's Fees**").

5.02     On the Effective Date of the Plan, the Operating Expense Administrative Claims listed on **Exhibit B** to the Disclosure Statement shall be paid in the amount listed there, less any payments made on such claims after October 31, 2020. No other Vendor Administrative Claim arising on or before October 31, 2020 will be paid under the Plan unless otherwise agreed by the Debtor or upon the entry of an order of the Bankruptcy Court.

5.03     The holders of any Operating Expense Administrative Claims arising on or before October 31, 2020 which are not on Exhibit B must have filed an Application for Payment of Administrative Claim at least five days before the commencement of the hearing on the confirmation of this Plan or such claims will not be paid under this Plan. If an Application was timely filed, the Debtor may either pay such claim or reserve funds for payment of such claim and file an objection to such claim. In that case, such claim will be paid pursuant to any settlement agreement or the entry of an order of the Court.

5.04     Any Vendor Administrative Claim arising after October 31, 2020 will be paid upon the later of the Effective Date of the Plan or when such claim is due. Any vendor who provides goods or services to the Debtor after October 31, 2020 must submit an invoice to the Debtor within 30 days after providing such goods or services. If a vendor does not timely submit an invoice, the vendor will not be paid. If the Debtor disputes any Operating Expense Administrative Claims arising after October 31, 2020, the Debtor will file an objection to such claim within 30 days of receipt of such claim. Otherwise the Debtor will pay such claim within 30 days of Debtor's receipt of such claim.

5.05     All Professional Fees will be paid upon the later of the Effective Date of the Plan and the date the Professional Fees are allowed by the Court.

5.06     The United States Trustee's Fees for the 4th quarter 2020 will be paid when due.

## ARTICLE VI
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

6.01     **Class** 1 Claims - Allowed Priority Tax Claims

Class 1 Claims consist of Allowed Claims of governmental authorities for taxes that are entitled to a priority of payment under §507 of the Bankruptcy Code.

The Allowed Priority Claims will be paid in full upon the Effective Date of the Plan.

The rights of Class 1 creditors are unimpaired, and so they are not entitled to vote on the Plan.

6.02         **Class 2 - Allowed Unsecured Claims.**

Class 2 consists of the Allowed Claims of all creditors other than those in Classes 1.

Under the Plan, the Debtor will pay, or reserve for payment, out of the proceeds of the Plan Capital Contribution, the Administrative Claims and the Class 1 claims, and establish a reserve to resolve any disputed Administrative Claims and to assist the Trustee of the Creditors' Trust. The Debtor will transfer the balance of the funds to the Liquidating Trust for distribution to the holders of Allowed Claims in Class 2 on a pro rata basis.

The rights of Class 2 creditors are impaired and so they are entitled to vote on the Plan.

6.03         **Class 3 Interests – Allowed Equity Interests in the Debtor**.

Class 3 consists of all of the existing equity interests in the Debtor. The Class 3 Interests shall be terminated on the Effective Date of the Plan.

# ARTICLE VII
# ASSUMPTION AND REJECTION OF LEASES AND EXECUTORY CONTRACTS

The Debtor will assume the executory contracts and unexpired leases ("Executory Contracts") as set forth in the Order confirming this Plan. If the Debtor assumes an Executory Contract, the Debtor will pay the Cure Amounts scheduled in he Disclosure Statement to the counterparty to the Contract on the Effective Date of the Plan unless such counterparty timely filed an objection to the Plan. If such an objection was timely filed, the Debtor will either pay the Cure Amount determined by the Court or will reject the Executory Contract.

All Executory Contracts that are not expressly assumed in the order confirming the Plan shall be deemed to be rejected, and counterparties to any Executory Contracts that were not rejected prior to the confirmation of the Plan shall have 30 days from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection.

# ARTICLE VIII
# CLAIMS ALLOWANCE PROCEDURES

8.01         **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or its property of whatever character, whether contingent or liquidated, or whether or not allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to ensure that Claimants

will receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code.

8.02      **Allowed Claims**. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

8.03      **Amount of Claims**. If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled shall control, unless the Creditor files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim. If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control, unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Claim for which a proof of claim is filed, or to a scheduled Claim, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise. Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed.

8.04      **Allowance of Post-Petition Interest, Fees and Costs**. A Claim shall not be entitled to post-petition interest, fees or costs.

8.05      **Objections to Claims**. The Creditors' Trust may file an objection to any claim within 90 days after the Effective Date of this Plan. All Contested Claims shall be litigated to Final Order; provided, however, that the Creditors' Trust may compromise and settle any Contested Claim, without approval of the Bankruptcy Court.

8.06      **Distributions on Contested Claims**. No distributions under this Plan shall be made to the holder of a Claim that is in dispute unless and until such Claim becomes an Allowed Claim. When and if a Contested Claim becomes an Allowed Claim, the Creditors' Trust shall at the next scheduled distribution under the Plan pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the Effective Date. If a Claim is disputed in whole or in part because either Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.

**ARTICLE IX**
**CAUSES OF ACTION**

9.01      **Article V Causes of Action**. All causes of action of the Debtor under Article V of Bankruptcy Code shall be transferred to the Creditors' Trust. The Creditors' Trust reserves all rights to pursue, in its sole discretion, any preferences or fraudulent transfers to the full extent allowed under the Bankruptcy Code and applicable state laws.

The Debtor disclosed payments made to creditors within 90 days of the commencement of this case in the schedules filed with the Court. Regardless of whether a transfer was disclosed in the schedules:

ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS WITHIN NINETY DAYS OF THE COMMENCEMENT OF THIS CASE (OR WITHING ONE YEAR FOR INSIDERS) ARE HEREBY PUT ON NOTICE THAT THERE MAY BE CLAIMS AGAINST THEM AND ALL SUCH CLAIMS ARE PRESERVED AND TRANSFERRED TO THE CREDITORS' TRUST.

ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS WITHIN UP TO FOUR YEARS BEFORE THE COMMENCEMENT OF THIS CASE FOR LESS THAN REASONABLY EQUIVALENT VALUE ARE HEREBY PUT ON NOTICE THAT THEY MAY HAVE CLAIMS AGAINST THEM AND ALL SUCH CLAIMS ARE PRESERVED AND TRANSFERRED TO THE CREDITORS' TRUST.

THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF DEBTOR'S CHAPTER V CAUSES OF ACTION.

9.02        **Other Potential Litigation**. In addition to preferences and fraudulent transfer claims, the Debtor may also have claims and causes of action against third parties and creditors arising prior to the Petition Date. These causes of action will automatically be transferred to the Creditors' Trust and may be prosecuted by the Creditors' Trust or enforced by way of setoff against Claims filed against the bankruptcy estate. The Creditors' Trust has sole discretion to prosecute any such litigation and to object to any Claims.

## ARTICLE X
## EFFECT OF CONFIRMATION

10.01        **Vesting of Property**. As of the Effective Date, the Debtor shall be revested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan.

10.02        **Plan Binding**. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor, the Debtor's Creditors, and the holder of the Equity Interest in the Debtor, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

10.03        **Reliance on Other Parties**. In connection with the Plan, the Debtor and its members, representatives, attorneys, accountant, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall presumptively establish good faith.

10.04        **Discharge**. Confirmation of the Plan shall discharge the Debtor of all its pre-Confirmation debts.

10.05        **Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or its assets; (b) from enforcing, attaching,

collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or its assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

## ARTICLE XI
## MODIFICATION OF THE PLAN

11.01     **Post-Confirmation Modification**. The Debtor, as proponent of the Plan, may modify it at any time after Confirmation but before the Bankruptcy Case is fully administered, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, that the Bankruptcy Court, after notice and hearing, confirms such modified Plan under § 1129, and that the circumstances warrant such modification.

11.02     **Deemed Acceptance or Rejection**. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court such holder changes its previous acceptance or rejection.

## ARTICLE XII
## POST CONFIRMATION MATTERS

12.01     **Application for Final Decree**. The Creditors' Trust shall file an application for final decree when the Bankruptcy Case.

12.02     **U.S. Trustee**.

    (a)     **Fees**. The Debtor shall continue to pay U.S. Trustee fees through the 4th quarter of 2020. The Creditors Trust shall pay all U.S. Trustees incurred after that until the Bankruptcy Case is closed.

    (b)     **Reports**. The Debtor shall file post-confirmation reports in the form prescribed by the United States Trustee through the 4th quarter of 2020 and the Creditors Trust shall file such reports until the Bankruptcy Case is closed.

## ARTICLE XIII
## RETENTION OF JURISDICTION

13.01     **Jurisdiction over Matters**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to

the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

## ARTICLE XIV
## MISCELLANEOUS

14.01    **Request for Relief under 11 U.S.C. § 1129(b) – "Cramdown."** In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby, request the Court to confirm the Plan in accordance with 11 U.S.C. § 1129(b). Any and all payments pursuant to this Plan, either pre- or post-confirmation shall be considered "new value" for purposes of that section.

14.02    **Pre-Confirmation Amendment, Withdrawal/Revocation**. The Debtor, as the proponent of the Plan, reserves the right to amend or withdraw/revoke the Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

14.03    **Entire Agreement**. The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtor and its Creditors relating to the subject matter hereof and supersede all prior discussions and documents.

14.04    **Payments**.

(a)    **Delivery**. Any payments or distributions made by the Debtor or the Creditors' Trust pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Debtor and the Creditors' Trust with a change of address. All Claims for undeliverable distributions shall be made in writing within one-hundred eighty (180) days after the date of such distribution. After such date, all unclaimed property shall remain the property of the Creditors' Trust and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

(b)    **Voided Checks**. Checks issued by the Debtor or the Creditors' Trust in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Trustee of the Creditors' Trust by the holder of the Allowed Claim to whom such check originally was issued.

Any claim in respect of such a voided check must be made to the Creditors' Trustee in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Creditors' Trust.

14.05    **Governing Law**. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

Dated: November 19, 2020.

PLAN PROPONENT:

**NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**

By: *//Billy Melville*_____
Billy Melville
Chief Executive Officer

DRAFTED and APPROVED:

_____
Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

**COUNSEL FOR NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**