THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| **NEWSCO INTERNATIONAL ENERGY** § | Case No. 19-36767 (DRJ) |
| **SERVICES USA, INC.** § | |
| § | Chapter 11 |
| **Debtor** § | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

DATED: January 25, 2021

Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

COUNSEL FOR DEBTOR

THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: § | |
| § | |
| **NEWSCO INTERNATIONAL ENERGY** § | Case No. 19-36767 (DRJ) |
| **SERVICES USA, INC.** § | |
| § | Chapter 11 |
| **Debtor** § | |

## DEBTOR'S AMENDED PLAN OF REORGANIZATION

**COMES NOW** Newsco International Energy Services USA, Inc. ("**Newsco USA**" or the "**Debtor**") as debtor-in-possession in this Bankruptcy Case and pursuant to Chapter 11, Title 11, United States Code (the "**Bankruptcy Code**") propose the following Amended Plan of Reorganization dated January 25, 2021 (the "**Plan**").

DEFINITIONS AND USE OF TERMS

1.01        **Defined Terms**. Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this Section 1.01.

(a)        **Administrative Claim** means a Claim for costs and expenses of administration of the Bankruptcy Case that is Allowed under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including, without limitation: (a) any actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Professional Fee Claims and any other compensation for legal, financial, advisory, accounting, and other services and reimbursement of expenses Allowed by the Bankruptcy Court under sections 328, 330, 331 or 503(b) of the Bankruptcy Code to the extent incurred on or after the Petition Date and through the Effective Date; and (c) all fees and charges assessed against the Estate under section 1930, chapter 123, of title 28, United States Code.

(b)        **Allowed** means, with respect to any Claim, an Allowed Claim in a particular Class or category specified.

(c)        **Allowed Claim** means either: (i) a Claim against the Debtor or its property that is allowable under the Bankruptcy Code to the extent that a proof of claim, proof of interest, or request for payment was timely filed or, with leave of the Bankruptcy Court, was late filed and as to which no objection has been filed or, if an objection has been filed, is allowed by a Final Order, unless otherwise provided in this Plan, or (ii) a Claim against the Debtor or its property that is scheduled and not listed as disputed, contingent or unliquidated, and as to which Claim no objection has been filed or, if an objection is filed, is allowed by a Final Order.

(d)        **Approved Professional Fees** means the fees and expenses of Professionals approved for payment by orders of the Court.

(e) **Bankruptcy Case** means the above-captioned Chapter 11 case pending in this Bankruptcy Court.

(f) **Bankruptcy Code** means the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

(g) **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of Texas, Houston Division, or such other Court that may have jurisdiction with respect to Debtor's Bankruptcy Case.

(h) **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. § 2075, and the Local Rules of the Bankruptcy Court, as applicable from time to time to the Debtor's Bankruptcy Case.

(i) **Bar Date** means the dates subsequent to which proof of a pre-petition Claim against the Debtor may not timely be filed or, with respect to proofs of claims held by governmental agencies, the dates by which those must be filed. The Bar Date for government agencies' Claims was June 17, 2020 and the Bar Date for all other Claims was April 22, 2020.

(j) **Business Day** means a day that the office of the Clerk of the Bankruptcy Court is open for business as usual.

(k) **Claim** means (i) any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

(l) **Claimant** means any Person or entity having or asserting a Claim in the Bankruptcy Case.

(m) **Class** or **Classes** mean all of the holders of Claims or Equity Interests that the Debtor has designated pursuant to 11 U.S.C. § 1123(a)(1) as having substantially similar characteristics as described in Articles V and VI of this Plan.

(n) **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

(o) **Confirmation Date** means the date on which the Confirmation Order is entered.

(p) **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to 11 U.S.C. § 1129.

(q) **Contested Claim** means a Claim against the Debtor or its property that either (a) is listed in the Debtor's schedules of assets and liabilities as disputed, contingent or unliquidated; (b) is the subject of a pending action in a forum other than the Bankruptcy Court,

unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) has had or is subject to a pending objection or request for estimation filed by the Debtor or by any other party in interest in accordance with the Bankruptcy Code and the Bankruptcy Rules.

(r) **Creditor** shall have the meaning specified by 11 U.S.C. § 101(9) of the Bankruptcy Code.

(s) **Creditors' Committee** means the official committee of unsecured creditors appointed by the United States Trustee.

(t) **Creditors' Trust** means the Trust created pursuant to the Plan.

(u) **Cure Amount** means a Claim in the amount necessary to cure any default or arrearage, together with the amount necessary to compensate for damages suffered as a result of such default or arrearage, on an unexpired lease or executory contract that has been assumed by the Debtor pursuant to 11 U.S.C. § 365.

(v) **Debtor** means Newsco International Energy Services USA, Inc, which is the debtor-in-possession in the Bankruptcy Case.

(w) **Distribution Agent** means an individual or his/her successor, appointed by the Debtor prior to the Effective Date to act as distribution agent under this Plan.

(x) **Effective Date** means the first Business Day on which (a) the conditions specified in Article X of this Plan have been satisfied or waived in accordance with the terms of Article X, and (b) no stay of the Confirmation Order is in effect.

(y) **Estate** means the estate of the Debtor created pursuant to 11 U.S.C. § 541.

(z) **Equity Interests** means all common stock, preferred stock and all the other interests in the equity of the Debtor, and all rights associated therewith, whether or not transferable or fully vested, and all Claims arising from or relating to such Equity Interests, including but not limited to Claims for rescission.

(aa) **Executory Contract** means all contracts and leases to which the Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

(bb) **Final Order** means an order or judgment entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which the time to appeal has expired and as to which a stay pending appeal has not been granted.

(cc) **General Administrative Claim** means an Administrative Expense Claim other than Professional Fee Claims and Claims for fees and expenses under 28 U.S.C. § 1930(a).

(dd) **General Unsecured Claim** means an Unsecured Claim that is not entitled to priority under 11 U.S.C. § 507(a).

(ee) **Governmental Unit** is as defined in section 101(27) of the Bankruptcy Code.

(ff) **GUC Assets** means (i) the balance of the Plan Contribution remaining after payment of all Allowed Administrative Claims (including Allowed General Administrative Claims and Allowed Professional Fee Claims), Cure Amounts, Allowed Class 1 Claims and any other amounts required to be paid under the Plan (including any expenses of the Creditors' Trust), and (ii) any proceeds of Transferred Causes of Action (net of any expenses incurred in connection with the pursuit thereof).

(gg) **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (a) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Reorganized Debtor (i) cure any default that occurred before or after the commencement of the Case on the Petition Date, other than default of the kind specified in 11 U.S.C. § 365(b)(2), (ii) reinstate the maturity of such Claim as such maturity existed before such default, (iii) compensate the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law, and (iv) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (c) the Plan provides that on the Effective Date the holder of such Claim receives, on account of such Claim, cash equal to the amount of such Allowed Claim.

(hh) **Insider** has the meaning in § 101(31) of the Code.

(ii) **Lien** means a "lien" as defined in section 101(37) of the Bankruptcy Code, and, with respect to any property or asset, includes, without limitation, any mortgage, deed of trust, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such property or asset.

(jj) **New Equity Interests** means the equity interests of the Reorganized Debtor issued pursuant to the Plan.

(kk) **New Governance Documents** has the meaning set forth in the Stock Purchase Agreement.

(ll) **Person** means an individual, partnership, or corporation, but does not include a governmental unit unless the government unit acquires an asset as a result of operation of a loan guarantee agreement, or as receiver or liquidating agent, in which case such governmental unit shall be considered a Person for purposes of 11 U.S.C. § 1102.

(mm) **Petition Date** means December 4, 2019 and is the date on which the Debtor filed its petition for relief, commencing the Bankruptcy Case.

(nn) **Plan** means this Plan of Reorganization, as it may be amended, modified or supplemented by the Debtor from time to time as permitted herein and by the Bankruptcy Court.

(oo) **Plan Contribution** means the purchase price in the amount of $2,107,065 to be paid by Sawafi for the New Equity Interests in the Reorganized Debtor, subject to and pursuant to the terms and conditions of the Stock Purchase Agreement.

(pp) **Priority Creditor** means a Creditor whose Claim is entitled to priority under 11 U.S.C. § 507.

(qq) **Professional** means any attorneys retained by the Debtor or the Creditors' Committee with court approval.

(rr) **Professional Fee Claim** means the claim for fees and expenses of a Professional.

(ss) **Professional Fee Claim Reserve Amount** means the aggregate accrued Professional Fee Claims through the Effective Date, other than Approved Professional fees, in an amount equal to the estimates provided by the Professionals to the Debtor and Disbursement Agent on or before the Effective Date.

(tt) **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in 11 U.S.C. § 541.

(uu) **Reorganized Debtor** means the Debtor, as reorganized under the Plan, or any successor thereto by merger, consolidation, or otherwise on or after the Effective Date, including any transferee, assignee, or successor of the Reorganized Debtor.

(vv) **Sawafi** means Sawafi Al-Jazeera Oilfield Products and Services Co., Ltd, or its designee.

(ww) **Secured Claim** means any Claim secured by a Lien or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof as determined in accordance with 11 U.S.C. § 506(a).

(xx) **Secured Creditor** or **Secured Claimant** means any Claimant holding a Secured Claim.

(yy) **Stock Purchase Agreement** means that certain Stock Purchase Agreement between Sawafi and the Debtor, as amended, modified or supplemented.

(zz) **Tax Claim** means any Claim of a Governmental Unit of the kind specified in section 507 of the Bankruptcy Code or secured by any Lien.

(aaa) **Transferred Causes of Action** means the causes of action transferred to the Creditors' Trust pursuant to Article IX of the Plan.

(bbb) **Unsecured Claim** means a Claim that is not a Secured Claim.

(ccc) **Unsecured Creditor** or **Unsecured Claimant** means any Claimant holding an Unsecured Claim.

1.02     **Number and Gender of Terms**. Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

1.03     **Terms Defined in the Bankruptcy Code**. Capitalized terms not specifically defined in Section 1.01 of the Plan shall have the definitions, if any, given those terms in the Bankruptcy Code.

1.04     **Headings**. The headings and captions used in the Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

1.05     **Computation of Time**. In computing any time prescribed herein the provision of Fed. R. Bankr. P. 9006(a) shall apply.

## ARTICLE II
## OVERVIEW OF THE PLAN

2.01     On the Effective Date of the Plan, the Debtor will cancel all existing shares of stock and issue new shares to Sawafi in return for the Plan Contribution in the amount of $2,107,065, such that Sawafi will own 100% of the New Equity Interests in the Reorganized Debtor. The Plan Contribution will be used to fund the Plan and all distributions required to be made under the Plan. More specifically, the Plan Contribution will be used to pay all Administrative Claims, all Cure Amounts under all Executory Contracts assumed under or in connection with the Plan, and Priority Tax Claims, to establish a reserve for wind down and transition expenses. The balance of the Plan Contribution will be transferred to the Creditors' Trust to administer payments of pre-petition unsecured claims against the Debtor, as provided in the Plan. The effect of the confirmation of the Plan will be to discharge the Debtor from all Claims, among other things.

## ARTICLE III
## MEANS FOR IMPLEMENTATION OF THE PLAN

3.01     On the Effective Date of the Plan, Sawafi will acquire 100% of the New Equity Interests for the Plan Contribution pursuant to the terms of the Stock Purchase Agreement.

3.02     The Distribution Agent and the Trustee for the Creditors' Trust, as applicable pursuant to the terms of this Plan, will use the Plan Contribution and the proceeds of the Transferred Causes of Action, if any, to fund all payments under the Plan as detailed below, including, without limitation, all distributions under the Plan to holders of Allowed Claims.

3.03     On the Effective Date of the Plan, the Distribution Agent shall: (a) pay from the Plan Contribution all uncontested Administrative Claims, including General Administrative Claims and Approved Professional Fees, Allowed Tax Claims, and Cure Amounts required to be paid on the Effective Date of the Plan, as determined by the Debtor prior to the Effective Date, (b) remit the applicable Professional Fee Claim Reserve Amount to Professionals to hold in their respective trust accounts pending approval of their fees, and (c) remit the balance of the Plan Contribution to the Creditors' Trust for all other distributions under the Plan.

3.04		On the Effective Date, the Distribution Agent shall contemporaneously deliver to the Trustee: (1) a schedule of all unpaid, disputed Administrative Claims and Tax Claims and an explanation of the grounds for such dispute, and (2) a schedule of estimated current, administrative expenses incurred by the Debtor in the ordinary course of business for which the Debtor has not received an invoice. The Distribution Agent shall deliver to the Trustee any such invoices upon the Distribution Agent's receipt and advise the Trustee whether the invoice is disputed and provide the basis of any dispute. The Trustee is authorized to pay all such Administrative Claims and Tax Claims or to file objections to such claims, subject to the approval of the Trust Committee. Any Allowed Claims not paid by the Distribution Agent on the Effective Date of the Plan shall solely become claims against the Creditors' Trust.

3.05		After the Effective Date, the Professionals shall be authorized to apply funds held in their respective trust accounts upon the entry of an Order by the Court. The Professionals shall remit any remaining balance in their trust accounts, if any, to the Trustee.

3.06		On the Effective Date of the Plan, the Reorganized Debtor shall issue or cause to be issued all of the New Equity Interests issued or issuable in accordance with the terms of the Plan and the Stock Purchase Agreement. The issuance of the New Equity Interests under the Plan is authorized without the need for further corporate action, and all of the New Equity Interests issued or issuable under the Plan and the Stock Purchase Agreement shall be duly authorized and validly issued, fully paid, and non-assessable.

3.07		The issuance and distribution of the New Equity Interests shall be exempt from registration under the Securities Act and any other applicable securities laws pursuant to section 1145 of the Bankruptcy Code, and may be resold without registration under the Securities Act or other federal securities laws pursuant to the exemption provided by section 4(a)(1) of the Securities Act, unless the holder is an "underwriter" with respect thereto, as that term is defined in section 1145(b) of the Bankruptcy Code, and under state securities laws pursuant to various exemptions provided by the respective laws of the several states.

3.08		As of the Effective Date, the terms of the then-current members of the board of directors of the Debtor, and any officers or employees of the Debtor that have not been retained by the Reorganized Debtor on such terms as the Reorganized Debtor may agree in writing in its sole discretion, shall terminate and expire without further action and all actions contemplated by the Plan and the Stock Purchase Agreement shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Equity Interests, directors, managers, or officers of the Debtor, the Reorganized Debtor, or any other entity.

## ARTICLE IV
## THE CREDITORS' TRUST

4.01		The Creditors' Trust shall be administered by a trustee (the "**Trustee**") who shall serve until all assets of the Creditors' Trust have been liquidated and proceeds distributed under the terms of the Plan and the Creditors' Trust is terminated or until the Trustee resigns or is removed.

4.02        Except as set forth below, the Trustee will be authorized take all actions necessary to administer the Creditors' Trust, to protect the assets and enforce or compromise the rights of the Creditors' Trust, to retain professionals, to object to claims, to make distributions to the creditors under the terms of the Plan, and to seek the entry of an order closing the bankruptcy case upon substantial consummation of the Plan

4.03        The Trustee's compensation shall be 5% of all disbursements from the Trust.

4.04        The Trustee shall post a bond in the amount of the maximum estimated balance of the trust accounts. The cost of the bond shall be borne by the assets of the Trust

4.05        The initial Trustee of the Creditors' Trust will be the person designated in the order confirming the Plan.

4.06        A trust committee (the "**Trust Committee**") will be formed for the purpose of:

1. determining the amount of the Trustee's bond;
2. selecting a successor trustee in the event the trustee resigns or is terminated;
3. selecting committee members to replace members who resign or are;
4. approving the commencement of any actions by the Creditors' Trust;
5. approving filing the objection to any claim;
6. approving any compromise of claims by the trustee;
7. terminating the Creditors Trust after the final distribution to creditors is made.

4.07        There shall be at least three initial members of the Trust Committee to be selected by the Creditors' Committee. All Trust Committee decisions will be made by majority vote. Any member can be removed and replaced by vote of two members. Members of the Trust Committee will not be compensated for their service on the Trust Committee but may obtain reimbursement for any out of pocket expenses.

4.08        The Debtor will file any U.S. Trustee's reports required to be filed before the Effective Date, and the Distribution Agent will pay on the Effective Date any U.S. Trustee fees that are due and unpaid as of the Effective Date. The Creditors' Trust will be responsible for filing US Trustee's reports and paying quarterly fees that are due after the Effective Date until the case is closed.

4.09        The Creditors' Trust shall indemnify and hold harmless any person who was, or is, a party, or is threatened to be made a party, to any pending or contemplated action, suit or proceeding, whether civil, criminal, administrative, or investigative, by reason of the fact that such person is or was the Trustee, or an employee of the Creditors' Trust, or an agent, attorney, accountant, or other professional for the Trustee, against all costs, expenses, judgments, fines, and amounts paid in settlement actually and reasonably incurred by such entity in connection with such action, suit, or proceeding, or the defense or settlement of any claim, issue, or matter therein, to the fullest extent, except to the extent such liability is determined to be the result of willful misconduct or gross negligence.  Costs or expense incurred by any such entity in defending any such action, suit, or proceeding may be paid by the Creditors' Trust in advance of the institution

or final disposition of such action, suit, or proceeding, if authorized by the Trustee or, if such action, suit or proceeding is against the Trustee, by the Trust Committee.

4.10    The Creditors' Trust is intended to qualify as a "grantor trust" for federal income tax purposes and the Trustee shall operate and maintain the Creditors' Trust in compliance with the guidelines for liquidating trusts as set forth in Internal Revenue Service Revenue Procedure 94-45, 1994-2 C.B. 684, and Treasury Regulation Section 1.671-4(a) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service

4.11    The Creditors' Trust Agreement, when executed will become effective on the Effective Date of the Plan.

## ARTICLE V
## ADMINISTRATIVE EXPENSE CLAIMS

5.01    Administrative Claims generally consist of expenses incurred during the chapter 11 case in administering the bankruptcy case and in operating the Debtor's business. Administrative Claims generally include claims for taxes and for providing goods and services to the Debtor after the commencement of the case and which are allowable under §503 of the Bankruptcy Code, the fees of professionals employed by the Debtor and the Creditors Committee in the Bankruptcy Case approved by the Bankruptcy Court, and the United States Trustee's fees.

5.02    On the Effective Date of the Plan, the Distribution Agent shall pay the General Administrative Claims listed on **Exhibit B** to the Disclosure Statement in the amount listed there, less any payments made on such claims after October 31, 2020.  No other General Administrative Claim arising on or before October 31, 2020 will be paid under the Plan unless otherwise agreed by the Distribution Agent or pursuant to an order of the Bankruptcy Court.

5.03    The holder of any General Administrative Claim arising on or before October 31, 2020 which are not on **Exhibit B** to the Disclosure Statement must have filed an Application for Payment of Administrative Claim at least five days before the commencement of the hearing on the confirmation of this Plan or such claims will not be paid under this Plan. If an Application was timely filed, the Distribution Agent may pay such claim. If the Distribution Agent disputes the claim, the disputed General Administrative Claim shall become a claim solely against the Creditors' Trust and not against the Reorganized Debtor, and the Creditor's Trust shall have the discretion whether to pay or object to such claim.

5.04    The Distribution Agent shall pay any undisputed General Administrative Claim arising after October 31, 2020 upon the Effective Date of the Plan.  Any vendor who provides goods or services to the Debtor after October 31, 2020 must submit an invoice within 30 days after providing such goods or services. If a vendor does not timely submit an invoice, the Distribution Agent and the Trustee may elect not to pay that claim. If a vendor has not submitted an invoice prior to the Effective Date, the Debtor shall provide the Trustee the invoice when received and the Trustee shall be responsible for paying such invoice. If the Distribution Agent disputes the claim or does not pay a General Administrative Claim for any reason, the disputed General Administrative Claim shall become a claim solely against the Creditors' Trust, and the Creditor's Trust shall have the discretion whether to pay of object to such claim.

5.05        Professional Fee Claims shall be paid by the Distribution Agent as provided in Article III of the Plan.

5.06        The United States Trustee's fees for the 1st quarter 2021 and thereafter will be paid when due.

## ARTICLE VI
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

6.01        **Class 1 –Allowed Tax Claims**

Class 1 Claims consist of Allowed Tax Claims of governmental authorities for taxes that are entitled to priority under §507 of the Bankruptcy Code or that are secured by Liens.

The Allowed Tax Claims will be paid in full in cash from the Plan Contribution upon the Effective Date of the Plan.

The rights of Class 1 creditors are unimpaired, and so they are not entitled to vote on the Plan.

6.02        **Class 2 - Allowed General Unsecured Claims.**

Class 2 consists of Allowed General Unsecured Claims of all creditors other than those in Class 1.

The GUC Assets shall be distributed by the Trustee of the Creditors' Trust to the holders of Allowed General Unsecured Claims in Class 2 on a pro rata basis.

The rights of Class 2 creditors are impaired and so they are entitled to vote on the Plan.

6.03        **Class 3 – Allowed Equity Interests in the Debtor**.

Class 3 consists of all of the existing Equity Interests in the Debtor. The Class 3 Interests shall be terminated on the Effective Date of the Plan and holders of such Equity Interests will receive no distribution under the Plan.

Class 3 is impaired, but conclusively presumed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, the holders of Class 3 Equity Interests are not entitled to vote on the Plan.

## ARTICLE VII
## ASSUMPTION AND REJECTION OF LEASES AND EXECUTORY CONTRACTS

On the Effective Date, the Debtor will assume the Executory Contracts set forth in the Confirmation Order. If the Debtor assumes an Executory Contract, the Distribution Agent will pay the Cure Amounts scheduled in the Disclosure Statement to the counterparty to the Contract on the Effective Date of the Plan unless such counterparty timely filed an objection to the Plan. If such an objection was timely filed, and if such objection is sustained by Final Order of the

Bankruptcy Court, the Debtor or the Reorganized Debtor, as applicable, may reject such Executory Contract in lieu of assuming it. The Debtor or the Reorganized Debtor, as applicable, shall be authorized to effect such rejection by filing a written notice of rejection with the Bankruptcy Court and serving such notice on the applicable counterparty within thirty (30) days of the entry of such Final Order.

The Distribution Agent will pay all Cure Amounts related to any assumed Executory Contracts from the Plan Contribution.

All Executory Contracts that are not expressly identified in the Confirmation Order, or subject to a separate motion to assume filed by the Debtor and pending on the Effective Date, shall be deemed to be rejected as of the Effective Date, and counterparties to any Executory Contracts that were not rejected prior to the confirmation of the Plan shall have 30 days from the Effective Date of the Plan to file a Proof of Claim arising out of such rejection.

Each Executory Contract assumed pursuant to the Plan shall revest in and be fully enforceable by the Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of this Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

## ARTICLE VIII
## DISTRIBUTIONS AND CLAIMS ALLOWANCE PROCEDURES

8.01  **Treatment of Claims**. This Plan is intended to resolve all Claims against the Debtor and/or its property of whatever character, whether contingent or liquidated, or whether or not allowed by the Bankruptcy Court pursuant to 11 U.S.C. § 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Debtor believes that Claimants will receive at least as much pursuant to this Plan as they would receive in a liquidation of the Debtor pursuant to Chapter 7 of the Bankruptcy Code.

8.02  **Allowed Claims**. To receive a distribution under the Plan, a Creditor must have an Allowed Claim.

8.03  **Amount of Claims**. If the Debtor has scheduled a Claim and has not scheduled such Claim as disputed, contingent, or unliquidated, then the amount scheduled shall control, unless the Creditor files a proof of claim in a different amount or a party in interest files an objection to the scheduled Claim. If a Creditor files a proof of claim, then the amount stated in the proof of claim shall control, unless a party in interest files an objection to the Claim. If a party in interest files an objection to a Claim for which a proof of claim is filed, or to a scheduled Claim, then the amount determined by the Bankruptcy Court in a Final Order shall control. If a Claim has been scheduled as disputed, contingent or unliquidated and the Creditor has not filed a proof of claim by the applicable Bar Date, the Claim shall be deemed to be disallowed unless this Plan specifically provides otherwise. Any proof of claim filed after the Bar Date set by the Bankruptcy Court and applicable to such Claim shall be of no force and effect and shall be deemed disallowed.

8.04  **Allowance of Post-Petition Interest, Fees and Costs**.  A Claim shall not be entitled to post-petition interest, fees or costs.

8.05　　　　**Objections to Claims**. The Creditors' Trust may file an objection to any claim within 90 days after the Effective Date of this Plan. All Contested Claims shall be litigated to Final Order; provided, however, that the Creditors' Trust may compromise and settle any Contested Claim, without approval of the Bankruptcy Court.

8.06　　　　**Distributions on Contested Claims**. No distributions under this Plan shall be made to the holder of a Claim that is in dispute unless and until such Claim becomes an Allowed Claim. When and if a Contested Claim becomes an Allowed Claim, the Creditors' Trust shall at the next scheduled distribution under the Plan pay the newly Allowed Claim a sum sufficient to bring that Claimant current as if it had been paid according to the Plan since the Effective Date. If a Claim is disputed in whole or in part because either Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of the Allowed Claim.

8.07　　　　**Distributions on Allowed Claims**.　The Distribution Agent and the Creditors' Trust shall be responsible for making all distributions required to be distributed under the Plan. The Distribution Agent and the Creditors' Trust may employ or contract with other persons or entities to assist in or make the distributions required by this Plan and may pay the reasonable fees and expenses of such entities and the Distribution Agent in the ordinary course of business.

## ARTICLE IX
## CAUSES OF ACTION

9.01　　　　**Article 5 Causes of Action**. All causes of action of the Debtor under Article 5 of Bankruptcy Code shall be transferred to the Creditors' Trust. The Creditors' Trust reserves all rights to pursue, in its sole discretion, any preferences or fraudulent transfers to the fullest extent allowed under the Bankruptcy Code and applicable state laws. ALL CREDITORS AND RECIPIENTS OF PAYMENTS OR TRANSFERS THAT MAY BE DEEMED PREFERENCES OR FRAUDULENT TRANSFERS, WITH ACTUAL OR CONSTRUCTIVE NOTICE OF THIS BANKRUPTCY CASE ARE HEREBY PUT ON NOTICE THAT THE CREDITORS TRUST MAY PROSECUTE THESE CLAIMS. THIS PLAN IS NOT INTENDED AND DOES NOT WAIVE ANY OF DEBTOR'S CHAPTER 5 CAUSES OF ACTION, EXCEPT THOSE ACTIONS AND CLAIMS EXPRESSLY RELEASED IN THE PLAN, OR CONFIRMATION ORDER.

9.02　　　　**Other Potential Litigation**. In addition to preferences and fraudulent transfer claims, the Debtor may also have claims and causes of action against third parties and creditors arising prior to the Petition Date. These causes of action will automatically be transferred to the Creditors' Trust and may be prosecuted by the Creditors' Trust or enforced by way of setoff against Claims filed against the bankruptcy estate. The Creditors' Trust has sole discretion to prosecute any such litigation and to object to any Claims.

## ARTICLE X
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

10.01       The following conditions precedent to the Effective Date must be satisfied prior to or simultaneously with the occurrence of the Effective Date:

(a)       the Bankruptcy Court shall have approved the Disclosure Statement as containing adequate information with respect to the Plan within the meaning of section 1125 of the Bankruptcy Code;

(b)       the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor and Sawafi, and the Confirmation Order shall be a Final Order;

(c)       the conditions to closing under the Stock Purchase Agreement shall have been satisfied or waived or in accordance thereof; and

(d)       the transactions contemplated by the Stock Purchase Agreement shall have closed, and Sawafi shall have paid the Plan Contribution.

## ARTICLE XI
## EFFECT OF CONFIRMATION

11.01       **Vesting of Property**. As of the Effective Date, the Debtor shall be revested with all Property of the Estate, free and clear of all Liens, Claims and encumbrances except as expressly provided under the Plan.

11.02       **Plan Binding**. Pursuant to 11 U.S.C. § 1141, the provisions of the confirmed Plan shall bind the Debtor, the Debtor's Creditors, and the holder of the Equity Interest in the Debtor, whether or not the Claim or Equity Interest is impaired under the Plan and whether or not such Creditor or Equity Interest holder has accepted the Plan.

11.03       **Reliance on Other Parties**. In connection with the Plan, the Debtor and its members, representatives, attorneys, accountant, and agents may rely upon the opinions of counsel, certified public accountants, and other experts or professionals employed by the Debtor, and such reliance shall presumptively establish good faith.

11.04       **Discharge**. Confirmation of the Plan shall discharge the Debtor of all its pre-Confirmation debts.

11.05       **Permanent Injunction**. Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor. From and after Confirmation, all holders of Claims against the Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor or its assets; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor or its assets; (c) from creating, perfecting, or enforcing any encumbrance or any kind against the Debtor or its assets; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Debtor except as may be allowed under the Bankruptcy Code; and (e) from performing any act, in any manner, in any place whatsoever, that

does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan.

## ARTICLE XII
## MODIFICATION OF THE PLAN

12.01   **Post-Confirmation Modification**. The Debtor, as proponent of the Plan, may modify it at any time after Confirmation but before the Bankruptcy Case is fully administered, provided that the Plan, as modified, meets the requirements of §§ 1122 and 1123 of the Bankruptcy Code, that the Bankruptcy Court, after notice and hearing, confirms such modified Plan under § 1129, and that the circumstances warrant such modification.

12.02   **Deemed Acceptance or Rejection**. A holder of a Claim or Equity Interest that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless within any time limit fixed by the Court such holder changes its previous acceptance or rejection.

## ARTICLE XIII
## POST CONFIRMATION MATTERS

13.01   **Application for Final Decree**. The Creditors' Trust shall file an application for final decree when the Bankruptcy Case.

13.02   **U.S. Trustee**.

(a)   **Fees**. To the extent not previously paid, the Distribution Agent shall pay any outstanding U.S. Trustee fees due and payable as of the Effective Date. The Creditors' Trust shall pay all U.S. Trustees fees due and payable after the Effective Date until the Bankruptcy Case is closed.

(b)   **Reports**. The Creditors' Trust shall file post-confirmation reports in the form prescribed by the United States Trustee until the Bankruptcy Case is closed.

## ARTICLE XIV
## RETENTION OF JURISDICTION

14.01   **Jurisdiction over Matters**. Until the Bankruptcy Case is closed, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against the Debtor arising prior to the Confirmation Date, to hear and determine all causes of action that exist in favor of the Debtor that arise prior to the Confirmation Date (subject to applicable case law limiting such jurisdiction), to hear and determine all matters relating the administration of what was the Debtor's Estate, to modify the Plan, and to make such other orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with § 1142 of the Bankruptcy Code, including interpretation and implementation of the Plan and entry of a final decree.

# ARTICLE XV
# MISCELLANEOUS

15.01      **Request for Relief under 11 U.S.C. § 1129(b) – "Cramdown."** In the event any Impaired Class fails to accept the Plan in accordance with 11 U.S.C. § 1129(a), the Debtor reserves the right to, and does hereby, request the Court to confirm the Plan in accordance with 11 U.S.C. § 1129(b). Any and all payments pursuant to this Plan, either pre- or post-confirmation shall be considered "new value" for purposes of that section.

15.02      **Pre-Confirmation Amendment, Withdrawal/Revocation**. The Debtor, as the proponent of the Plan, reserves the right to amend or withdraw/revoke the Plan at any time prior to the Confirmation Date. If the Debtor withdraws or revokes the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

15.03      **Entire Agreement**. The Plan, the Confirmation Order, the Disclosure Statement, and all other documents and instruments to effectuate the Plan constitute the entire agreement and understanding among the Debtor and its Creditors relating to the subject matter hereof and supersede all prior discussions and documents.

15.04      **Payments**.

(a)           **Delivery**. Any payments or distributions made by the Debtor or the Creditors' Trust pursuant to the Plan or as may be ordered by the Bankruptcy Court, to the extent delivered by the United States mail shall be deemed made when deposited into the mail. Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth the on the proofs of claim filed by such holders (or at the last known addresses of such holders if no proof of claim is filed) unless the Claimant files with the Bankruptcy Court and serves the Debtor and the Creditors' Trust with a change of address. All Claims for undeliverable distributions shall be made in writing within one-hundred eighty (180) days after the date of such distribution. After such date, all unclaimed property shall remain the property of the Creditors' Trust and the claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

(b)           **Voided Checks**. Checks issued by the Debtor or the Creditors' Trust in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof. Requests for reissuance of any check shall be made to the Trustee of the Creditors' Trust by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check must be made to the Creditors' Trustee in writing within one-hundred eighty (180) days after the date of delivery of such check. After such date, all claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall be returned to the Creditors' Trust.

15.05      **Governing Law**. Unless a rule or law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law

provision is provided by federal law, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents and instruments executed in connection with the Plan without regard to conflicts of law.

Dated: January 25, 2021.

PLAN PROPONENT:

**NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**

By: _____
Billy Melville
Chief Executive Officer

APPROVED:

_____
Stephen A. Roberts
Clark Hill Strasburger
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624
sroberts@clarkhill.com

**COUNSEL FOR NEWSCO INTERNATIONAL ENERGY SERVICES USA, INC.**